IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PELOTON INTERACTIVE, INC.,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀C.A. No. 19-1903 (RGA)
⠀⠀⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
ECHELON FITNESS, LLC,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀Defendant.⠀⠀⠀⠀⠀)

**PLAINTIFF PELOTON INTERACTIVE, INC.'S OPPOSITION TO
DEFENDANT ECHELON FITNESS, LLC'S MOTION TO DISMISS
PLAINTIFF'S PATENT INFRINGEMENT CLAIMS**

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Morris, Nichols, Arsht & Tunnell LLP
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Michael Flynn (#5333)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Anthony D. Raucci (#5948)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀1201 North Market Street
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀P.O. Box 1347
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Wilmington, DE  19899-1347
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀(302) 658-9200
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀mflynn@mnat.com
OF COUNSEL:⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀araucci@mnat.com

Steven N. Feldman⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀*Attorneys for Plaintiff Peloton Interactive, Inc.*
Christina V. Rayburn
Karen Younkins
Kevin X. Wang
Maxwell K. Coll
Hueston Hennigan LLP
523 West Sixth Street, Suite 400
Los Angeles, CA 90014
(213) 788-7272

January 27, 2020

## TABLE OF CONTENTS

Page

I.     NATURE AND STAGE OF THE PROCEEDING.......................................................1

II.    SUMMARY OF ARGUMENT ................................................................................... 1

III.   STATEMENT OF FACTS ..........................................................................................4

IV.    ARGUMENT ...............................................................................................................7

      A.     Applicable Legal Standard................................................................................7

            1.     Defendant's High Burden At The Pleading Stage ...................................7

            2.     Patent Eligibility Under 35 U.S.C. § 101.................................................8

      B.     The Peloton Patents Claim Patent-Eligible Subject Matter ............................ 10

            1.     Alice Step 1 ........................................................................................... 10

            2.     Alice Step 2 ........................................................................................... 13

V.     CONCLUSION...........................................................................................................20

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aatrix Software, Inc. v. Green Shares Software, Inc.*,
   882 F.3d 1121 (Fed. Cir. 2018)..............................................................3, 4, 15, 20

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   573 U.S. 208 (2014)............................................................................. *passim*

*Ancora Techs., Inc. v. HTC Am., Inc.*,
   908 F.3d 1343 (Fed. Cir. 2018)...................................................................9

*Apple, Inc. v. Ameranth, Inc.*,
   842 F.3d 1229 (Fed. Cir. 2016)..................................................................10

*Axcess Int'l, Inc. v. Genetec (USA) Inc.*,
   375 F. Supp. 3d 533 (D. Del. 2019)........................................................1, 11

*Baggage Airline Guest Servs., Inc. v. Roadie, Inc.*,
   351 F. Supp. 3d 753 (D. Del. 2019)............................................................19

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016).................................................................. *passim*

*Berkheimer v. HP*,
   890 F.3d 1369 (Fed. Cir. 2018)...................................................................8

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018).................................................................. *passim*

*BSG Tech. LLC v. Buyseasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018)...................................................................8

*Carrum Techs., LLC v. BMW of North America, LLC*,
   2019 WL 1779863 (D. Del. Apr. 23, 2019).................................................11

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
   927 F.3d 1306 (Fed. Cir. 2019).................................................................. *passim*

*Cellwitch Inc. v. Tile, Inc.*,
   4:19-cv-01315 (N.D. Cal. Nov. 21, 2019) ...................................................17

*ChargePoint, Inc. v. SemaConnect, Inc.*,
   920 F.3d 759 (Fed. Cir. 2019)...................................................................12

*Core Wireless Licensing S.A.R.L.* v. *LG Elecs., Inc.*,
   880 F.3d 1356 (Fed. Cir. 2018)...............................................................9, 12, 13

TABLE OF AUTHORITIES (cont.)

Page(s)

*Data Engine Techs. LLC v. Google*
   LLC, 906 F.3d 999.................................................................................................10

*Diamond v. Diehr*,
   450 U.S. 175 (1981)..............................................................................................20

*DivX, LLC v. Netflix, Inc.*,
   2-19-cv-01602 (C.D. Cal. Nov. 4, 2019) ..............................................................17

*Electric Power v. ALSTOM S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016)..............................................................................17

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016)..........................................................................2, 10

*Express Mobile, Inc. v. DreamHost LLC*,
   2019 WL 2514418 (D. Del. June 18, 2019)....................................................4, 15, 16

*Guada Techs. LLC v. Vice Media, LLC*,
   341 F. Supp. 3d 390 (D. Del. Sep. 17, 2018).........................................................17

*In re Bilski*,
   545 F.3d 943 (Fed. Cir. 2008).................................................................................20

*In re TLI Commc'ns LLC Patent Litigation*,
   823 F.3d 607 (Fed. Cir. 2016)..........................................................................11, 12

*King Pharm., Inc. v. Eon Labs, Inc.*,
   616 F.3d 1267 (Fed. Cir. 2010)..............................................................................20

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   566 U.S. 66 (2012)..............................................................................................3, 9

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
   837 F.3d 1299 (Fed. Cir. 2016)...........................................................................9, 10

*Peloton Interactive, Inc. v. Flywheel Sports, Inc.*,
   2019 WL 6843501 (E.D. Tex. Sep. 6, 2019) .....................................................4, 5, 17

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018)..............................................................................19

*Slyce Acquisition Inc. v. Syte – Visual Conception Ltd.*,
   No. W-19-CV-00257-ADA, 2020 WL 278481 (W.D. Tex. Jan. 10, 2020) ...........................8

*Thales Visionix Inc. v. United States*,
   850 F.3d 1343 (Fed. Cir. 2017)................................................................................2

<u>TABLE OF AUTHORITIES (cont.)</u>

<u>Page(s)</u>

*TrackTime, LLC v. Amazon.com, Inc.*,
    C.A. No. 18-1518, D.I. 34 (D. Del. Jan. 8, 2020) ...................................................................16

*Trading Techs. Int'l Inc. v. CQG, Inc.*,
    675 F. App'x 1001 (Fed. Cir. 2017) .............................................................................9, 12, 13

*Vanda Pharm. Inc. v. West-Ward Pharm. Int'l Ltd.*,
    887 F.3d 1117 (Fed. Cir. 2018) ...........................................................................................9, 20

*Visual Memory LLC v. NVIDIA Corp.*,
    867 F.3d 1253 (Fed. Cir. 2017) ...............................................................................................2

**Rules and Statutes**

35 U.S.C. § 101 ............................................................................................................ *passim*

Fed. R. Civ. P. 12(b) ...................................................................................................4, 8

## I.     NATURE AND STAGE OF THE PROCEEDING

In October 2019, Peloton Interactive, Inc. ("Peloton") filed this suit against Echelon Fitness, LLC ("Echelon")—a company that markets and manufactures what the New York Times recently described as "a blatant knockoff" of Peloton's category-creating bike, D.I. 16, ¶ 84—for infringing two of Peloton's patents, infringing and diluting Peloton's trademarks, and engaging in unfair competition and deceptive business practices. In January 2020, Peloton filed its Amended Complaint to assert the latest patent that the Patent Office issued to protect Peloton's inventions. Peloton now opposes Echelon's motion to dismiss Peloton's patent claims under 35 U.S.C. § 101.

## II.    SUMMARY OF ARGUMENT

As detailed in the Amended Complaint, the Peloton Patents[1] claim significant, tangible technological improvements over both in-studio cycling and traditional stationary bikes. When Peloton implemented these innovations in its Peloton Bike, it received universal praise from fitness industry experts, who hailed the product as "category-creating," "revolution[ary]," and "the best cardio machine on the planet." D.I. 16, ¶¶ 17, 20. Since 2014, the innovations described in the Peloton Patents have catapulted Peloton's member base to over 1.4 million and its annual revenues to approximately $900 million. *Id.* at ¶ 22. As Echelon's Motion reveals, it cannot come close to meeting its high burden of showing by clear and convincing evidence that each asserted claim is ineligible under both prongs of the 35 U.S.C. § 101 patent eligibility test described in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014).

First, under *Alice* step 1, the Peloton Patents are directed to tangible, improved exercise devices. *See Axcess Int'l, Inc. v. Genetec (USA) Inc.*, 375 F. Supp. 3d 533, 537 (D. Del. 2019) ("[m]ethods with real-world impact, implemented on physical devices, are not rendered abstract").

---

[1] "Peloton Patents" refers to U.S. Patent Nos. 10,022,590 ("'590 Patent"), 10,322,315 ("'315 Patent"), and 10,486,026 ("'026 Patent"), which share a common specification (but different claims). Citations to the "Specification" or "Spec." herein are made to the '590 Patent.

The Peloton Patents are not directed to "putting competitive cycling classes online," which could be accomplished merely by live streaming cycling classes on YouTube on a generic computer. The Peloton Patents are far more specific and innovative than that—they claim improved home exercise devices with specific physical components that include innovations that were irrelevant or impossible in live competitive cycling classes. One such innovation—critical to the Peloton Patents—was allowing riders participating in a *recorded* exercise class to view, in a time-synchronized way, their own sensed performance parameters with those of riders who had previously participated in that class, in order to provide the home rider a sense of live competition and engagement. This is precisely the sort of new and useful process that the Federal Circuit has repeatedly held that our patent laws protect. *See, e.g.*, *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016) (claims reciting self-referential table for a computer database not abstract because directed to particular improvement in the computer's functionality); *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1349 (Fed. Cir. 2017) (claims reciting improved method of utilizing inertial sensors to determine position and orientation of an object not abstract); *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259 (Fed. Cir. 2017) (claims directed to improved computer memory system with programmable operational characteristics not abstract because provided flexibility that prior art did not provide).

Second, even if the Peloton Patents were directed to "putting [live] competitive cycling classes online"—and even if that idea were abstract—they nevertheless disclose several, concrete inventive concepts that ensure patent eligibility under *Alice* step 2. These include: (1) allowing remote participants in live exercise classes to view the performance parameters of other, remote live participants, presented in comparison to their own performance parameters on a display screen associated with their exercise device; (2) allowing remote participants in *archived* cycling classes to view time-synced performance parameters of other, *previous* remote participants, presented in

2

comparison to their own performance parameters on the display screen; (3) allowing remote participants in archived cycling classes to view *both* live performance parameters of other remote participants participating in the same class at the same time, *and* time-synced performance parameters of prior participants, on the same screen; (4) time-synchronizing the performance parameters via a "start signal" embedded in the audio and video content comprising the exercise class; (5) presenting the performance parameters in "secondary windows" over the video showing the exercise class; (6) presenting the comparison of performance parameters in the form of a leaderboard; (7) presenting heartrate, power, and pedal cadence as the performance parameters; and (8) various physical features of the bike itself. As plausibly and specifically alleged in the Amended Complaint, these inventive concepts were not "well-understood, routine, [or] conventional," either separately or when considered as a whole. *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 79-80 (2012); *see, e.g.*, D.I. 16, ¶¶ 48-60 (describing inventiveness of '590 and '315 Patents), ¶¶ 61-67 (same for '026 Patent). That is why the Peloton Bike was hailed as "revolutionary" by leading fitness outlets. D.I. 16, ¶¶ 17, 20, 22.

Critically, recent controlling precedent precludes dismissal where, as here, the patentee's complaint and specification contain plausible and specific factual allegations that aspects of the claims are inventive. In a series of precedential decisions culminating with *Cellspin Soft, Inc. v. Fitbit, Inc.*, the Federal Circuit has held that "plausible and specific factual allegations that aspects of the claims are inventive are sufficient" to defeat a motion to dismiss. 927 F.3d 1306, 1317 (Fed. Cir. 2019) (citing *Aatrix Software, Inc. v. Green Shares Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018)); *see also Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369-70 (Fed. Cir. 2018) ("*Berkheimer I*") (denying summary judgment because "there is at least a genuine issue of material fact in light of the specification regarding whether claims 4–7 archive documents in an inventive manner"). Unsurprisingly, post-*Cellspin*, district courts routinely deny § 101 motions to dismiss finding

plausibly alleged claims of inventiveness, such as Peloton's. *See, e.g.*, *Express Mobile, Inc. v. DreamHost LLC*, 2019 WL 2514418, at *2 (D. Del. June 18, 2019) (denying motion because "factual allegations of inventiveness in the complaint . . . preclude a finding of invalidity").

Moreover, the U.S. Supreme Court just this month denied writ of certiorari for *Cellspin*, choosing to leave the Federal Circuit's precedent as the controlling law of the land. *See Cellspin*, 927 F.3d 1306, *cert. denied*, 2020 WL 129574 (2020); *cf. Berkheimer I*, 881 F.3d 1360, *cert. denied*, 2020 WL 129532 (2020). Despite all of this, Echelon tellingly—and quite conspicuously—chooses to not even mention the *Cellspin* decision—no doubt because Peloton's Patents plainly survive scrutiny under it. Indeed, a federal magistrate judge recently recommended the denial of a motion to dismiss Peloton's '315 Patent under § 101, finding that "factual disputes remain as to whether the invention describes well-understood, routine, and conventional activities." *Peloton Interactive, Inc. v. Flywheel Sports, Inc.*, 2019 WL 6843501 at *3 (E.D. Tex. Sep. 6, 2019). This Court should do the same.[2]

## III.    STATEMENT OF FACTS

Peloton is a technology company that created a fitness category that never before existed. For its innovations, directly claimed in its patents, Peloton has received widespread praise and achieved massive commercial success. *See, e.g.*, D.I. 16, ¶¶ 22, 41. Echelon, on the other hand, is a company that decided to free ride off Peloton's innovative technology. *Id.* ¶ 5. In doing so, it has infringed Peloton's patents, copied Peloton's trademarks and distinctive trade dress, and engaged in a false advertising campaign in its effort to unfairly compete with Peloton. *Id.* ¶¶ 5-9.

---

[2] Under Federal Circuit precedent, this Court need not even grapple with an *Alice* step 1 analysis. Peloton's plausible factual allegations that aspects of its claims are inventive *alone* preclude dismissal. *Aatrix*, 882 F.3d at 1130 (finding that "factual allegations in the second amended complaint, which when accepted as true, prevent dismissal pursuant to Rule 12(b)(6)" without engaging in step 1 analysis); *see also Peloton Interactive*, 2019 WL 6843501, at *3 (denying motion to dismiss under step 2 without engaging in step 1 analysis).

The Peloton Patents include both system and method claims that solve major problems in two different categories of prior art. D.I. 16 ¶ 3. First, they remove a significant constraint of in-studio cycling classes, which are offered only at fixed locations and times with a limited number of slots, by allowing riders the flexibility to access cycling classes in their own homes, on their own schedules. *Id.*; Spec. at 1:53-56 (in-studio classes "accessible only at specific times and locations"). Second, they solve the rider boredom problem of prior art at-home stationary bikes by providing live and on-demand archived classes with an improved graphical user interface on an associated display screen that allows an in-home user to experience real-time competition and community engagement. D.I. 16, ¶ 3; *see also* Spec. at 1:33-42. The Specification explains that "[t]he present invention addresses these problems, providing a stationary bike that incorporates multimedia inputs and outputs for live streaming or archived instructional content, socially networked audio and video chat, [and] networked performance metrics and competition capabilities." *Id.* at 1:56-62. The Peloton Patents thus claim specific technical improvements relating to providing at-home riders the unprecedented experience of competing in a class setting against hundreds and even thousands of fellow riders, who may be located anywhere in the world, and may even have ridden at different times. D.I. 16, ¶¶ 19, 48-67.

Claim 1 of the '590 Patent claims (paragraph designations included for convenience):

A system comprising:
    (a) a user interface operable to display live and archived cycling class content to a first user at a first location, the user interface comprising a display screen and a user input device operable to receive input from the first user;
    (b) a plurality of sensors operable to detect activity by the first user and generate first user performance parameters; and
    (c) a first local processing system communicably coupled to the user interface and the plurality of sensors, the first local processing system operable to perform operations comprising:
        (i) display, on the display screen, information identifying a plurality of cycling classes comprising available live and archived cycling classes accessible by the first local processing system through a digital communication network;
        (ii) receive, from the user interface, an indication from the first user of a selected cycling class from one of the available live and archived cycling classes;
        (iii) output to the display screen cycling class content associated with the selected cycling

class, the cycling class content comprising digital video content and audio content;
(iv) track the first user performance parameters received from the plurality of sensors at a particular point in the selected cycling class;
(v) display on the display screen at least one of the first user performance parameters; and
(vi) display on the display screen at least one of a plurality of second user performance parameters received via the digital communication network from a second local processing system at a second location, wherein at least one of first user performance parameters at the particular point in the selected cycling class and at least one of the second user performance parameters at the same point in the selected cycling class are presented for comparison on the display screen at the first location.

Claim 1 of the '315 Patent is directed to an at-home exercise device, rather than an at-home bike, and claims method steps that are like (c)(i)-(vi) above. Claim 1 of the '026 Patent also claims an at-home exercise device and focuses on the "archived class" aspect of the other Peloton Patents.[3]

The independent claims thus claim a system and method that involves a stationary bike (or exercise machine) and associated display screen and user input device that enables a user at a remote location to subscribe to a recorded exercise class—either live or archived—by allowing that rider to select from displayed information and by responding to the rider's selection by displaying the class on a video screen. *See* Claim 1(a), (c)(i)-(iii). They *further* claim detecting the rider's performance parameters from at least one point during the class and displaying those parameters on the display screen, along with similar performance parameters—at the same point in the class—from a different user who is taking or has taken the same class. *See* Claim 1(b), (c)(iv)-(vii). In this way, the Peloton Patents provide an innovative way for remote users of exercise classes—whether live or archived—to experience a competitive, motivating environment.

The dependent claims of the Peloton Patents add more detail and innovation. For example, Claims 2 and 3 of the '590 Patent discuss physical elements of the claimed system, including the

---

[3] Echelon wrongly characterizes Claim 1 of the '315 Patent as "representative" of the others. Each patent has distinct claims: the '590 Patent is directed towards an at-home stationary bike whereas the '315 and '026 Patents cover any at-home exercise device; the '315 Patent is limited to method claims whereas the '590 and '026 Patents include system claims; and the '026 Patent is limited to **archived** classes whereas the '590 and '315 Patents claim both archived and live classes. The dependent claims also add distinct elements.

bike itself, a flywheel, a resistance adjustment apparatus, and more. *See also* '026 Patent Claim 10.

Claim 12 describes performance parameters such as pedal cadence, power output, and heartrate. *See also* '026 Patent Claim 3. Claim 15 describes displaying the performance parameters in the form of a leaderboard. *See also* '315 Patent Claims 6, 16; '026 Patent Claims 8, 13. Claim 16 describes a leaderboard that shows both live *and* archived performance parameters at the same time. *See also* '315 Patent Claims 7, 17; '026 Patent Claim 7. And Claim 18 describes embedding a "start signal" in the class content and synchronizing displayed performance parameters to that "start signal." *See also* '315 Patent Claims 8, 18; '026 Patent Claims 9, 15.

The Peloton Patents claim an engaging, immersive product that dramatically improves upon pre-existing exercise systems. *See* D.I. 16, ¶¶ 19, 48-67. A Peloton rider explains it best:

> I can pinpoint the moment I became an addict. [W]hen I saw my name on the leaderboard, and realized – in shock, that it was climbing, as if I was taking the class in real-time. I was competing not only with those who'd taken the class in person, but everyone who'd ever taken it on demand, plus everyone who ever would. ***This wasn't me against 30 people. This was me against the world.***

Peter Shankman, *Review: Eleven Days Into My New Addiction That Is Peloton Cycle* (emphasis added), https://www.shankman.com/eleven-days-new-addiction-peloton-cycle/.

## IV.   ARGUMENT

### A.   Applicable Legal Standard

#### 1.   Defendant's High Burden At The Pleading Stage

Because patents are entitled to a presumption of validity, a party challenging patent eligibility has the burden of showing by clear and convincing evidence that each asserted claim is ineligible. *Berkheimer I*, 881 F.3d at 1368; *Cellspin*, 927 F.3d at 1319 (issued patents are presumed valid and "presumed *patent eligible*") (emphasis in original).[4] Where, as here, "patent eligibility is challenged

---

[4] Tellingly, the Patent Office has continued issuing patents for Peloton's inventions even after validity challenges made by other litigants. Indeed, the Patent Office issued the '026 Patent in November 2019—after Flywheel Sports (unsuccessfully) challenged the eligibility of patents in

(Continued...)

in a motion to dismiss for failure to state a claim," the motion "must be denied if in the light most favorable to the plaintiff and with every doubt resolved in the pleader's favor . . .  the complaint states any legally cognizable claim for relief." *Berkheimer v. HP* ("*Berkheimer II*"), 890 F.3d 1369, 1372 (Fed. Cir. 2018) (internal quotations and citations omitted).

As the *Cellspin* Court further made clear just months ago, "plausible and specific factual allegations that aspects of the claims are inventive are sufficient" to defeat a motion to dismiss. *Cellspin*, 927 F.3d at 1317. In the aftermath of *Cellspin*, courts have gone so far as to say that "to prevail on a Rule 12(b) motion to dismiss, the movant needs to overcome both a factual deck stacked against it and a heightened burden of proof. In some cases, these dual obstacles may be insurmountable. . ." *Slyce Acquisition Inc. v. Syte – Visual Conception Ltd.*, No. W-19-CV-00257-ADA, 2020 WL 278481, at *4 (W.D. Tex. Jan. 10, 2020) (emphasis omitted).

### 2.    Patent Eligibility Under 35 U.S.C. § 101

A patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. Under *Alice*, to show that the Peloton Patents are invalid, Echelon must prove <u>first</u>, that "the claims at issue are directed to a patent-ineligible concept," and <u>second</u>, that "consider[ing] the elements of each claim both individually and 'as an ordered combination,'" the claims do not disclose more than "well-understood, routine, [or] conventional activit[ies]" and thus fail to include an "inventive concept." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348–49 (Fed. Cir. 2016) (citation omitted).

"If a claimed invention only performs an abstract idea on a generic computer, the invention is directed to an abstract idea at step one." *BSG Tech. LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1285

---

(...Continued)

same family as the '026 Patent, specifically including the '315 Patent.

(Fed. Cir. 2018). In contrast, "claims focused on various improvements of systems" are "directed to patent eligible subject matter under § 101." *Core Wireless Licensing S.A.R.L.* v. *LG Elecs., Inc.*, 880 F.3d 1356, 1362 (Fed. Cir. 2018) (listing cases); *see also Trading Techs. Int'l Inc. v. CQG, Inc.,* 675 F. App'x 1001, 1004-05 (Fed. Cir. 2017); *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1316 (Fed. Cir. 2016); *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1347 (Fed. Cir. 2018). Claims also tend to be directed to patent-eligible subject matter if they solve a known problem in the field. *Core*, 880 F.3d at 1363; *see also Alice*, 573 U.S. at 225 (Computer-implemented claims that "effect an improvement in any other technology or technical field" remain patent-eligible.)

The Supreme Court and Federal Circuit have repeatedly cautioned that "'too broad an interpretation of' ineligible subject matter 'could eviscerate patent law' because 'all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Vanda Pharm. Inc. v. West-Ward Pharm. Int'l Ltd.*, 887 F.3d 1117, 1134 (Fed. Cir. 2018) (quoting *Mayo*, 566 U.S. at 71). "Accordingly, at step one, it is not enough to merely identify a patent-ineligible concept underlying the claim; we must determine whether that patent-ineligible concept is what the claim is 'directed to.'" *Id.* (internal quotations and citations omitted).

Under *Alice* step 2, even a claim directed to an abstract idea is patentable where the claim contains "an inventive concept sufficient to transform [it] into a patent-eligible application." *Alice*, 573 U.S. at 221 (internal quotations and citations omitted). At *Alice* step 2, the search for an "inventive concept" requires considering the elements of each claim both individually and as an ordered combination. *Id.* An "inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom*, 827 F.3d at 1350.

**B.**   **The Peloton Patents Claim Patent-Eligible Subject Matter**

   **1.**   *Alice* **Step 1**

      **(a)**   **Echelon's Step 1 Arguments Oversimplify The Claims.**

To determine whether claims are "directed to" an abstract idea, courts "look to whether the claims . . . focus on a specific means or method that improves the relevant technology" or are "directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO*, 837 F.3d at 1314; *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016) (same). Contrary to Echelon's apparent reasoning, the "specific means or method" for improving the relevant technology need not be described at the source-code-implementation level. *See Data Engine Techs. LLC v. Google* LLC, 906 F.3d 999 at 1008 (overturning district court and finding that patent claims "solved a known technological problem in computers in a particular way" where they described "providing a highly intuitive, user-friendly interface with familiar notebook tabs for navigating the three-dimensional worksheet environment.").

Echelon's step 1 analysis runs afoul of the Federal Circuit's caution to "avoid oversimplifying the claims . . . by looking at them generally and failing to account for the specific requirements . . . ." *McRO*, 837 F.3d at 1313 (internal citations omitted). Rather than analyzing the claims "as a whole" and "in light of the specification," *Enfish*, 822 F.3d at 1335, Echelon oversimplifies Peloton's inventions, describing them as simply "taking pre-existing exercises classes and making them available online." D.I. 18 at 11. This is inaccurate. The Peloton Patents are not about live-streaming an exercise class on a generic computer. They are directed to an improved exercise device that not only makes real-time competitive exercise classes available online*, but also* incorporates specific techniques for making it possible for a person participating in an archived exercise class to experience the competition and motivation experienced by a person participating in a live class. As only one example, they describe displaying a first user's performance parameters on a display screen, synchronized with those of a remote user, regardless of whether the first user is

participating in a live or archived class. This element describes a complex technological innovation discussed at length in the Specification. *See, e.g.*, Spec. at 13:15-14:15. It includes: (1) technology sufficient to allow users to view archived cycling classes; (2) technology sufficient to time-sync the performance parameters of various users; (3) technology that allows for the measurement of various performance metrics; and (4) graphical user interface technology for the best display of competitive metrics (including a leaderboard).

What is more, the claimed technology is associated *not* with a generic computer, but with a networked bike/exercise machine and associated video display, user interface, sensors, resistance knobs, and other non-standard physical elements with real world impact. *See, e.g.*, '590 Patent at Claims 1-4; *see also Axcess Int'l*, 375 F.Supp.3d at 537 ("Using RFID equipment and video to monitor property is not, however, an unpatentable abstract idea. Rather, it is a concrete application of an idea … and *specifically tethered to tangible equipment*. … *Methods with real-world impact, implemented on physical devices, are not rendered abstract*...") (internal citations omitted) (emphasis added); *Carrum Techs., LLC v. BMW of North America, LLC*, 2019 WL 1779863, at *3 (D. Del. Apr. 23, 2019) (noting the use of lateral acceleration sensors in the claimed invention and finding that "[f]ar from an abstract idea, the claims are directed to a tangible system, or a method of using such a system, with an observable real-world impact."). Echelon lumps these physical characteristics together as "generic computer components." D.I. 18 at 12. This makes no sense. The claimed exercise device, display screen, sensors, and other components are not even generic *bike* components, much less generic computer components. The stationary bikes in prior art exercise classes had no need for a user interface or display screen like that described in the Peloton claims. As discussed in the Amended Complaint, Peloton had to build such a bike from scratch, incorporating a computer monitor rigged to the front of a stationary bike. D.I. 16, ¶¶ 30-33.

*In re TLI Commc'ns LLC Patent Litigation*, 823 F.3d 607 (Fed. Cir. 2016), on which Echelon

relies, illustrates this point. There, the Federal Circuit noted that the specification did not describe "a new telephone, a new server, or a new physical combination of the two." *Id.* at 612. "In other words, the focus of the patentee and of the claims was not on an improved telephone unit or an improved server." *Id.* at 613. Here, in contrast, the focus of the patentee *was* upon an improved at-home bike—one with an associated display screen and user interface device that provided a user maximum access to motivating instructional content.

*ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759 (Fed. Cir. 2019), another case relied on by Echelon, demonstrates the difference between claims that are "directed to" an abstract idea and the claims at issue here. There, the court found that ChargePoint's patent claims were so broad that they "would cover any mechanism for implementing network communication on a charging station, thus preempting the entire industry's ability to use networked charging stations." *Id.* at 770. Peloton's claims are different. Instead of broadly claiming "putting competitive cycling classes online," they claim a particular system that "puts competitive cycling classes online," *and* pairs them with archived cycling classes, *and* displays time-synchronized performance parameters of the first user and remote users for both types of classes, *and* claims the "start signal" by which the performance parameters should be synchronized, etc. In this way, Peloton's claims provide significant, specific technological solutions to then-existing problems and tangible improvements over then-existing exercise technology.

      **(b)**     **The Peloton Patents' GUI Improvements Alone Survive Step 1.**

While the claims of the Peloton Patents are directed to far more than a graphical user interface, the claimed graphical user interface—on its own—is a sufficient technological improvement, proving that the claims are not "directed to" an abstract idea. Indeed, the Peloton Patents include the same types of claim limitations describing specific interface improvements that the Federal Circuit found ***not*** abstract in *Core Wireless* and *Trading Techs.* In *Core Wireless*, the Federal Circuit upheld the eligibility of claims "directed to an improved user interface for computing

devices," because the claim limitations "disclose[d] a specific manner of displaying a limited set of information to the user, rather than using conventional user interface methods to display a generic index on a computer." 880 F.3d at 1362-63. In *Trading Techs.*, the Court upheld the eligibility of claims that did "not simply claim displaying information on a graphical user interface," but rather "require[d] a *specific, structured graphical user interface* paired with a prescribed functionality directly related to the graphical user interface's structure that is addressed to and resolves a specifically identified problem in the prior state of the art." *Id.* (emphasis added).

The claims of the Peloton Patents similarly disclose a particular, improved manner of summarizing and presenting information in the claimed electronic devices. Claim 1 of the '590 Patent, for example, requires displaying digital video content of a live or archived cycling class, along with two sets of performance parameters, representing two different riders, at the same time on a display screen, such that a rider can view and compare the parameters. According to the claim, these parameters are displayed only after the rider selects a live or archived cycling class and are specifically pegged to the "same point in the selected cycling class." Claim 8 of the '590 Patent adds further detail, reciting that performance data is displayed "in secondary windows via the user interface." Claim 12 then "restrains the type of data that can be displayed," *Core Wireless*, 880 F.3d at 1363, by specifying the performance parameters displayed. Claim 15 additionally requires that the performance parameters be displayed in the form of a "leaderboard." And Claims 16-18 include further detail regarding the display and contents of that leaderboard.

For the reasons described above, Echelon has failed to carry its burden to prove by clear and convincing evidence that the Peloton Patents are directed to an abstract idea. Its motion should be denied, and the Court need not proceed to step 2. *Core Wireless*, 880 F.3d at 1363.

### 2.    *Alice* **Step 2**

If the Court does proceed to *Alice* step 2, the Peloton Patents plainly withstand scrutiny. Under step 2, a court "must examine the elements of the claim to determine whether it contains an

inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 221 (internal quotations omitted). To be sufficiently inventive, "the element or combination of elements [must be more than] well-understood, routine, and conventional.'" *Berkheimer I*, 881 F.3d at 1368. But that is a "*question of fact*," the absence of which Echelon must demonstrate by "clear and convincing evidence." *Id*. Dismissal is improper where a complaint contains "plausible and specific factual allegations that aspects of the claims are inventive." *Cellspin*, 927 F.3d at 1317. Under this precedent alone, the Court should deny Echelon's motion.

#### (a) The Peloton Patents Disclose Transformative, Inventive Concepts.

The Peloton Patents disclose several inventive concepts that make them patent eligible. As described in the Peloton Patents and Amended Complaint, these include: (1) comparing performance parameters of past and present riders from all over the world in live and archived classes, including in the form of a leaderboard; and (2) specific methods for displaying specified performance parameters. Echelon argues that the Peloton Patents' claim elements fall into one of two unpatentable categories: "(i) those admittedly embodied in existing in-studio cycling classes, and/or (ii) those that cover the abstract idea of making competitive cycling classes available online." D.I. 18 at 15. Echelon is wrong.

As explained above, Peloton's key innovation—making archived classes as appealing as live classes by offering a leaderboard-like display that dynamically compares a user's performance parameters to those of people who have taken the class before—is unrelated to prior art in-studio cycling classes (which were live only), and is *not even close to* simply live-streaming exercise classes. It was an innovative, technical improvement that solved the time *and* space problems associated with the prior art—and it's an improvement that time has shown has revolutionized the fitness industry. *See* Spec. at 1:37-62. The in-class model limited the competition to only the other people in the same physical studio at the same time. Peloton's claims, in contrast, broadened the competition to *anyone who had ever taken the same class from any location*.

14

> **(b)** **The Amended Complaint's "Specific, Plausible" Allegations of Inventiveness Compel the Denial of Echelon's Motion.**

Echelon's motion must also be denied because Peloton's Amended Complaint includes "plausible and specific factual allegations that aspects of the claims are inventive." *Cellspin*, 927 F.3d at 1317. Such allegations alone preclude dismissal. *Id.*; *Aatrix*, 882 F.3d at 1125 (same); *cf. Berkheimer I*, 881 F.3d at 1369–70, *cert. denied*, 2020 WL 129532 (2020); *see also Express Mobile*, 2019 WL 2514418, at *2.

The *Cellspin* facts are illustrative. In that case, the patents related to a very simple invention: "connecting a data capture device, *e.g.*, a digital camera, to a mobile device so that a user can automatically publish content from the data capture device to a website." 927 F.3d at 1309. The patents distinguished their claims from the prior art because "prior art devices could digitally capture images, video, or other types of content," but "[t]o upload that content on the Internet, . . . users had to transfer their content onto a personal computer using a memory stick or cable." *Id.* at 1309-10. The defendants, however, described the patents as simply "replac[ing] a USB or similar cable with Bluetooth." *Id.* at 1318. The district court granted 12(b)(6) motions to dismiss. *Id.* at 1312-13. As to step 2, the court found the claims did not recite an "inventive concept," because the "various claim elements . . . represent generic computer components performing 'as expected according to their ordinary use.'" *Id.* Indeed, the court awarded attorney fees against the plaintiff for failing to "analyze . . . critically" claims that were "manifestly directed to an abstract idea." *Id.* at 1313-14.

***The Federal Circuit reversed***. While agreeing that the claims merely described a way to automate an already-known process, *id.* at 1315-16, the Federal Circuit determined that Cellspin's claims *could not be disposed of on a 12(b)(6) motion*, because its complaint included allegations of inventiveness. *Id.* at 1317-18. The Federal Circuit pointed out that "implementing a well-known technique with particular devices in a specific combination . . . can be inventive." *Id.* at 1318.

Tellingly, Echelon does not even *mention* the *Cellspin* standard. No doubt because the allegations in Peloton's Amended Complaint easily meet it. For example, the *Cellspin* Court stated with approval that "Cellspin's amended complaints noted that prior art devices . . . were 'inferior.'" *Cellspin*, 927 F.3d at 1316. Peloton's Amended Complaint makes similar allegations:

- "Peloton's inventions solved two major problems for would-be exercisers. First, they removed a significant constraint of in-studio cycling classes, which are offered only at fixed locations and times, by allowing riders the flexibility to access cycling classes—in their own home and on their own schedule. Second, they solved a problem faced by previous at-home stationary bikes—rider boredom due to lack of variety and engagement—by providing live and on-demand classes with an improved and more efficient graphical user interface that not only recreates, but enhances, the real-time competition and community engagement that has made in-studio classes so popular."

D.I. 16 ¶ 3; *see also* ¶¶ 17, 23, 50. The *Cellspin* Court also noted approvingly that "[a]gainst this backdrop, Cellspin alleged it was unconventional to solve the problem the way Cellspin did." 927 F.3d at 1316. Again, Peloton made similar allegations:

- "As described herein, the Peloton Bike is a revolutionary, category-creating device that: (1) solved significant problems in the prior art; (2) has experienced immense market success; (3) has received near-universal market praise; (4) overcame significant technological hurdles in development; and (5) overcame initial market reservations about its viability. The Peloton Bike implemented inventive concepts that were not well-understood, routine, or conventional at the time it was developed. These inventive concepts are incorporated into the claims of the Peloton Patents."

D.I. 16 ¶ 48; *see also* ¶¶ 19, 49-67 (specifically detailing the various features of the Peloton Patents that are unconventional improvements over the prior art). These allegations are both embodied in the claims and consistent with the Specification. *See, e.g.*, Spec. at 1:33–61.

When a patent owner makes plausible allegations of inventiveness like Peloton has, courts routinely reject attempts to dismiss the claims at the pleading stage. *See Express Mobile*, 2019 WL 2514418, at *2 (denying 12(b)(6) motion because "factual allegations of inventiveness in the complaint … preclude a finding of invalidity on a motion to dismiss."); *TrackTime, LLC v. Amazon.com, Inc.*, C.A. No. 18-1518, D.I. 34 (D. Del. Jan. 8, 2020) ("amended complaint adequately alleges that the claims contain a sufficient inventive concept and, therefore, amendment

would not be futile (nor would the amended complaint properly be the subject of a motion to dismiss)"); *Cellwitch Inc. v. Tile, Inc.*, 4:19-cv-01315 (N.D. Cal. Nov. 21, 2019) (denying motion to dismiss where "Plaintiff alleges that claimed invention represents an improvement over the prior art") (attached as Exhibit A); *DivX, LLC v. Netflix, Inc.*, 2-19-cv-01602 (C.D. Cal. Nov. 4, 2019) (denying § 101 motion to dismiss where "Court is obligated to accept Plaintiff's allegations as true") (attached as Exhibit B). Indeed, another court recently denied a § 101 motion to dismiss Peloton's '315 Patent, reasoning that "*because of the quoted language within the asserted patents and the Second Amended Complaint, the Court concludes that **factual disputes remain as to whether the invention describes well-understood, routine, and conventional activities**.*" *Peloton*, 2019 WL 6843501, at *3 (emphasis added).[5]

Echelon has three responses to Peloton's lengthy, detailed allegations of inventiveness. *First*, Echelon attempts to show that certain aspects of Peloton's claims were conventional in unrelated fields. *See* D.I. 18 at 18-20. This analysis fails, first, because it raises questions of fact that are contrary to the Amended Complaint, and second, because it ignores the fundamental point that an "inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom*, 827 F.3d at 1350; *see also Guada Techs. LLC v. Vice Media, LLC*, 341 F. Supp. 3d 390, 399 n. 4 (D. Del. Sep. 17, 2018) (facts "asserted as though they self-evidently prove Defendant's points" are insufficient to warrant dismissal under step 2).[6]

---

[5] Echelon's argument that this decision was contrary to law, D.I. 18 at n. 6, is incorrect. The Hon. Roy Payne properly explained that the step 2 analysis involves "whether the additional elements [in addition to the abstract concept itself] transform the nature of the claim into a patent-eligible application," and applied that standard. *Peloton*, 2019 WL 6843501, at *1.

[6] Echelon is also wrong that the Federal Circuit rejected claims "on nearly identical facts" in *Electric Power v. ALSTOM S.A.,* 830 F.3d 1350 (Fed. Cir. 2016). The claims in *Electric Power* bear no resemblance to the Peloton claims because the claims in that case truly were about no more than processing pre-existing information. This is a far cry from the Peloton claims, which: (1) create a user experience via physical mechanisms (such as a bike, user interface, plurality of sensors, etc,); (Continued...)

*Second*, Echelon argues that Peloton has admitted that "its invention was 're-creating existing in-studio exercise classes at home.'" D.I. 10 at 17-18. Peloton has done no such thing. *See* D.I. 16, ¶ 19 ("[N]ot only does Peloton recreate the in-studio experience, it improves it."); ¶¶ 48-67 (detailing at length the inventive and non-conventional nature of the Peloton Patents' claims and their improvement to the prior art). As explained above, Peloton's key innovation—making archived classes as appealing as live classes by offering a leaderboard-like display that dynamically compares a user's performance parameters to those of people who have taken the class before—is *not even close to* just making existing in-studio classes available at home. *See* Spec. at 1:37-62; D.I. 16 ¶ 3. Echelon also wrongly suggests that bringing an experience to a different setting is not inventive. To the contrary, doing so can, and often does, require major novel, technological innovation, like Peloton's in this case. *See* D.I. 16 ¶¶ 3, 30-33; 48-67.

*Third*, Echelon argues that certain of the claim elements, separate and apart from "providing competitive cycling classes online," are irrelevant to the step 2 analysis because they are *themselves* abstract. D.I. 18 at 17-19. This argument fails as well. The step 2 analysis is a search for an "inventive concept." *Alice*, 573 U.S. at 221. "A claim that recites an abstract idea must include additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea." *Id.* (internal quotations omitted). There can be no question that the concepts of: (1) offering remote users live *and* archived cycling classes; and (2) allowing for the time-synchronized comparison of performance parameters in an archived class; "ensure that the claim[s are] more than a drafting effort designed to monopolize" the idea of putting cycling classes online. *Id.* Instead, they

---

(...Continued)

(2) deal not with information already "available," but with information—such as performance parameters and archived and live classes—the creation of which is recited in the claims; and (3) recite technical means that are an advance over prior technology. Regardless, whether any one of the inventive elements identified here is conventional is irrelevant, because their combination is anything but. *Bascom*, 827 F.3d at 1349-52 (Fed. Cir. 2016).

make concrete improvements to the claimed exercise system beyond the improvements achieved by the idea of putting competitive cycling classes online. In this way, they are inventive concepts that ensure patent eligibility under *Alice* step 2.

Echelon makes no attempt to explain why the two concepts listed above are "abstract," and Echelon is incorrect that "appending limitations that are themselves abstract does not supply an 'inventive concept.'" D.I. 18 at 14. To the contrary, a combination of limitations that might be individually abstract provides an "inventive concept" if it is unconventional and "improve[s] an existing technological process." *Bascom*, 827 F.3d at 1350-51. Indeed, in *Bascom*, each individual element of the claims could be characterized as "abstract," but the combination was still patent-eligible. The claims were directed towards the abstract idea of "filtering content on the Internet," incorporated the idea of installing the filtering tool at a location "remote from end users," and added the idea of having "customizable filtering features specific to each end user." *Id.* at 1348, 1350. All this was implemented with a generic computer. *Id.* Even so, the Federal Circuit found that the combination provided an inventive concept under *Alice* step 2, because "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces" when the claims "are read to 'improve[] an existing technological process." *Id.* at 1350-51 (alterations in original).[7]

More generally, Echelon's analysis runs afoul of: (1) the Federal Circuit's warning that " 'all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena,

---

[7] *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161 (Fed. Cir. 2018) and *Baggage Airline Guest Servs., Inc. v. Roadie, Inc.*, 351 F. Supp. 3d 753 (D. Del. 2019), relied upon by Echelon, are not to the contrary. In *SAP*, the Court could not find "an inventive concept in the non-abstract application realm," because the claim elements identified by the patentee all related to mathematical functions performed on generic computers. In *Baggage Airline*, this Court found that certain claim limitations did not provide an "inventive concept" where they "neither narrow[ed] the invention to avoid preemption nor ma[de] it directed to a non-abstract idea." 351 F. Supp. 3d at 760.

or abstract ideas.'" *Vanda*, 887 F.3d at 1134; and (2) the fact that the Court must analyze the patent claims as a whole, and not as individual limitations. *Diamond v. Diehr*, 450 U.S. 175, 188-89 (1981); *King Pharm., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1277 (Fed. Cir. 2010); *see also In re Bilski*, 545 F.3d 943, 958 (Fed. Cir. 2008) ("[I]t is irrelevant that any individual step or limitation . . . by itself would be unpatentable under § 101.").

In short, because Peloton's Amended Complaint and Specification contain specific, plausible allegations of inventiveness that are tied to the patent claims, Echelon's Motion should be denied under controlling precedent. *See Cellspin*, 927 F.3d at 1317.

## V.   **CONCLUSION**

For the foregoing reasons, Peloton respectfully requests that the Court deny Echelon's Motion. In the alternative, Peloton requests leave to amend the Amended Complaint to add, among other things, additional factual allegations of inventiveness. *See Aatrix*, 882 F.3d at 1126-27.

Morris, Nichols, Arsht & Tunnell LLP

*/s/ Michael Flynn*

_____
Michael Flynn (#5333)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
mflynn@mnat.com
araucci@mnat.com

OF COUNSEL:

Steven N. Feldman
Christina V. Rayburn
Karen Younkins
Kevin X. Wang
Maxwell K. Coll
Hueston Hennigan LLP
523 West Sixth Street, Suite 400
Los Angeles, CA 90014
(213) 788-7272

January 27, 2020

*Attorneys for Plaintiff Peloton Interactive, Inc.*

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 27, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on January 27, 2020, upon the following in the manner indicated:

Benjamin J. Schladweiler, Esquire                    *VIA ELECTRONIC MAIL*
GREENBERG TRAURIG, LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
*Attorneys for Defendant*

Douglas R. Weider, Esquire                           *VIA ELECTRONIC MAIL*
James Ryerson, Esquire
GREENBERG TRAURIG, LLP
500 Campus Drive, Suite 400
Florham Park, NJ 07932
*Attorneys for Defendant*

*/s/ Michael J. Flynn*
_____
Michael J. Flynn (#5333)