IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PELOTON INTERACTIVE, INC., <br><br> Plaintiff, <br><br> v. <br><br> ECHELON FITNESS MULTIMEDIA, LLC, ECHELON FITNESS, LLC, ECHELON STUDIO, LLC, and VIATEK CONUSMER PRODUCTS GROUP, INC., <br><br> Defendants. | Civil Action No. 19-1903-RGA |
| PELOTON INTERACTIVE, INC., <br><br> Plaintiff and Counter-Defendant, <br><br> v. <br><br> ICON HEALTH & FITNESS, INC., <br><br> Defendant and Counterclaimant. | Civil Action No. 20-662-RGA |

## MEMORANDUM OPINION

Michael J. Flynn, Anthony D. Raucci, Andrew M. Moshos, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Steven N. Feldman, LATHAM & WATKINS LLP, Los Angeles, CA; Lawrence J. Gotts (argued), Susan Y. Tull (argued), Gabriel K. Bell, LATHAM & WATKINS LLP, Washington, D.C.; Marc N. Zubick (argued), LATHAM & WATKINS LLP, Chicago, IL; David F. Kowalski, Patrick C. Justman, LATHAM & WATKINS LLP, San Diego, CA; William J. Trach, LATHAM & WATKINS LLP, Boston, MA, Attorneys for Plaintiff.

Frederick L. Cottrell, III, Christine D. Haynes, RICHARDS, LAYTON & FINGER LLP, Wilmington, DE; Benjamin J. Schladweiler, GREENBERG TRAURIG LLP, Wilmington, DE; David R. Wright (argued), MASCHOFF BRENNAN, Salt Lake City, UT; Douglas R. Weider (argued), James L. Ryerson, GREENBERG TRAURIG LLP, Florham Park, NJ, Attorneys for Defendants.

August 3, 2021

ANDREWS, U.S. DISTRICT JUDGE:

Before me is a claim construction dispute concerning U.S. Patent No. 10,486,026 ("the '026 Patent") and U.S. Patent No. 10,639,521 ("the '521 Patent").[1] The parties submitted a Joint Claim Construction Brief (D.I. 145) and I heard oral argument on June 24, 2021. (D.I. 154). At the hearing, I resolved three of the five disputed terms. (D.I. 153; D.I. 154 at 23:17-21). This opinion concerns the final two terms: "archived exercise class" and "performance data."

## I.  BACKGROUND

The asserted patents disclose "a system and method for providing streaming and on-demand exercise classes" to remote participants. ('026 Patent 1:30-33). In several embodiments, users see and hear video and audio content associated with the exercise classes and may also view "performance parameters" that are detected as they participate in the class. (*Id.* at 2:32-42, 43-57). Per the parties, the following claims are representative:

**'026 Patent, Claim 1:**

> 1. An exercise system for computer-augmented use at home by a first user participating in an *archived exercise class* accessible over a computer network, the exercise system comprising:
> an exercise device configured for a first user to cause movement of a portion of the exercise device;
> a sensor operable to generate first user *performance data* based on activity by the first user when the first user causes the movement of the portion of the exercise device; and
> a computer configured to:
> cause a display screen to present a plurality of available *archived exercise classes* for selection;
> accept from the first user, via a user input interface, a selection of one of the available *archived exercise classes*, thereby resulting in a selected *archived exercise class*;
> receive, via a computer network, data representing content of the selected archived exercise class;

---

[1] The parties cite to the '026 Patent specification as representative which is "substantively identical" to the '521 Patent specification. (D.I. 145 at 1 n.3).

1

    cause the display screen to display the content of the selected *archived exercise class* while the first user participates in the selected *archived exercise class* by causing movement of the portion of the exercise device;
    receive via a sensor input interface, the first user *performance data* from the sensor during at least a portion of the selected *archived exercise class*;
    generate, on a basis of the first user *performance data*, a first user performance parameter;
    receive, via the computer network, archived *performance data*, representing archived user performance parameters for a plurality of other users over at least the portion of the selected *archived exercise class*, wherein the archived *performance data* was previously generated by the other users in one or more locations on the exercise device while participating in the archived exercise class;
    synchronize the archived *performance data* with the first user *performance data*, wherein the archived user performance parameters represented by the archived *performance data* are synchronized with the first user performance parameter; and
    cause the display screen to display a dynamically updating ranked list of the first user performance parameter and at least some of the synchronized archived user performance parameters, to thereby simulate the first user competing with at least some of the other users.

**'026 Patent Claim 8:**

8. The exercise system of claim **1**, wherein the computer is further configured to generate a leaderboard from the archived *performance data* and the first user performance parameter, the leaderboard representing performance parameters at the same point in the selected *archived exercise class*, and to display the leaderboard on the display screen.

## II.   LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at *1 (D. Del. Sept. 4, 2013) (quoting *Phillips*, 415 F.3d at 1324) (alteration in original). When construing patent claims, a court considers the literal language of the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977–80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370

(1996). Of these sources, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotation marks omitted).

"[T]he words of a claim are generally given their ordinary and customary meaning. . . . [Which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312–13 (citations and internal quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

When a court relies solely upon the intrinsic evidence—the patent claims, the specification, and the prosecution history—the court's construction is a determination of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331 (2015). The court may also make factual findings based upon consideration of extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317–19 (internal quotation marks omitted). Extrinsic evidence may assist the court in understanding the underlying technology, the meaning of terms to one skilled in the art, and how the invention works. *Id.* Extrinsic evidence, however, is less reliable and less useful in claim construction than the patent and its prosecution history. *Id.*

3

"A claim construction is persuasive, not because it follows a certain rule, but because it defines terms in the context of the whole patent." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GMBH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (citation and internal quotation marks omitted).

### III. CONSTRUCTION OF DISPUTED TERMS

**A.** **"archived exercise class[es]"** ('026 Patent claims 1, 2, 4, 5, 7-9, 11-13, 15, 16, 18; '521 Patent claims 1, 9, 11, 16)

 a. *Plaintiff's proposed construction*: Plain and ordinary meaning in light of the intrinsic evidence, which is "stored recording[s] of [an] instructor led exercise course[s] of instruction"

 b. *Defendants' proposed construction*: Plain and ordinary meaning, or alternatively, "on-demand classes"

 c. *Court's pre-*Markman *proposed construction*: Exercise class[es] that have been recorded and stored.

 d. *Court's construction*: Exercise class[es] that have been stored.

At oral argument, the parties focused on the use of the term "recorded" in the Court's proposed construction (D.I. 154 at 6:3-12:10; *see* D.I. 153). The crux of the parties' dispute concerning the term "recorded" is whether an "archived exercise class" encompasses only content that was once live, recorded, and subsequently stored, or may include other forms of content. Defendants argue that, as an example, a text- or image-based class that was never live may still be stored in a database and "archived" within the meaning of the claim language. (*See id.* at 8:11-23). Plaintiff argues that the patents contemplate only live exercise classes, which are recorded and subsequently archived. (*Id.* at 13:10-13).

4

Plaintiff's argument raises a secondary issue: the meaning of "live." At oral argument, Plaintiff defined a live class as one with "an instructor" and "a designated time." (*Id.* at 60:2-3). As the parties separately disputed the term "class[es]" in terms of whether or not an instructor was required,[2] it appears that, under Plaintiff's construction, the addition of "live" denotes whether a class was ever offered at a designated time. Defendants responded that the patent does not limit users to only previously scheduled classes and that one could create content that is unscheduled. (*Id.* at 15:8-12).

Defendants also argued more broadly that the use of the term "record[ing]" in Plaintiff's proposed construction (and the Court's initial construction) improperly limits the content of the archived exercise classes. (*Id.* at 8:9-23). In their briefing, Defendants assert that, "Other video content exists that does not need to be recorded. For example, a virtual course." (D.I. 145 at 9). A content limitation already exists in dependent claim 4, which reads, "The exercise system of claim 1, wherein the content of the selected archived exercise class comprises digital video content and audio content." ('026 Patent 16:32-34). *See Phillips*, 415 F.3d at 1315 (stating that "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim"). The limitation in claim 4 may not go so far as to imply the inclusion of virtual content, but it does suggest that archived exercise class of claim 1 encompasses something broader than digital video and audio content.

I agree that the term "archived exercise class" does not contain an additional content-based limitation beyond requiring that what is archived is, indeed, an exercise class. The parties have separately disputed what constitutes a "class," which I will not repeat here. Plaintiff argues

---

[2] *See* D.I. 145 at 4-10. I construed the term "class[es]" to have its plain and ordinary meaning, with the understanding that a class does not require that it be "instructor led." (D.I. 153).

5

that in the context of the patent, "the only kinds of exercise classes that are described within the specification are live classes, classes that were at least currently live or were once live and subsequently recorded and stored." (D.I. 154 at 13:24-14:2). However, the specification at least makes reference to the creation of non-live content when it states that "users may generate live or recorded classes" and that "recording studios may include space for live, instructor-led, in-studio cycling classes with live studio participation or may be dedicated studios with no live, in-studio participation." ('026 Patent 11:33-36, 44-45). Plaintiff has not cited to any portion of the specification that indicates that an archived exercise class must have been previously scheduled at a specific time.

I will adopt a construction similar to that proposed before the Markman Hearing (D.I. 153), without the use of the term "recorded." I accept Defendants' suggestion that an archived class could be created in some way other than by a recording. (D.I. 154 at 6:5-15). The term "archived exercise class" does not encompass only classes that were "once live" and does not require the exercise classes to be in a specific format.

B. **"performance parameters"** ('026 Patent claims 1, 3, 5, 8, 11-14, 19; '521 Patent 1, 3, 5, 8, 11-14, 19)

   a. *Parties' agreed upon construction*: numerical values related to a user's performance in an exercise class

   b. *Court's proposed construction*: performance metrics expressed as numerical values

The parties stipulated to a construction of "performance parameters"[3] and disputed only the related term, "performance data." (D.I. 145 at 4, 31). The parties' dispute on "performance data," however, centers entirely on the relationship between performance data and performance parameters. Any distinction between these terms is obscured by the fact that the proposed constructions for performance data and the stipulated construction for performance parameters are virtually identical. While Plaintiff argues that performance parameters are a subset of performance data (discussed below), I do not believe that either party argues that the terms are interchangeable. Accordingly, the Court proposes a new construction for performance parameters to better assist the jury: "performance metrics expressed as numerical values."[4] I use the word "metrics" because I think it means the same thing as parameters in this context, and I think it would be substantially more understandable by a jury. (Perhaps the word "information" could be used instead of "metrics.").

C. **"performance data"** ('026 Patent claims 1, 8, 11, 13, 15, 18, 19; '521 Patent claims 1, 8, 11, 13, 15, 18, 19)

    a. *Plaintiff's proposed construction*: Plain and ordinary meaning in light of the intrinsic evidence, which is: "data reflecting performance."

---

[3] The parties defined performance parameters as "numerical values relating to a user's performance in an exercise class." (D.I. 145 at 4). The specification gives as examples of a performance parameter "pedal cadence, power output, or heartrate." ('026 Patent 2:39). Thus, I think it is pretty clear that a performance parameter is something that, if it is displayed on a screen, can be read by a user.

[4] I have called this a "proposed construction" because I have given the parties no notice that I might do this. Thus, I am open to the possibility that this might be a bad idea. The parties should meet-and-confer, and, if, either jointly or singly, there are objections to this construction, I will consider them without applying the virtually impossible-to-overcome standard for a motion to reconsider.

    b. *Defendants' proposed construction*: Data reflecting performance distinct from performance parameters.

    c. *Court's construction*: data reflecting performance

As evidenced by their proposals, the parties agree on a portion of the proposed construction: performance data is "data reflecting performance." The remaining dispute is whether performance data may include performance parameters as a subset. (D.I. 154 at 53:2-11). Even if it does, Defendant's proposed claim construction is, in my opinion, a poor way of saying it.

Both parties cite support for their positions in the claim language. Defendants cite to claims 1 of the '026 and '521 Patents, which state "generate, on a basis of the first user performance data, a first user performance parameter." ('026 Patent 15:66-67, '521 Patent 16:4-5). The claim language, Defendants argue, indicates that, since a performance parameter is to be generated from performance data, the two must be distinct from each other. (D.I. 145 at 36).

In response, Plaintiff argues the opposite, citing to '521 Patent claim 19, which states, in part, "wherein performance data content received by at least one of the other users includes the first user performance parameter." ('521 Patent 18:45-49; D.I. 145 at 41). Claim 19 of the '026 Patent contains similar language. ('026 Patent 18:44-45 (referring to "archived performance data content")).

Unfortunately, the specification does not shed much light on the meaning of "performance data." In addition to "performance data" and "performance parameter," the specification uses the terms "sensor data," "performance metrics," and "performance information," which do not appear in the claims and seem, at times, to be used interchangeably. (*See, e.g.*, '026 Patent 7:58-8:10 ("performance metrics" include "power, . . . pedal cadence, heart rate"), 12:55-57). Defendants do cite to the specification, arguing that the embodiments contemplate the use of sensor data to calculate performance metrics, which is consistent with

8

their claim construction. (D.I. 145 at 40 (citing '026 Patent 5:45-62, 5:66-6:2, 9:11-17)). Plaintiff relies on references in the specification to performance data that is "displayed" during user competition, asserting that such references are actually referring to performance parameters as a subset of performance data because only performance parameters are displayed to the user. (D.I. 145 at 33-34 (citing '026 Patent 2:35-37, 9:37-40, 14:12-19)).

Plaintiff also cites to numerous claims and references to prosecution history from patents in the same family. (*See id.* at 32-35). For example, U.S. Patent No. 9,233,276 claims that performance data includes pedal cadence and power output ('276 Patent 17:1-4) while claim 3 of both asserted patents recites a "plurality of sensors configured to detect activity by the first user and generate a plurality of first user performance parameters to measure at least one of pedal cadence, power output, or a heartrate of the first user." ('026 Patent 16:28-31; '521 Patent 16:29-32). Plaintiff also cites the fact that in allowing a claim containing the term "performance parameters" in U.S. Patent 10,322,315, the examiner referred to performance parameters as "exercise data." (D.I. 145 at 34-35).

However, the cited portion of the '276 Patent is inconsistent with other aspects of Plaintiff's argument. For example, the dependent claims of the '276 Patent also require that the performance data (not the performance parameters) are displayed on the user interface. (*See* '276 Patent 15:65-67, 16:65-67). This conflicts with Plaintiff's argument that performance parameters are the subset of performance data that is synchronized and displayed. (D.I. 145 at 42). More importantly, it is not obvious why a distinction between performance data and performance parameters is inconsistent across the cited patents.[5]

---

[5] The parties have only provided the cover page and the claim language for the cited related patents. (D.I. 107-2, Ex. 2; Ex. 5). Given only this brief discussion, it is difficult to assign much weight to these related patents. *Cf. Aventis Pharm. Inc. v. Amino Chem. Ltd.*, 715 F.3d 1363,

On this record, the plain claim language is the best guide. The language "generate, on a basis of" ('026 Patent 15:66) does imply a distinction between the underlying data (the performance data) and the resulting performance parameter. The distinction between these terms is bolstered, if only tangentially, by the specification's references to calculating "custom scores" (*Id.* at 9:11-13) and "performance information." (*Id.* at 5:60-62). Both parties appear to agree that most performance data originates at a sensor (D.I. 145 at 32, 36-37)[6] and it follows that the performance parameter must be calculated or transformed before it is of use to the user.

However, while I agree with the idea embodied in Defendants' construction, I do not find that a negative limitation appended to "data reflecting performance" adequately reflects the distinction between the term "performance data" and "performance parameter." As I noted above in discussing "performance parameters," the parties' proposed constructions taken together risk unnecessarily confusing the jury. I think, though, with the proposed change to "performance parameters," I can use what the parties agree upon. Other claim language differentiates the two terms and forecloses Plaintiff's argument that performance parameters are simply a subset of performance data. In particular, to find infringement (at least for claim 1 of the '026 Patent), the "performance date" has to "generate" the "performance parameter." For that reason, I think Plaintiff's proposed construction is sufficient.

Lastly, I do not agree that the Court's construction implicates dependent claim 19, which, as Defendants argued, contains a different term: "performance data content" ('521 Patent) and

---

1374 (Fed. Cir. 2013) ("We have previously held that the same claim term can have different constructions depending upon the context of how the term is used within the claims and specification.").

[6] Plaintiff changed position on this during oral argument, offering the example of "number of classes taken," which is performance data not generated on the basis of the sensor. (D.I. 154 at 50:1-12).

"archived performance data content" ('026 Patent). (D.I. 154 at 42:10-18). The parties have not asked the Court to construe this term.

## IV.   CONCLUSION

Within five days the parties shall submit a proposed order consistent with this Memorandum Opinion suitable for submission to the jury.