# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

(302) 658-9200

Michael J. Flynn
(302) 351-9661
mflynn@morrisnichols.com

January 12, 2022

The Honorable Richard G. Andrews  *VIA E-FILING*
United States District Court, District of Delaware
844 N. King Street, Unit 9, Room 2325
Wilmington, Delaware 19801-3555

Re: *Peloton Interactive, Inc. v. Echelon Fitness Multimedia LLC*, No. 19-1903-RGA

Dear Judge Andrews:

Peloton respectfully moves to compel Echelon to produce three categories of documents central to the parties' claims and defenses: (i) documents produced by Echelon *to Peloton* in pending trademark and trade dress litigation against Peloton in the United Kingdom (RFP No. 306); (ii) documents concerning the advertised price of Echelon's products and subscription (RFP Nos. 224, 275-77); and (iii) documents concerning the GT+ Connect Bike (RFP Nos. 307-16). *See* Ex. 1.

## I. ARGUMENT

Rule 26(b)(1) allows a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." *McCardell v. Connections Cmt. Support Programs, Inc.*, 2019 WL 2298956, at *1 (D. Del. May 30, 2019). "Relevance is a broader inquiry at the discovery stage than at the trial stage," and thus, "relevant information need not be admissible" at trial. *Bing v. Spinelli*, 2021 WL 2826124, at *1 (D. N.J. July 27, 2021).

### A. Echelon Should Produce U.K. Litigation Documents That Are Highly Relevant to Peloton's Trademark and Trade Dress Claims.

Peloton filed a lawsuit against the same Echelon defendants in the United Kingdom, Case No. IL-2020-000074 ("U.K. Litigation"), for infringing the same trademarks and trade dress at issue here. Given the clear overlap of issues, it is extremely likely that the U.K. Litigation will yield relevant documents related to the parties' claims and defenses in this case. Echelon and Peloton must undertake discovery efforts in the U.K. Litigation regardless of the progress of this action, so there is no additional burden whatsoever on Echelon in producing the materials in this litigation. Peloton offered several alternatives to narrow or accommodate Echelon's concerns, including a document sharing arrangement and/or modification of the case protective orders that would allow the parties in the U.K. and U.S. litigations to share documents, thereby eliminating any purported burden in gathering or producing these materials. Echelon has rejected both of these offers and did not offer any counterproposal.

The documents Peloton seeks are highly relevant (given the identity of claims and accused intellectual property), and proportional to the needs of this case. Moreover, Peloton's request is consistent with the parties' practice of requesting *and producing* materials related to other past and pending litigations. Indeed, in response to Echelon's own Requests for Production, Peloton produced in this case materials related to three other (much more tangentially related) cases,

The Honorable Richard G. Andrews                                                                                      Page 2
January 12, 2022

including documents it produced in two cases against Flywheel Sports, Inc. in the Eastern District of Texas.  Peloton also entered into a Cross-Use Agreement with iFit and Echelon in this litigation, in which Peloton produced certain materials to both parties.  *See* D.I. 71 (designating a "common set of production documents" that Peloton will produce in both actions).  Echelon cannot demand Peloton produce its materials from other litigations and then refuse to produce documents from its own related litigations, especially given the nearly identical nature of the trademark and trade dress claims and defenses involved in the U.K. and U.S. litigations between the same parties.  Peloton is entitled to similar materials from Echelon, and there is no burden associated with producing these documents.

Echelon has offered no justification for why it will not produce these documents, particularly given it is producing these *same documents* to Peloton *already* in another litigation—a review which is surely underway.  To the extent Echelon contends its production of documents in the U.K. contains custodians or sources not directly requested in this litigation, that argument is inapposite (and applies with equal force to the *Flywheel* documents).  The key fact remains unchanged—these materials are relevant and not burdensome to produce.

    B.  <u>Echelon's Advertisements Are Relevant To Peloton's Unclean Hands Defense.</u>

Echelon accused Peloton of engaging in false advertising and unfair competition by advertising the price of the Peloton Bike separately from the Peloton subscription membership required to access most of Peloton's digital content.  *See, e.g.*, Ex. 2 (Peloton advertising its bike separately from a Peloton subscription for "$58/mo for 39 months").  Peloton countered with an affirmative defense of unclean hands, as Echelon has and continues to engage in substantively the same conduct in its own advertisements.  D.I. 90 at 15; *see also* Ex. 3 (Echelon mailer advertising an Echelon bike separately from a subscription for "As Low As $22 / mo"); Ex. 4 (Echelon website advertising the bike separately from a subscription for "$18/month"); Ex. 5 (Echelon Facebook page advertising the bike separately from subscription for "[a]s low as $42/mo").  Echelon, however, has refused to produce additional, representative samples of its advertisements that would establish this defense, asserting that such advertisements are "not accused of false advertising and thus (at best) tangentially related to the issues in this case."  Ex. 6.  These documents go to the heart of Peloton's unclean hands defense and should be produced, as Echelon cannot be heard to complain of Peloton's purportedly false advertising when it is engaged in essentially the same conduct.  *See Katiroll Co., Inc. v. Kati Roll & Platters, Inc*., 2011 WL 2294260, at *2 (3d Cir. 2001) ("The defense of unclean hands is applicable to all claims brought under the Lanham Act."); *Newborn Bros. Co., Inc. v. Albion Eng'g Co*., 299 F.R.D. 90, 98 (D. N.J. 2014) (unclean hands defense based on plaintiff "misleading distributors and consumers" was sufficiently pled and could prevent plaintiff from recovering on its own false advertising claim).

Peloton discovered certain relevant advertisements by happenstance.  When asked to produce representative samples of these advertisements, Echelon asserted that Peloton had sufficient documents to establish its defense and placed the burden on Peloton to continue monitoring and collecting ads from publicly available sources.  Ex. 6.  This is not the way discovery works.  Echelon must produce relevant advertisements that are in its custody or control.  *See* Fed. R. Civ. P. 34.  For obvious reasons, Peloton cannot merely hope to collect all such advertisements on its own, as this runs the risk of relevant ads being missed, especially since not all ads are currently publicly available.  Without these advertisements from Echelon, Peloton cannot fully explore Echelon's patterns and practices as it relates to Echelon's advertising of its bikes and subscriptions.  Echelon does not (and cannot) claim undue burden, as these materials are

The Honorable Richard G. Andrews  Page 3
January 12, 2022

within Echelon's possession and do not require a custodial review. Nor can Echelon claim lack of relevance, as these ads go squarely to Peloton's affirmative defense and directly undermine Echelon's false advertising claims against Peloton. Echelon cannot shield relevant documents from production simply because such materials are damaging to its claims.

    C.     <u>Echelon's Documents Concerning the GT+ Connect Bike Are Relevant To Its Trade Dress Functionality Defense.</u>

Peloton recently learned that Echelon "redesign[ed]" its infringing EX-3 bike (now named the "GT+ Connect Bike") and, in the process, significantly altered the trade dress of the bike, including revising the related logo and colors used on the GT+ Connect Bike. The "redesign" of the bike (and logo) goes to the heart of Echelon's functionality defense and demonstrates that alternative designs for Echelon's bikes were and are available to it. D.I. 86 at 24 ("Peloton's bike . . . [is] functional, and thus [] not protectable as trade dress under the Lanham Act or the Delaware Trademark Act."). The existence of alternative designs is central to the issue of trade dress functionality. *See Duraco Prods. v. Joy Plastic Enters.*, 40 F.3d 1431, 1442 (3d Cir. 1994); *Honeywell Int'l Inc. v. ICM Controls Corp.*, 2013 WL 12139845, at *6 (D. Minn. Sept. 24, 2013).

Evidence related to the design process for the GT+ Connect Bike will likely show that there are numerous alternative designs available to Echelon that would not have infringed Peloton's trade dress rights. Indeed, the trade dress for the EX-3 bike (an infringing product) is significantly different from the trade dress for the GT+ Connect Bike (which does not infringe Peloton's trade dress rights). *Compare* Ex. 4 (EX-3 bike) *with* Ex. 7 (GT+ bike). The redesign process for the new logo and the selection of different colors and fonts for this new logo, all of which are incorporated into Echelon's trade dress for its bikes, will likely show the same. *See* Ex. 8. Beyond showing that alternative, non-infringing designs were and are available to Echelon, these documents will also show that Echelon will not be placed at a non-reputational competitive disadvantage when it is prohibited from infringing Peloton's trade dress. *See TrafFix Devices v. Mktg. Displays*, 532 U.S. 23, 32 (2001) ("[F]unctional feature is 'one the exclusive use of [which] would put competitors at a significant non-reputation-related disadvantage.'"). Having asserted that Peloton's trade dress is functional, Echelon has put the existence of alternative designs at issue and it should be required to produce these documents. Even if Echelon had not asserted this defense, these documents would remain relevant to Peloton's affirmative obligation to establish that its unregistered trade dress is not functional. Thus, these documents are doubly relevant.

Echelon argues that the documents would inadmissible at trial under Fed. R. Evid. 407. This position misses the mark. As an initial point, courts have held that Rule 407 does not apply to design changes like this. *See GSI Grp., Inc. v. Sukup Mfg., Co.*, 641 F. Supp. 2d 732, 747 (C.D. Ill. 2008) (revisions to advertising materials not covered by Rule 407). Regardless, whether these documents are ultimately admissible at trial does not alleviate Echelon's obligation to produce them, as the documents may themselves lead to relevant and admissible evidence and can still be "admit[ted] for another purpose" at trial, such as demonstrating that Peloton's trade dress is non-functional. *See* Fed. R. Civ. P. 26(b)(1). For these reasons, Echelon should be ordered to produce the requested documents.

                                          Respectfully,

                                          Michael J. Flynn (#5333)
                                          *Counsel for Peloton Interactive, Inc.*

cc:     All counsel of record (via CM/ECF and email)