MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

(302) 658-9200

MICHAEL J. FLYNN
(302) 351-9661
mflynn@morrisnichols.com

January 14, 2022

The Honorable Richard G. Andrews *VIA E-FILING*
United States District Court, District of Delaware
844 N. King Street, Unit 9, Room 2325
Wilmington, Delaware 19801-3555

*Re: Peloton Interactive, Inc. v. Echelon Fitness Multimedia LLC*, C.A. 19-1903-RGA

Dear Judge Andrews:

Echelon moves this Court to compel Peloton to produce three categories of documents without acknowledging that Peloton has already produced, agreed to produce, or conducted a reasonably diligent search for these very materials. At the outset of this litigation and to narrow discovery burdens, the parties agreed to an ESI Protocol (D.I. 71, Ex. B ¶ 3)—agreeing to search ten custodians using negotiated search terms and date ranges. Pursuant to this protocol, Peloton reviewed over 450,000 documents. Peloton subsequently agreed, on its own accord, to add additional custodians, date ranges, and search terms to identify materials responsive to Echelon's continuing requests, including those that are the subject of this motion. As Peloton has conducted numerous additional efforts to retrieve these materials, it is unclear what additional relief Echelon now seeks, or how the resulting burden to Peloton would be proportional to the needs of the case.

**I.  ARGUMENT**

    A.  <u>Peloton Produced Documents Related to the Flywheel Litigation and Will Supplement Its Production.</u>

Peloton agreed to produce reasonably accessible Flywheel Litigation materials, and will be supplementing its production the week of January 17. In its motion, Echelon misrepresents the history of negotiations and productions relating to these materials. Specifically, after unsuccessful attempts by Peloton to secure permission from Flywheel to disclose responsive documents (as required by the Flywheel Litigation protective order), Echelon sought from this Court in March 2021 an order "requiring the documents to be produced under this Court's protective order should Peloton be unable to secure permission from Flywheel." D.I. 113 at 3. Contrary to Echelon's contentions, this motion did not seek to compel production of the "same Flywheel settlement documents" at issue here, but instead addressed the parties' inability to obtain Flywheel's consent to disclose documents that Peloton had *already agreed to produce*. D.I. 249 at 2. Echelon withdrew its motion after Peloton obtained permission from Flywheel to disclose these documents.[1] Nine months later, in December 2021 (days before filing its antitrust claims), Echelon

---

[1] Peloton then searched and produced (or logged) emails pursuant to the ESI Protocol and reviewed and produced non-custodial documents in Peloton's possession responsive to Echelon's requests, including: (1) transcripts, exhibits, sealed filings, discovery responses, and the Settlement Agreement from the Flywheel Litigation; (2) documents produced by Peloton in the Flywheel

claimed that it had not received two discrete sets of materials purportedly related to the Flywheel Litigation: (1) "due diligence that Peloton performed as part of the settlement to determine what it purchased from Flywheel," and (2) drafting and negotiation of the Flywheel Settlement. Ex. 1; D.I. 249-1 (Ex. I); *see also* D.I. 249 at 2 (listing documents falling into these two categories).

As to "due diligence" documents, on December 22, 2021 Peloton told Echelon that it "had conducted a reasonably diligent search for materials" but would "investigat[e] whether any additional documents related to [due diligence] exist." D.I. 249-1, Ex. I. As a result of that investigation, Peloton identified two custodians—beyond those agreed to in the ESI Protocol—that might have additional responsive documents. Peloton informed Echelon that it was running new terms and reviewing those hits, and anticipates making a production the week of January 17, 2022—well before the close of fact discovery. At this point, it is unclear what additional, non-privileged documents Echelon is seeking, and its Motion failed to articulate requested relief.

With respect to the drafting and negotiation of the Flywheel Settlement, Echelon demands that Peloton take the extraordinary step of collecting and reviewing the emails of Peloton's counsel (and former law firm) from 2018—while providing absolutely no justification for this intrusive and burdensome exercise. Such an effort would presumably involve a collection and review of (largely privileged) emails and documents from Peloton's in-house counsel, or from law firms not currently involved in this litigation. Echelon has not even attempted to demonstrate how any "potential benefits" from this process would outweigh "the burden to [Peloton] in gathering the ESI, filtering through the ESI for what is privileged, and then cataloging it." *See Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.*, 2019 WL 3369659, at *1 (D. Del. July 15, 2019) (denying motion to compel ESI of counsel where the "[t]he possibility of finding discoverable information" was outweighed by burden). Furthermore, Echelon has not detailed any conduct by Peloton that justifies the imposition of attorneys' fees in connection with the Flywheel documents. *C.f. Hawk Mountain LLC v. Mirra*, C.A. No. 13-2083-SLR-SRF, D.I. 455 (D. Del. June 3, 2016) (discovery sanctions for failure to comply with court order to produce documents) (Ex. 3); *LG. Philips LCD Co., Ltd v. Tatung Co.*, 2005 WL 8170100, at *11, *16, *20-21 (D. Del. Aug. 16, 2005), *report and recommendation adopted,* 2006 WL 8452351 (D. Del. Sept. 29, 2006) (discovery sanctions for failure to appear for depositions and failing to respond to written discovery despite court order).

B.   Peloton Agreed To Produce Non-Custodial and Custodial Pricing Documents

Pursuant to the ESI Protocol, Peloton produced custodial and non-custodial documents responsive to RFP No. 62, which seeks "all documents concerning price setting for Peloton's bikes, including the reasons for setting the price at $2,245 and any other price points considered or used." D.I. 249-1, Ex. F. In August 2021, after the parties negotiated and collected ESI custodians and search terms, Peloton lowered the price of its Bike to $1,495. Echelon took no steps from August until December with respect to this fact. In December 2021, Echelon requested, for the first time, documents related to this price drop. Ex. 1. Echelon made no proposal on how Peloton should conduct that search. Nevertheless, Peloton agreed to review non-custodial documents and undertook an additional collection and review of emails from June 1, 2021 for three custodians. Ex. 2. Peloton is reviewing 1,747 emails that hit on the two search strings: (1) (price! OR pricing

---

Litigation; (3) documents related to the Flywheel IPR; and (4) Peloton emails related to the Flywheel Litigation and Settlement.

The Honorable Richard G. Andrews													Page 3
January 14, 2022

OR cost!) /20 (drop! OR lower! OR reduce! OR slash! OR cut!); and (2) (price! OR pricing! OR cost!) AND (competitor! OR competition! OR Echelon OR iFit OR ICON). Peloton has informed Echelon that it will produce responsive, non-privileged documents the week of January 17. Echelon offers this Court no justification for imposing an additional burden on Peloton.

   C. <u>Peloton Has Conducted a Reasonably Diligent Search for Zendesk Records</u>

  Echelon and Peloton use a third party, Zendesk, to field and respond to customer communications, questions, and feedback. Zendesk generates several thousand records weekly. Given the massive volume and burden associated with collecting and ingesting this data, Peloton and Echelon agreed to utilize search terms to conduct their respective review of Zendesk, outside the ESI Protocol. As Peloton explained to Echelon, Peloton collected and reviewed over 18,000 Zendesk records in connection with Echelon's Requests—over 13,000 of which were identified using a search string designed to capture potential consumer confusion surrounding Peloton's pricing advertisements: ("(Advertis! Ad!) /20 ("Our Best Price Ever" OR financ! or price!)").[2]

  Despite this review, Echelon contends documents *must* exist from a two-week period in September 2018, citing an email suggesting that Peloton received 45 tickets during that period related to "confusion re: $58+$39." D.I. 249-1, Ex. H. Peloton agreed to investigate this email in an attempt to determine its accuracy and surrounding context, and intends to produce additional documents related to this email the week of January 17, 2022. Echelon cites no other justification for its contention that Peloton's search was incomplete. Peloton disclosed its search string to Echelon and stated it would consider a proposal regarding any "other search [that] should be run over a targeted period" to the extent Echelon believed limited records were missing. Ex. 2. Echelon then proposed incredibly broad terms spanning four years, resulting in over *5 million* hits.

  There is no justification for Peloton to review thousands (let alone millions) more documents in search of a needle in a haystack—particularly where Peloton *already has* produced documents addressing this issue. *See* Fed. R. Civ. P. 26(b)(2)(c)(i) (court can limit duplicative, cumulative, or overly burdensome discovery); *Acceleration Bay LLC v. Activision Blizzard Inc.*, C.A. No. 16-453, D.I. 125 (D. Del. Apr. 19, 2017) (denying motion to compel search of 800,000 document hits on ground it was overly burdensome) (Ex. 4). Echelon's assertion that Peloton has "failed to produce hundreds or thousands more pertinent records" over the years is baseless and not supported by the email it cites. Indeed, Peloton produced hundreds of documents related to alleged consumer confusion, including Zendesk records and email.

  Echelon has no grounds (and cites no law) to justify an "adverse inference" that consumers were confused by Peloton's misleading pricing advertisement. To the contrary, "the Federal Rules of Civil Procedure do not impose a duty upon litigants to examine every scrap of paper in its potentially voluminous files in order to comply with its discovery obligations." *GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.*, 2016 WL 859229, at *42 (D. Del. Mar. 3, 2016) (citation omitted). Peloton has already produced hundreds of documents bearing on this issue. While it has expressed willingness to do more, it is manifestly unfair to allow Echelon to require Peloton to engage in a fishing expedition. Echelon's motion to compel should be denied.

---

[2] Echelon asks the Court to order, in the alternative, a declaration detailing this search. Peloton has already detailed this process to Echelon and now, to the Court. No declaration is necessary.

The Honorable Richard G. Andrews  Page 4
January 14, 2022

Respectfully,

*/s/ Michael J. Flynn*

Michael J. Flynn (#5333)
*Counsel for Plaintiff Peloton Interactive, Inc.*