# EXHIBIT 1

**Saba, Jessica (DC)**

| | |
|---|---|
| **From:** | schladweilerb@gtlaw.com |
| **Sent:** | Wednesday, December 8, 2021 9:50 PM |
| **To:** | Saba, Jessica (DC) |
| **Cc:** | #C-M PTON - ECHELON - LW TEAM; WeiderD@gtlaw.com; ryersonj@gtlaw.com; blofieldt@gtlaw.com; JayD@gtlaw.com |
| **Subject:** | Peloton/Echelon M&C |

Jess –

During our meet and confer, you asked us to put the following requests in writing:

- In addition to the Flywheel negotiation documents that you said would be produced next week, we also discussed production of documents concerning any due diligence that Peloton performed as part of the settlement to determine what it purchased from Flywheel.
- Peloton has agreed to produce pricing documents next week. As we discussed, Peloton has not produced any documents concerning its second price drop (from $1895 to $1495). Because that drop happened recently, it occurred after the custodial cutoff for search terms. We request both custodial documents and non-custodial documents, such as board minutes concerning that second price drop.
- In addition to the financial documents discussed in our Nov. 15 letter, which we understand Peloton is producing next week, we request that Peloton produce customer level sales information, similar to what Echelon recently produced.

We understand you will be responding to these requests this week. We look forward to your response.

Many thanks,

**Benjamin Schladweiler**
Shareholder

Greenberg Traurig, LLP
The Nemours Building | 1007 North Orange Street, Suite 1200 | Wilmington, DE 19801
T +1 302.661.7352
schladweilerb@gtlaw.com  |  www.gtlaw.com  |  View GT Biography

 GreenbergTraurig

---

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.

# EXHIBIT 2

**Saba, Jessica (DC)**

| | |
|---|---|
| **From:** | Salerno, Matthew (NY) |
| **Sent:** | Wednesday, January 12, 2022 3:56 PM |
| **To:** | schladweilerb@gtlaw.com |
| **Cc:** | ryersonj@gtlaw.com; WeiderD@gtlaw.com; #C-M PTON - ECHELON - LW TEAM; mflynn@morrisnichols.com; JBlumenfeld@morrisnichols.com |
| **Subject:** | RE: Peloton v Echelon |

Ben,

We're disappointed in the response.  Notwithstanding the unproductive commentary, it appears Echelon is not agreeing to produce any materials in response to our straightforward requests.  We can confer further on the licensing docs, but as that request has similarly been outstanding since the beginning of discovery, as Echelon is not agreeing to production of those materials (it has not produced any to date), we would rather Echelon simply state as much now so we can bring the issue forward.  We are available on Monday to confer.

Peloton's additional searches for materials responsive to Echelon's price drop requests are reasonable and Peloton has represented it will provide responsive documents identified through its search next week.  We are considering Echelon's request to augment these searches, but Peloton will not be in a position to respond today.

With respect to your contention regarding Zendesk, we should make sure the record is clear.  My outreach yesterday was not "a last-minute attempt to avoid a discovery dispute."  Instead, I raised Zendesk because, notwithstanding Echelon's complaints regarding Zendesk, Echelon has failed at every step of the way to make a proposal to Peloton with regard to isolating the Zendesk records it claims should be (but have not been) produced.  Your contention that "Peloton's search terms were clearly too narrow" is flatly wrong.  As I explained yesterday, we performed a diligent and good faith search for records, and the term we used is reasonable.  Indeed, this term was developed after extensive trial and error, and resulted in review of over 13,000 documents (we reviewed over 18,000 records total).  As I explained yesterday, there are millions of Zendesk records, and Peloton receives tens of thousands of such records weekly.  Notwithstanding our diligent review, I invited you to make a narrow proposal for us to consider for a targeted time period where you believe specific records may be missing.  You have failed to do that.  Instead, you are proposing extremely broad and problematic terms over a period of years.  The preliminary results on those terms are as follows:

> 58! - 3,105,857 hits
> 49! - 2,266,833 hits
> subscription and includ! - 183,251 hits (preliminary searching in the ZenDesk does not allow proximity delimiters)

We therefore will not be running the broad and unfocused terms you have just today proposed, and stand by our objections to your baseless complaints.  If you would like to pursue a more productive discussion, I am available.

Best,
Matt

**Matthew S. Salerno**

**LATHAM & WATKINS** LLP
1271 Avenue of the Americas
New York, NY 10020
Direct Dial: +1.212.906.4738
Email: matthew.salerno@lw.com

https://www.lw.com

---

**From:** schladweilerb@gtlaw.com <schladweilerb@gtlaw.com>
**Sent:** Wednesday, January 12, 2022 1:09 PM
**To:** Salerno, Matthew (NY) <matthew.salerno@lw.com>
**Cc:** ryersonj@gtlaw.com; WeiderD@gtlaw.com; #C-M PTON - ECHELON - LW TEAM
<PTON.ECHELON.LWTEAM@lw.com>; mflynn@morrisnichols.com; JBlumenfeld@morrisnichols.com
**Subject:** RE: Peloton v Echelon

Matt –

Our response are below in red.

Thanks,

**Benjamin Schladweiler**
Shareholder

Greenberg Traurig, LLP
The Nemours Building | 1007 North Orange Street, Suite 1200 | Wilmington, DE 19801
T +1 302.661.7352
schladweilerb@gtlaw.com  |  www.gtlaw.com  |  View GT Biography

**GT** GreenbergTraurig

---

**From:** matthew.salerno@lw.com <matthew.salerno@lw.com>
**Sent:** Tuesday, January 11, 2022 1:03 PM
**To:** Schladweiler, Benjamin (Shld-DEL-IP-Tech) <schladweilerb@gtlaw.com>
**Cc:** Ryerson, James (OfCnsl-NJ-IP-TECH) <ryersonj@gtlaw.com>; Weider, Douglas R. (Shld-NJ-IP-Tech)
<WeiderD@gtlaw.com>; PTON.ECHELON.LWTEAM@lw.com; mflynn@morrisnichols.com;
JBlumenfeld@morrisnichols.com
**Subject:** Peloton v Echelon

Ben,

Recapping our discussion this morning, it is our hope both sides can streamline some of the discovery issues in
dispute.  Summary of where we came out, below:

1.  **Peloton Flywheel Docs.**  Peloton has agreed to produce non-privileged materials to Echelon's Flywheel-diligence
    requests.  I anticipate this production will be next week.  Thank you for agreeing to produce the diligence
    documents.  We have been promised these documents before and we will not know how appropriate your
    search was until we actually see what you produce.  In addition, we are obviously asking for more than just the
    diligence documents, so it appears we are still at an impasse on this.

2.  **Peloton Price-Drop Docs.**  Peloton is conducting a new ESI review to identify documents responsive to Echelon's
    Price-Drop requests.  The parameters of that review are below:

    Custodians:  Brad Olson, Ryan Dillon-Curran, Scott Burch
    Time Period: June 1, 2021 – August 31, 2021
    Terms:
        i.  (price* OR pricing OR cost*) w/20 (drop* OR lower* OR reduce* OR slash* OR cut* or $400 or
           $1495)
        ii.  (price* OR pricing* OR cost*) AND (competitor* OR competition* Echelon OR iFit OR ICON OR
           Mirror OR Tonal OR Fightcamp OR Nautilus)

2

We propose changes to the search terms. In addition, it seems very likely that Peloton was talking about this price drop well prior to June 1, 2021, so we suggest moving the beginning time period to March 1, 2021. If Peloton agrees to run the proposed terms and produces the requested discovery before next Wednesday, Echelon will consider withdrawing its dispute letter as to this issue.

3. **Peloton Zendesk Docs.** As we've noted several times, Peloton has conducted a diligent review of Zendesk records and is investigating the email discussed during our call. Peloton used the following search string to identify records responsive to the issue of confusion: (Advertis! Ad!) /20 ("Our Best Price Ever" OR financ! or price!). To the extent Echelon believes some other search should be run over a targeted period, please make a proposal asap and we will consider it.

Peloton's search terms were clearly too narrow and your last-minute attempt to avoid a discovery dispute letter are insufficient. Echelon proposes that Peloton run 58!, 49!, and subscription /2 includ! with a front-end restriction of 7/20/2018. If Peloton agrees to run the proposed terms and produces the requested discovery before next Wednesday, Echelon will consider withdrawing its dispute letter as to this issue.

4. **Echelon Licensing Docs.** Particularly in light of the above proposals and representations, we've asked that Echelon conduct an ESI search and produce non-privileged documents and communications concerning or relating to the ICON-Echelon March 1, 2019 licensing agreement. This is covered by myriad requests, but squarely by RFP 74 and 75. We'll otherwise include in our letter, but agreement would obviously be preferable. Please let us know.

I don't think we have ever met and conferred on this yet as required by the local rules. Should Peloton desire to confer regarding this dispute, Echelon would like to discuss Peloton's production of documents concerning the Peloton-ICON and Peloton-Nautilus agreements.

5. **Echelon GT+ Docs.** We asked for a response to our Jan. 6, 2021 email re: GT+ by yesterday. That exchange is attached for reference. Please let us know today whether Echelon will agree to production of these materials without requiring us to move the Court.

We responded to this separately.

With regard to some of our outstanding depo offers, I'll follow up in the Echelon/iFIT deposition chain, but please provide your position with regard to any individuals we've offered to either consolidate into a single day or take off the table entirely in return for a representation that we would not call them.

Best,

Matt

**Matthew S. Salerno**

**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Direct Dial: +1.212.906.4738
Email: matthew.salerno@lw.com
https://www.lw.com

_____

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.

# EXHIBIT 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

THE HAWK MOUNTAIN LLC, GIGI )
JORDAN, MICHELLE E. MITCHELL, )
and KIMBERLY JORDAN, )
                                         )
          Plaintiffs, )
                                           )
          v. )          Civil Action No. 13-2083-SLR-SRF
                                           )
RAYMOND A. MIRRA, JR., RAM )
CAPITAL GROUP, LLC D/B/A RAM )
CONSULTING GROUP, LLC, RAM )
CAPITAL II, LLC, RAM REALTY )
HOLDINGS, LLC, JOSEPH A. TROLIO, )
JR., JOSEPH T. MOLIERI, BRUCE )
KOLLEDA, MARK A. KOVINSKY, )
JOSEPH J. TROPIANO, JR., LLC, )
BERNARD EIZEN, PATRICK J. WALSH, )
DANIELLE STEWART, RENEE M. )
SIGLOCH, FREDERICK FORTE, )
VIRGINIA L. HALL, BARI KUO, and )
SHELLY DEMORA, )
                                           )
          Defendants. )

## MEMORANDUM ORDER

At Wilmington this 3rd day of June, 2016, the court having considered the letter briefs

and arguments presented by the parties regarding the RAM Defendants' request for sanctions

pursuant to Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure for plaintiffs' failure to

comply with the court's October 28, 2015 order to produce the McCaffrey documents by

November 6, 2015 (D.I. 292; D.I. 297; D.I. 335; D.I. 343; D.I. 361; D.I. 362; 10/28/15 Tr.;

12/7/15 Tr.), IT IS HEREBY ORDERED that the RAM Defendants' motion is granted for the

reasons set forth below.

**1. Background.** On July 13, 2015, third party Carlyn McCaffrey[1] was served with a document subpoena seeking documents relevant to allegations that defendants corresponded with McCaffrey in 2010 in an effort to obtain a fraudulent release from Jordan. (D.I. 222) No objection was made to the scope of the subpoena at the time it was served. In response to the subpoena, McCaffrey produced the requested documents to plaintiffs in two subsets on August 31, 2015 and September 14, 2015, respectively. (D.I. 335, Exs. D-E) McCaffrey's production letters provided Bates ranges and page counts for the documents produced, identifying a total of 17,015 pages. (*Id.*) Pursuant to an agreement between plaintiffs and the RAM Defendants, plaintiffs were to produce the McCaffrey documents to the RAM Defendants by no later than September 24, 2015, after reviewing the documents for privileged material. (D.I. 335, Ex. B at 1-3; Ex. C) ("I propose simply assigning the 10 day period to all responsive tenders.") On September 25 and September 28, 2015, plaintiffs attempted to make a partial production, but did not furnish the appropriate data load files, which resulted in improper pagination and no metadata. (D.I. 292, Exs. I-J)

**2.** On October 13, 2015, the RAM Defendants demanded production of the McCaffrey documents. (D.I. 292, Ex. G) Plaintiffs responded on October 20, 2015, indicating that confidential attorney-client communications throughout the production had required further review and delayed production. (*Id.*, Ex. H) During a discovery dispute hearing before the court on October 28, 2015, the court ordered plaintiffs to complete the production of the McCaffrey documents by November 6, 2015. (10/28/15 Tr. at 40:10-12; 43:22-44:1) ("Come hell or high water, we will have those documents fully redacted and furnished to the defendants by

---

[1] McCaffrey is a New York trust and estates attorney who was retained by Jordan on or about April 2010 to advise Jordan in connection with the distribution of assets under the HM Trust. (D.I. 47 at ¶ 184) Specifically, McCaffrey advised Jordan in connection with a proposed release and waiver of accounting for the HM Trust in May 2010. (*Id.* at ¶ 190)

[November 6].") On November 6, 2015, plaintiffs failed to produce 4,100 documents of McCaffrey's 17,015 page production, and also failed to produce the appropriate data load files for any of the documents.

**3.** The RAM Defendants again raised the deficiencies in the McCaffrey production during the discovery dispute hearing before the court on December 7, 2015. (12/7/15 Tr. at 78:21-83:12) Plaintiffs represented that they "ha[d] furnished every single document that McCaffrey furnished to [them]," and asserted that any gaps in the Bates numbers indicated that plaintiffs did not have those documents in their possession. (*Id.* at 84:23-85:1, 93:20-24) The court reserved judgment on the RAM Defendants' motion for sanctions and ordered the parties to account for the missing documents within a week. (*Id.* at 100:17-21)

**4.** Following the December 7, 2015 discovery dispute hearing, McCaffrey's firm confirmed that 17,015 pages were produced to plaintiffs in August and September 2015. (D.I. 361, Ex. B) Plaintiffs acknowledged various oversights in their production to the RAM Defendants and produced an additional 4,189 documents to the RAM Defendants between December 8 and 11, 2015. (D.I. 361, Exs. D-G)

**5. Legal Standard.** Federal Rule of Civil Procedure 37(b)(2) authorizes a district court to impose sanctions should a party fail to obey an order to provide or permit discovery. *Wallace v. Graphic Mgmt. Assocs.*, 197 F. App'x 138, 141 (3d Cir. 2006). Rule 37(b)(2)(C) provides that the court may "order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). The court has broad discretion regarding the type of sanctions imposed if the

3

sanctions are just and are related to the claims at issue. *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 84 (D.N.J. 2006).

**6. Analysis.** The RAM Defendants' motion for sanctions under Rule 37(b)(2)(C) is granted. The parties do not dispute that on October 28, 2015, the court ordered plaintiffs to produce the remaining McCaffrey documents by November 6, 2015, a deadline which was suggested by plaintiffs' counsel.[2] (10/28/15 Tr. at 40:10-12, 43:22-44:1) Plaintiffs do not dispute that the allegedly missing documents were in their possession prior to November 6, and yet they failed to produce them to the RAM Defendants. (D.I. 361, Ex. C at 1) ("With regard to any deficiency regarding any other document or group of pages, we make no claim that we did not possess those pages, or that there was any technical problem for which we seek to avoid responsibility.") In this regard, there is no dispute that plaintiffs have failed to comply with the court's October 28, 2015 order compelling production by November 6, 2015. Therefore, sanctions are warranted under Rule 37(b)(2)(C).[3]

**7.** An award of sanctions in the form of attorneys' fees and costs incurred in connection with the present dispute is just under the facts of this case. Although plaintiffs' counsel represented to the court that they "have furnished every single document that McCaffrey furnished to [them]" during the December 7, 2015 hearing (12/7/15 Tr. at 84:23-85:1), a number

---

[2] The court selected the November 6 date with respect to the order compelling defendants to complete their production in response to plaintiffs' RFPs. (10/28/15 Tr. at 29:23-30:14) Counsel for plaintiffs took the initiative to offer this date for completion of the McCaffrey production. (*Id.* at 40:10-12)

[3] A magistrate judge has the authority to impose sanctions for discovery-related misconduct pursuant to Rule 37(b)(2)(C). *Deville v. Givaudan Fragrances Corp.*, 419 F. App'x 201, 207-08 (3d Cir. 2011) ("Although the Magistrate Judge's oral opinion is unclear as to whether she rendered her sanctions pursuant to Rule 30 as well as to Rule 37, it certainly would have been within her discretion to do so."). The authority of a magistrate judge is only restricted with respect to findings of contempt, which are available under Rule 37(b)(2)(A)(vii), but are not sought in connection with the present dispute. 28 U.S.C. § 636(e)(6)(B)(iii); *see also Wallace v. Kmart Corp.*, 687 F.3d 86, 91-92 (3d Cir. 2012).

4

of the missing pages were listed on a redaction log of documents reviewed by plaintiffs (D.I. 361, Ex. A at 2). In addition, the load files sent to the RAM Defendants on November 6, 2015 included pages in plaintiffs' possession, but not produced to the RAM Defendants. (*Id.*) On December 10, 2015, an attorney at McCaffrey's firm confirmed that McCaffrey had transmitted all 17,015 pages to plaintiffs in August and September 2015. (D.I. 361, Ex. B) These documented facts demonstrate that plaintiffs could have detected and corrected the discrepancies independently, and should have been alerted to correct the deficiencies upon notification by the RAM Defendants through extensive correspondence with the RAM Defendants regarding this issue (D.I. 292, Exs. G, K-M), and discovery dispute briefing in preparation for hearings before the court addressing the issue (D.I. 292; D.I. 335).

**8.** In their responsive submission, plaintiffs list a series of factors the court must consider in evaluating a motion for sanctions pursuant to Rule 37(b). (D.I. 362 at 2) However, the cases relied upon by plaintiffs addressed factors to be considered when the sanction to be imposed would result in dismissal of the action pursuant to Rule 37(b)(2)(A). *See Ali v. Sims*, 788 F.2d 954, 957 (3d Cir. 1986) (imposition of sanctions resulted in grant of partial summary judgment); *Scarborough v. Eubanks*, 747 F.2d 871, 875 (3d Cir. 1984) ("[W]e recapitulated the appropriate factors that the trial court must consider before dismissing a complaint or entering a judgment of default as a sanction."); *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984) (same). The sanctions requested in the present matter are limited to the fees and costs associated with the motions at D.I. 335 and D.I. 361 pursuant to Rule 37(b)(2)(C) in connection with the RAM Defendants' repeated efforts to obtain compliance with the court's October 28, 2015 discovery order compelling production of the McCaffrey documents. Imposition of the requested sanctions in the present matter pursuant to Rule 37(b)(2)(C) has no bearing on the

5

outcome of the litigation or the exclusion of evidence pursuant to Rule 37(b)(2)(A). Plaintiffs' cited cases and the structure of plaintiffs' analysis are therefore inapposite.

**9.** Plaintiffs' counsel argues that sanctions for noncompliance with the court's October 28, 2015 discovery order are unwarranted because the McCaffrey documents are "facially and substantively innocuous" and were already in the RAM Defendants' possession. (D.I. 362 at 2) The Third Circuit has held that such arguments do not excuse a party's failure to comply with an issued discovery order. *See McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 249 (3d Cir. 2014) (rejecting argument that sanctions should not be imposed because documents were irrelevant).

**10.** The court has carefully considered the conduct that necessitated the pending motion. Discovery in the case has not progressed seamlessly. The "meet and confers" required in advance of court intervention do not appear to have been particularly meaningful. Throughout the discovery period, court intervention has proceeded on a recurring basis, so much so that the court imposed limitations on discovery dispute procedures specific to this case. (12/7/15 Tr. at 4:2-7:18) With respect to the document production that is the subject of the pending motion, there were assurances by plaintiffs of a complete production to defendants no later than November 6, 2015, which did not occur. This deficiency was followed by a representation to the court on December 7, 2015 that a complete production had been made, which turned out to be inaccurate.

**11. Conclusion.** In view of the foregoing analysis, the RAM Defendants' motion for sanctions is granted. Within thirty (30) days of the date of this order, the RAM Defendants are to provide the court and opposing counsel with an accounting of attorneys' fees and costs limited to

6

their efforts to obtain production of the McCaffrey documents by filing the motions at D.I. 335 and D.I. 361, and a form of Order for the relief requested.

**12.** This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Order. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to ten (10) pages each.

**13.** The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, www.ded.uscourts.gov.

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE

7

# EXHIBIT 4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ACCELERATION BAY LLC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V, | ) | C.A. No. 16-453 (RGA) |
| | ) | |
| ACTIVISION BLIZZARD, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | | |
| ACCELERATION BAY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 16-454 (RGA) |
| | ) | |
| ELECTRONIC ARTS INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | | |
| ACCELERATION BAY LLC, | ) | |
| | ) | |
| Plaintiff. | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 16-455 (RGA) |
| TAKE-TWO INTERACTIVE | ) | |
| SOFTWARE, INC., ROCKSTAR GAMES, | ) | |
| INC. and 2K SPORTS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## SPECIAL MASTER ORDER NO. 2 AS TO MOTIONS TO COMPEL
## BY BOTH PLAINTIFF AND DEFENDANTS

On March 31, 2017 Plaintiff and Defendants filed eleven Motions to Compel with

Opening Briefs and Exhibits; on April 11, 2017 the parties filed Answering Briefs and Exhibits;

and an additional brief and exhibits were filed on April 12, 2017. The Hearing was held on April

1

14, 2017 before the Special Master (the "Hearing"). This is Special Master Order No. 2 as to all pending motions to compel.

Plaintiff filed five motions to compel. Set forth below are my rulings with respect to each motion:

P1.    Plaintiff moves that Defendant should produce emails as to its use of the search terms. In addition to the production to date by Defendants, Defendants maintain that the additional discovery sought by Plaintiff is irrelevant, overly broad, and burdensome. Defendants' counsel indicates that Plaintiff's search request could involve over 800,000 "hits". Costello's declaration states that the cost of the search to Defendants would be approximately $250,000.00. Plaintiff will not assume the costs of this search. The Plaintiff's motion is denied, principally on the ground that the burden of the additional search would be excessive.

P2.    Plaintiff moves to compel Defendants to amend their invalidity contentions. Plaintiff has some justification for challenging the prior art elections as being in excess of the appropriate limit on the number of contentions and for failure to identify with specificity. However, the invalidity contentions meet the "notice requirement" for this stage of the litigation. As further evidence is developed in the litigation, it may be necessary for Defendants to amend their invalidity contentions. At this time, Plaintiff's motion to compel is denied.

P3.    Plaintiff moves for Defendants to produce any agreements they have with Bungie, involving the development of the game of Destiny. Defendants represent that they have produced the documents within their possession, that Bungie is an independent company that developed the game of Destiny, and that they will seek further information from their clients. Subsequent to the Hearing, the parties requested that the Special Master defer a decision while the parties seek a resolution among themselves, and it is so Ordered.

2

P4.     With respect to Plaintiff's request for a supplemental response to interrogatory No. 6 as to the locations of the development and manufacturing of Defendants' products, Defendants advised during the Hearing that they will provide further information (Hearing Transcript p. 169).  Subsequent to the Hearing, the parties reached an agreement on the motion. Accordingly, the motion to compel is moot.

P5.     Plaintiff moves to compel Electronic Arts to produce its financials.     Revenue from sales prior to 2015 cannot be used to calculate damages in this case. The motion to compel with respect to Electronic Arts' sales prior to 2015 is denied.

Defendants filed six motions to compel.  Set forth below are my rulings with respect to each motion:

D1.     Defendants' first motion to compel seeks supplemental responses to their interrogatory No. 1, with regard to the dates of conception and practice as to each claim. Plaintiff's interrogatory response gave the date of November 1996 for conception and "no later than November 1999" with regard to practice on all six patents in litigation.  During the Hearing, Plaintiff's counsel agreed to the definitive dates (Hearing Transcript p. 113). The motion to compel is denied based on Plaintiff's statement.

D2.     Defendants moved to compel supplemental responses to their interrogatory No. 5 with regard to the testing performed by Plaintiff.  This motion involves generally two tests; those conducted prior to the litigation, and those subsequent to the litigation.  Testing performed prior to filing the case, known as "play testing", has been produced, according to Plaintiff.  Testing after the filing of the case is privileged and no privilege log is needed with respect to such testing, according to the parties' Protective Order.  Defendants' motion is denied

3

D3.     Defendants move to compel information as to the hit count by Plaintiff on its email searches.  As to the hit counts, Plaintiff has represented that it will produce the hit terms and hit counts shortly after producing the relevant emails next week.  If Defendants are not satisfied with what is produced by Plaintiff, Defendants can renew this motion to compel.

D4.     Defendants moved to compel an email search of Plaintiff's CEO Joe Ward's personal email accounts.  The motion is addressed to the Plaintiff and is not a subpoena to Mr. Ward.  There is an insufficient basis for a "good cause" requirement of a privilege log, since counsel for the Plaintiff has represented that Mr. Ward's communications with regard to acquiring the patents in question were entirely oral.  Accordingly at this time, the motion to compel is denied.

D5.     Defendants' motion to require Boeing to produce a privilege log is based upon the argument that Boeing should either be treated as a party, or in any event, is subject to Federal discovery rules with regard to document production.  Neither argument is persuasive.  There are no grounds at this time to treat Boeing as a party in the case and its connection to Plaintiff has already been disclosed.   Plaintiff represents that Boeing has produced all documents within its possession involving the Plaintiff.   There is no obligation for Boeing to provide a privilege log for its documents.  The motion to compel as to Boeing is denied.

D6.     Defendants' final motion is to compel compliance with a subpoena to Messrs. Holt and Bourassa.  Messrs. Holt and Bourassa are not parties to the litigation.  Plaintiff represents that it has produced their emails (Hearing Transcript p. 34).  They were allegedly the inventors of the patents in question and have consulting agreements with the Plaintiff.  Their consulting fee of $400 per hour has been disclosed and Plaintiff represents that they have no other financial interest in this litigation.  There is no requirement under the Protective Order that

4

a privilege log be produced with regard to Messrs. Holt and Bourassa.  The motion to compel

compliance with the subpoena is denied.


Dated: April 19, 2017                          */s/ Allen M. Terrell, Jr.*
                                               Special Master Allen M. Terrell, Jr.