# EXHIBIT A

Amended Particulars of Claim under CPR rule 17.1(2)(a) dated 24 December 2020

Claim No. IL-2020-000074

<u>IN THE HIGH COURT OF JUSTICE</u>

<u>BUSINESS & PROPERTY COURTS OF ENGLAND & WALES</u>

<u>INTELLECTUAL PROPERTY LIST (ChD)</u>

<u>EU TRADE MARK COURT</u>

**BETWEEN:**

**(1) PELOTON INTERACTIVE, INC.**

**(a corporation organised and existing under the laws of the State of Delaware)**

**(2) PELOTON INTERACTIVE UK LIMITED**

**(3) PELOTON INTERACTIVE DEUTSCHLAND GmbH**

<u>Claimants</u>

**-and-**

**(1) ECHELON FITNESS LLC**

**(a corporation organised and existing under the laws of the State of Delaware)**

**(2) ECHELON FITNESS UK LIMITED**

**(3) VIATEK CONSUMER PRODUCTS GROUP, INC.**

**(a corporation organised and existing under the laws of the State of Florida)**

**(4) ECHELON FITNESS MULTIMEDIA LLC**

**(a corporation organised and existing under the laws of the State of Delaware)**

<u>Defendants</u>

————————————————————

**AMENDED PARTICULARS OF CLAIM**

————————————————————

1. The First Claimant is a US corporation (Registration No. 5711910) with a registered address of 125 West 25th Street, 11th Floor, New York, New York, 10001.

2.  The Second Claimant is a company organised and existing under the laws of England and Wales (Company No. 11174745), with a registered address of 9th Floor 107 Cheapside, London, United Kingdom, EC2V 6DN. The Second Claimant is a wholly-owned subsidiary of the First Claimant.

3.  The Third Claimant is a company organised and existing under the laws of the Federal Republic of Germany with a registered address of c/o WeWork, Friedrichstraße 76, 10117 Berlin. The Third Claimant is a wholly owned subsidiary of the First Claimant.

**The First Claimant's trade marks**

4.  The First Claimant is the registered proprietor of the EU, United Kingdom and International Registrations designating the EU particularised in the table below, registered in respect of the word mark "PELOTON" or the logo depicted therein ("**the Peloton Logo**"), in each case *inter alia* in respect of the goods and services particularised upon which the Claimants rely for the purposes of the present claim. In the present claim the said registrations are referred to compendiously as the "**Peloton Marks**", the United Kingdom registrations as "**the UKTMs**", the EU registrations as "**the EUTMs**" and the International Registrations as "**the IRs**".

| UKTMs | | | | |
|---|---|---|---|---|
| Reg. no. | Mark | Date of filing | Date of registration | Goods and services |
| 3337503 | PELOTON | 10/9/2018 | 8/03/2019 | **Class 9:** '*downloadable software in the nature of an application for use by individuals participating in exercise classes, physical training, and exercise instruction for scheduling exercise classes, for detecting, storing and reporting daily human energy expenditure and physical activity level, for developing and monitoring personal activity and exercise plans, training goals and giving feedback on* |

|  |  |  |  | *the achieved results; computers and software for monitoring and analyzing various parameters associated with the operation of a bicycle, exercise cycle, or exercise equipment and for fitness training;*<br><br>**Class 10:** '*Exercise, fitness and heart rate monitoring apparatus; parts, fittings and accessories for all the aforesaid.*'<br><br>**Class 21:** '*Drinking vessels and bottles, including for sports;*<br><br>**Class 27:** '*Yoga mats; floor coverings, rugs and mats for use in exercise and fitness; parts.*<br><br>**Class 28:** '*Stationary bicycles and component parts thereof; ... exercise weights; stationary bicycles equipped with interactive computer systems, namely, computer console, microphone and camera; stationary bicycles equipped with interactive computer systems, video players, and body bars; body bars;... exercise equipment;*'<br><br>**Class 35** '*Retail and online retail store services in connection with the sale of ... ... digital media, namely, .... downloadable audio and audiovisual* |
|---|---|---|---|---|

|  |  |  |  | *recordings, digital media in the fields of exercise, fitness, wellness, nutrition, mindfulness, meditation and personal development, downloadable software in the nature of an application for use by individuals participating in exercise classes, physical training, and exercise instruction for scheduling exercise classes, ... computers and software for monitoring and analyzing various parameters associated with the operation of a bicycle, exercise cycle, or exercise equipment and for fitness training, apparatus for monitoring exercise, fitness and heart rate, .... drinking vessels and bottles, sports bottles, mugs, clothing, footwear, ... yoga mats, floor coverings, rugs and mats for use in exercise and fitness, stationary bicycles and component parts thereof, ... exercise weights, stationary bicycles equipped with interactive computer systems, namely, computerconsole, microphone and camera, stationary bicycles equipped with interactive computer systems, video players and body bars, bodybars, Retail and online retail store services in connection with the sale of apparel and accessories and fitness equipment; information, advice and assistance relating to the aforesaid.* |

| | | | | |
|---|---|---|---|---|
| | | | | **Class 38:** 'Streaming of audio and video materials on the Internet; Streaming of audio and video materials on the internet featuring physical fitness, physical fitness classes, wellness, nutrition, mindfulness, meditation, training, and instruction; information, advice and assistance relating to the aforesaid.'<br><br>**Class 41 for inter alia**: 'Exercise classes offered by means of streaming feed on the Internet; Entertainment services, namely, providing podcasts via video and audio in the fields of exercise, weight loss, physical fitness, wellness, nutrition, mindfulness, meditation, and personal development'<br><br>**Class 45:** 'Online social networking services in the fields of exercise, fitness, wellness, nutrition, mindfulness, meditation, and personal development.' |
| 3337505 | | 10/9/2018 | 8/03/2019 | For the same Nice Agreement classes, goods and services as relied on for UKTM 3337503 |

| | | | | |
|---|---|---|---|---|
| **EUTMs** | | | | |
| 018093070 | PELOTON | 10/07/2019 | 22/05/2020 | **Class 28***: Stationary bicycles and component parts thereof; bicycle seats and bicycle pedals sold separately for stationary bicycles; exercise weights; stationary bicycles equipped with interactive computer systems, namely, computer console, microphone and camera; stationary bicycles equipped with interactive computer systems, video players, and body bars; ... parts, fittings and accessories for all the aforesaid;*<br><br>**Class 38***: Streaming of audio and video materials on the Internet; Streaming of audio and video materials on the internet featuring physical fitness, physical fitness classes, wellness, nutrition, mindfulness, meditation, training, and instruction; information, advice and assistance relating to the aforesaid.*<br><br>**Class 41 for *inter alia***: '*Exercise classes offered by means of streaming feed on the Internet; Entertainment services, namely, providing podcasts via video and audio in the fields of* |

| | | | | |
|---|---|---|---|---|
| | | | | *exercise, weight loss, physical fitness, wellness, nutrition, mindfulness, meditation, and personal development'* |
| 018093072 |  | 10/07/2019 | 22/02/2020 | **Class 28**: *Stationary bicycles and component parts thereof; bicycle seats and bicycle pedals sold separately for stationary bicycles; exercise weights; stationary bicycles equipped with interactive computer systems, namely, computer console, microphone and camera; stationary bicycles equipped with interactive computer systems, video players, and body bars; ... yoga cushions;*<br><br>**Class 38**: *Streaming of audio and video materials on the Internet; Streaming of audio and video materials on the internet featuring physical fitness, physical fitness classes, wellness, nutrition, mindfulness, meditation, training, and instruction; information, advice and assistance relating to the aforesaid.* |
| **IRs** | | | | |
| 1217430 | PELOTON | 9/11/2012 (filing date of basic application) | 31/3/2014 | **Class 28**: '*Stationary exercise bicycles .. exercise weights; stationary bicycles equipped with interactive computer systems, video players, and body bars'* |

| | | | | |
|---|---|---|---|---|
| | | | | **Class 38:** '*Streaming of audio and video materials on the Internet featuring physical fitness classes, training, and instruction*'<br><br>**Class 41:** '*Providing classes, workshops and seminars in the fields of fitness and exercise; providing fitness and exercise facilities; physical fitness instruction and consultation; physical fitness conditioning classes; physical fitness training services providing a website featuring information on exercise and physical fitness accessible through a global computer network and mobile devices.*' |
| 1289389 |  | 8/7/2014 (filing date of basic application) | 13/11/2015 | **Class 28:** '*Stationary exercise bicycles …. exercise weights; stationary bicycles equipped with interactive computer systems, video players; and body bars.*'<br><br>**Class 38:** '*Streaming of audio and video materials on the internet featuring physical fitness classes, training, and instruction.*' |

5. The Peloton Marks and each of them are and have at all material times been subsisting. Copies of WIPO, EUIPO and UKIPO online register extracts showing details of each of the Peloton Marks are attached at Annex 1 hereto.

6.  Pursuant to Art. 189 of Regulation (EU) 2017/1001 ("**the EUTMR**"), in all respects material to the allegations of infringement herein the IRs have the same effect in the EU as EU trade marks as of the date of registration thereof.

7.  The Second and Third Claimants have at all material times been the licensees of the First Claimant in respect of the Peloton Marks. The Claimants will rely on the written confirmatory licence agreement dated 18 October 2018 and amended on 7 July 2020 between the First Claimant and the Second Claimant and the written sub-licence effective as of 1 July 2019 between the Second Claimant and the Third Claimant.

**Claimants' Trade and Reputation of the Peloton Marks**

8.  The First Claimant trades together with the Second Claimant (in the United Kingdom) and the Third Claimant (in the Federal Republic of Germany) in the provision in the UK and the European Union of hi-tech connected home fitness exercise bikes incorporating an interactive touch screen display together with software to allow users to connect to live streamed or on demand interactive fitness classes or activities for use in connection with the Claimants' software and home exercise equipment, in each case under and by reference to the Peloton Marks and each of them, in each case with the consent of the First Claimant. Such software is configured for use on the Claimants' home exercise bikes and via users' tablets, mobile devices and smart televisions allowing users of and subscribers to the Claimants' services to access such content over the Internet via the Claimants' "Peloton App" which is made available by the First Claimant *via* its Internet website at https://www.onepeloton.co.uk/ and on the Apple and Amazon App Stores and Google Play.

9.  The Claimants further offer for sale and sell exercise equipment, accessories and apparel in the United Kingdom (in the case of the First and Second Claimants) and in the Federal Republic of Germany (in the case of the First and Third Claimants), again in each case under and by reference to the Peloton Marks and each of them, in each case with the consent of the First Claimant.

10. By reason of the use to which they have been put in the UK and Germany prior to the acts of the Defendants complained of herein the Peloton Marks and each of them have acquired a reputation in the United Kingdom (in respect of each of the Peloton Marks) and the EU and in particular Germany (in respect of the EUTMs and the IRs) for the purposes of section

9

10(3) of the Trade Marks Act 1994 ("**the 1994 Act**") and Article 9(2)(c) of the EUTMR respectively. Pending disclosure and evidence herein the Claimants will rely on the following matters in support of the existence of the aforesaid reputations:

### PARTICULARS OF REPUTATION IN THE UNITED KINGDOM

10.1. In around May 2018 the First and Second Claimant began promotional activities prior to commencement of the Peloton business in the United Kingdom, which took place on 25 September 2018. Since May 2018 the First and Second Claimants have operated a website at https://www.onepeloton.co.uk/ promoting the Peloton business and the Peloton Marks in the UK. Over the period between May and September 2018 there were in excess of 40 print and online articles directed to the United Kingdom concerning the Peloton business, in each case displaying the Peloton Marks. A list of these articles is attached hereto at Annex 2 hereto together with approximate circulation figures thereof. [1]

10.2. Between May and September 2018 the First Claimant spent approximately £185,000 on events and promotion and arranged for promotion by social media influencers in each case to support the UK Launch of the Peloton business, in each case featuring and promoting the Peloton Marks.

10.3. In September 2018 the First Claimant expended approximately £2.1 million on television advertising to promote the Peloton business in the UK under and by reference to the Peloton Marks.

10.4. As of 22 November 2018 (being a date prior to the commencement of the acts of the Defendants complained of) the First and Second Claimants had opened 6 branded permanent Peloton retail stores in the UK together with a pop-up store called "Peloton House" in Covent Garden at which patrons could participate in a free trial of the Peloton Bike, in each case selling goods and services under and by reference to the Peloton Marks and each of them.

10.5. As at 22 November 2018 the First and Second Claimants' website at https://www.onepeloton.co.uk/ had received 361,046 visits.

10.6. As of 22 November 2018 the First and Second Claimant had around 900 registered subscribers in the UK and had sold 992 bikes under the Peloton Marks. By the date

---

[1] No. of unique monthly visitors is provided for online articles; circulation figures are provided for print articles.

of the claim form herein the number of subscribers had risen to in excess of 30,000 and sales of bikes under the Peloton Marks to in excess of 30,865.

10.7. As of 22 November 2018 and 22 May 2020 (being shortly prior to the date of the claim form herein) the First and Second Claimant had made sales of accessories and apparel under and by reference to the Peloton Marks in the United Kingdom as set out in the table below.

| Date | Accessories Sales / £ | Apparel Sales / £ |
|---|---|---|
| 22/11/2018 | 238,245 | 5,858 |
| 22/05/2020 | 7,049,918 | 840,827 |

10.8. At the date of the claim form herein the Claimants have invested in excess of £4.6 million in promoting the Peloton business in the UK market.

## PARTICULARS OF REPUTATION IN THE EU

10.9. The Claimants will rely on the matters aforesaid in support of a reputation in the EU.

10.10. Since May 2019 the First and Third Claimants have operated a website promoting the Peloton business and Peloton Marks in Germany via the domain https://www.onepeloton.de/ for Germany;

10.11. As at the date of the claim form herein the First and Third Claimants had in excess of 4,250 subscribers in Germany and had sold in excess of 4,850 bikes to consumers in Germany.

10.12. Still further, as at the date of the claim form herein the First and Third Claimant operate six stores in Germany in Berlin, Frankfurt, Dusseldorf and Hamburg, each prominently branded with the Peloton Marks and promoting the Peloton Marks in Germany.

10.13. Prior to the launch in Germany the Claimants invested approximately EUR 451,000 on public relations and promotional events in respect of the Peloton business in the German market. Subsequent to the said launch the Claimants have at the date of the claim form herein invested in excess of EUR 8.6 million on promoting the Peloton business in the German market.

11. In respect of acts of infringement carried out prior to 31 December 2020 or such other day as shall mark the end of the implementation period following the United Kingdom's departure from the EU, the Claimants will rely on all of the matters aforesaid in paragraph 10 above in support of the contention that the Peloton Marks have a reputation in the EU. In respect of acts of infringement outside of the United Kingdom carried out after 31 December 2020 or such other day as shall mark the implementation period following the United Kingdom's departure from the EU the Claimants will further rely on the aforesaid trade in Germany and any further particulars of their trade elsewhere in the EU up to that date in support of the contention that the Peloton Marks have a reputation in the EU as at that date.

12. Further or in the alternative by reason of the matters aforesaid in paragraph 10 above the Peloton Marks and each of them have acquired an enhanced distinctive character through use by at least the date of the first acts of the Defendants in the United Kingdom and Germany complained of herein.

13. Further, the Claimants will rely on the use of a predominantly black, grey, white and red colour scheme (in accordance with the Claimants' PELOTON Brand Guidelines, a copy of which will be provided in disclosure) in respect of their PELOTON bike products and on the Claimants' website in support of the contention that the colours black, grey, white and red (and combinations of some of those colours) have become particularly associated in the mind of the public with the Claimants' products and services and with the Peloton Marks.

**First Claimant's Copyright Works**

14. The First Claimant is the proprietor of the copyright that subsists pursuant to s. 4 of the Copyright Designs and Patents Act 1988 ("**the 1988 Act**") in the following original artistic works ("**the Claimants' GUI Works**"), each of which constitutes a graphic work created in the circumstances stated below and each of which are reproduced by the Claimants in their streamed content for subscribers of the Claimants' Peloton services or otherwise for use with the Claimants' goods  in particular *via* the Peloton app and the website accessible at https://www.onepeloton.co.uk/.

PARTICULARS OF WORKS AND AUTHORSHIP

14.1. <u>The Class:</u> On around 23 March 2017 Jonathan Fast and Adam Heverly created and recorded in material form and in the First Claimant's content management system the artistic work reproduced at Annex 6 hereto, ("the **Class Work**"), comprising an image of an instructor in a class for display as part of the graphic user interface (GUI) of the Peloton bike product from time to time (the "**Peloton GUI**"), in particular during classes, with the intention that different instructors would be displayed as part of the class in use. The Class Work comprises a dark background with a more brightly lit instructor on a bike in the centre of the image wearing a garment bearing the mark PELOTON, with other equipment visible dimly in the background.

14.2. The Class Work was in turn reproduced by programmers acting on behalf of the First Claimant so as to be reproduced as part of the Peloton GUI. The Claimants rely on the Class Work as an artistic work, not as part of the software comprising the Peloton GUI.

14.3. <u>The Bootcamp Tread:</u> In a process starting on around 7 April 2017 and ending on around 19 April 2017 Jooyoung Lee and Ashley Willhite created and recorded in material form in the First Claimant's "Sketch" design software the artistic work reproduced at Annex 4 hereto ("the **Bootcamp Tread Work**").

14.4. <u>The Old Class and Tread Leader Boards:</u> In a process starting on around 19 April 2017 and ending on around 21 June 2017 (but which was substantially completed on around 30 May 2017) Jooyoung Lee and Ashley Willhite created and recorded in material form in the First Claimant's "Sketch" design software the two artistic works reproduced at Annex 5 hereto ("the **Old Class and Tread Leader Board Work A**" and "the **Old Class and Tread Leader Board Work B**" together "the **Old Class and Tread Leader Board Works**"). As part of the process of creating the Old Class and Tread Leader Board Work B Jooyoung Lee and Ashley Willhite reproduced aspects of the Bootcamp Tread Work. The Claimants are unable to state with certainty whether the Old Class and Tread Leader Board Work A was based on the Old Class and Tread Leader Board Work B or *vice versa* but each was created by Jooyoung Lee and Ashley Willhite as particularised above.

14.5. <u>The Class and Tread Leader Boards:</u> In a process starting on around 21 June 2017 and ending on around 25 August 2017 (but which was substantially completed on around 21 July 2017) Jooyoung Lee and Ashley Willhite created and recorded in

13

material form in the First Claimant's "Sketch" design software the two artistic works reproduced at Annex 5(a) hereto ("the **Class and Tread Leader Board Work A"** and "the **Class and Tread Leader Board Work B**" together "the **Class and Tread Leader Board Works"**). As part of the process of creating the Class and Tread Leader Board Works Jooyoung Lee and Ashley Willhite reproduced aspects of the Class Work. Further, as part of the process of creating the Class and Tread Leader Board Work A Jooyoung Lee and Ashley Willhite reproduced aspects of the Old Class and Tread Leader Board Work A. Further, as part of the process of creating the Class and Tread Leader Board Work B Jooyoung Lee and Ashley Willhite reproduced aspects of the Old Class and Tread Leader Board Work B. The Claimants are unable to state with certainty whether the Class and Tread Leader Board Work A was based on the Class and Tread Leader Board Work B or *vice versa* but each was created by Jooyoung Lee and Ashley Willhite as particularised above. The Class and Tread Leader Board Works each comprise a combination of the Class Work and on the righthand side an image of a leader board for display as part of the GUI of a prototype treadmill product during classes and/or scenic runs. This leader board element of both works comprises a column under the title "Leaderboard" with an arrow allowing the leader board to be collapsed, displaying for each row a numerical ranking within the class together with a circular image of the rider, next to the rider's name, gender and location. The user of the particular prototype treadmill product in issue is highlighted in grey and all text is in white against a transparent background.

14.6. An image of the Class and Tread Leader Board Work A and an image of the Class and Tread Leader Board Work B was uploaded to the First Claimant's "Zeplin" image management system on 25 August 2017.

14.7. The Modified Class and Tread Leader Board: In a process starting on around 11 October 2017 and ending on around 16 October 2017 Jooyoung Lee and Ashley Willhite created and recorded in material form in the First Claimant's "Sketch" design software the artistic work reproduced at Annex 5(b) hereto ("**the Modified Class and Tread Leader Board Work**"). The Modified Class and Tread Leader Board Work was a modified version of the Class and Tread Leader Board Work A.

14.8. An image of the Modified Class and Tread Leader Board Work was uploaded to the First Claimant's "Zeplin" image management system on 16 October 2017 and was used by programmers acting on behalf of the First Claimant, so as to be

reproduced as part of the Peloton GUI. In particular the programmers were directed to the Modified Class and Tread Leader Board Work for the purposes of reproducing the said work as part of the Peloton GUI and in particular as the Leader Board element of the Peloton GUI. The Claimants rely on the Modified Class and Tread Leader Board Work as an artistic work, not as part of the software comprising the Peloton GUI.

14.9. The Class and Leader Board: In a process starting on around 21 July  2017 and ending on around 21 August  2017 Jooyoung Lee and Ashley Willhite created and recorded in material form in the First Claimant's "Sketch" design software the artistic work reproduced at Annex 6(a) hereto, ("the **Class and Leader Board Work**"). As part of the process of creating the Class and Leader Board Work Jooyoung Lee and Ashley Willhite reproduced aspects of the Class Work and one of or both of the Class and Tread Leader Board Works.

14.10. An image of the Class and Leader Board Work was uploaded to the First Claimant's "Zeplin" image management system on 21 August 2017 and was in turn reproduced by programmers acting on behalf of the First Claimant so as to be reproduced as part of the Peloton GUI. The Claimants rely on the Class and Leader Board Work as an artistic work, not as part of the software comprising the Peloton GUI.

14.11. The Modified Class and Leader Board: In a process starting on around 3 October 2017 and ending on around 16 October 2017 Jooyoung Lee and Ashley Willhite created and recorded in material form in the First Claimant's "Sketch" design software the artistic work reproduced at Annex 7 hereto, ("the **Modified Class and Leader Board Work**"). The Modified Class and Leader Board Work was a modified version of the Class and Leader Board Work.

14.12. An image of the Modified Class and Leader Board Work was uploaded to the First Claimant's "Zeplin" image management system on 16 October 2017 and was in turn reproduced by programmers acting on behalf of the First Claimant so as to be reproduced as part of the Peloton GUI. The Claimants rely on the Modified Class and Leader Board Work as an artistic work, not as part of the software comprising the Peloton GUI.

14.13. The Class and Tread Metrics and Leader Board: In a process starting on around 30 May 2017 and ending on around 4 August 2017 Jooyoung Lee and Ashley Willhite created and recorded in material form in the First Claimant's "Sketch"

design software the artistic work reproduced at Annex 7(a) hereto (the "**Class and Tread Metrics and Leader Board Work**"). As part of the process of creating the Class and Tread Metrics and Leader Board Work Jooyoung Lee and Ashley Willhite reproduced aspects of the Class Work and one or other or both of the Old Class and Tread Leader Board Work A or the Old Class and Tread Leader Board Work B.

14.14. The Class and Metrics: In a process starting on around 16 August 2017 and ending on around 16 October 2017 Jooyoung Lee and Ashley Willhite created and recorded in material form in the First Claimant's "Sketch" design software the artistic work reproduced at Annex 8 hereto, ("the **Class and Metrics Work**"). As part of the process of creating the Class and Metrics Work Jooyoung Lee and Ashley Willhite reproduced aspects of the Class Work and the Class and Tread Metrics and Leader Board Work. The Class and Metrics Work comprises a combination of the Class Work and a metrics element at the base of the image. The metrics element of the Class and Metrics Work comprises a series of metrics to be displayed at the bottom of the Peloton GUI during and before classes and/or scenic rides. The metrics displayed comprise a first row containing Cadence, Output and Resistance values flanked in each case by the user's average and best values for the said values, and a second row comprising, Speed, Distance, Total Output and Calories together with numerical values thereof.

14.15. An image of the Class and Metrics Work was uploaded to the First Claimant's "Zeplin" image management system on 16 October 2017 and in turn reproduced by programmers acting on behalf of the First Claimant so as to be reproduced as part of the Peloton GUI. The Claimants rely on the Class and Metrics Work as an artistic work, not as part of the software comprising the Peloton GUI.

14.16. The Metrics Visual States: In a process starting on around 16 August 2017 and ending on around 16 October 2020 Jooyoung Lee and Ashley Willhite created and recorded in material form in the First Claimant's "Sketch" design software the artistic work reproduced at Annex 3 hereto, ("the **Metrics Visual States Work**"), comprising a series of metrics to be displayed at the bottom of the Peloton GUI during and before classes and/or scenic rides. The metrics displayed comprise a first row containing Cadence, Output and Resistance values flanked in each case by the user's average and best values for the said values, and a second row comprising, Speed, Distance, Total Output and Calories together with numerical

16

values thereof. As part of the process of creating the Metrics Visual States Work Jooyoung Lee and Ashley Willhite reproduced aspects of the Class and Metrics Work.

14.17. An image of the Metrics Visual States Work was uploaded to the First Claimant's "Zeplin" image management system on 16 October 2017 and was in turn reproduced by programmers acting on behalf of the First Claimant so as to be reproduced as part of the Peloton GUI. The Claimants rely on the Metrics Work as an artistic work, not as part of the software comprising the Peloton GUI.

14.18. Each of Jooyoung Lee, Ashley Willhite, Jonathan Fast and Adam Heverly ("the **Authors**") were at all material times employees of the First Claimant acting in the course of their employment in carrying out the acts particularised above.

15. Each of the Claimants' GUI Works qualifies for copyright protection pursuant to s. 154(2) of the 1988 Act on the basis that the Authors were at all material times domiciled in the United States of America and were employed by the First Claimant at the time of creation of the said works and each of them.

16. The Authors and each of them were at all material times employees of the First Claimant and created the said works acting in the course of their employment. In the premises the First Claimant was the first owner of the copyright in the Claimants' GUI Works by reason of s. 11(2) of the 1988 Act.

16A. The software comprising the Peloton GUI which reproduces the Claimants' GUI Works was made available to both new users and existing users of the Peloton goods and services when a significant software update was made available to new and existing users of the Peloton goods and services on around 17 November 2017.  This significant software update was known internally to the Peloton business as the "**Caramel Update**". Therefore, new and existing Peloton users could view the versions of the Peloton GUI which reproduce the Claimants' GUI Works from around 17 November 2017.

**The Defendants**

17. The First Defendant is a company incorporated under the laws of the State of Delaware with a principal place of business in 6011 Century Oaks Drive, Chattanooga, Tennessee,

37416-3658, United States. A Mr. Louis Lentine is described as its Chief Executive
Officer in the company records relating thereto.

18. The Second Defendant is a company (Company No. 11694932), incorporated under the
laws of England and Wales on 23 November 2018 with its registered address at 88
Crawford Street, London, England, W1H 2EJ. On 1 December 2018, Mr. Lentine was
transferred a controlling share of 75% of the shares in the Second Defendant and he has
also been a director of the Second Defendant since 25 January 2019.

19. The Third Defendant is a company incorporated under the laws of the state of Florida
with a principal place of business at 6011 Century Oaks Dr, Chattanooga, Tennessee,
37416-3658, United States. Mr. Lentine is and was at all material times its President.

20. The Fourth Defendant is a company incorporated under the laws of the State of Delaware
with a principal place of business in 6011 Century Oaks Drive, Chattanooga, Tennessee,
37416-3658, United States. Mr. Lentine is and was at all material times the Chief
Executive Officer and President of the Fourth Defendant. The Fourth Defendant has been
identified in various press reports as "owning the Echelon brand" when recording
statements by Mr Lentine, in particular in the articles accessible at the following Internet
addresses:

>   20.1. The Bloomberg article dated 8 October 2019 accessible at
>   https://www.bloomberg.com/news/articles/2019-10-08/peloton-files-suit-
>   accusing-rival-echelon-of-copying-business;
>   20.2. The LA Times article dated 8 October 2019 accessible at
>   https://www.latimes.com/business/story/2019-10-08/peloton-sues-cycling-rival-
>   echelon.

21. The Defendants trade together in the provision in the UK and the European Union of
connected home exercise bikes and associated goods and services as particularised in
paragraphs 24 to 28 below, in each case under and by reference to the sign ECHELON and
the logo depicted below this paragraph ("the **Echelon Logo**"). Further the Defendants
provide computer software and streamed content as particularised under paragraphs 26 to
27 below *inter alia* for the purposes of the operation by users of the said connected exercise

bikes including an app known as the Echelon Fit app, in each case in direct competition with the Claimants' goods and services provided under the Peloton Marks.

**The Echelon logo**



22. Each of the acts complained of herein was committed pursuant to a common design between the Defendants and each of them. Further and/or alternatively, the acts of the Second Defendant in the UK were directed and/or procured and/or authorised by the First, Third and Fourth Defendants. In support of the foregoing and pending disclosure or further information in these proceedings, the Claimants rely on the following:

22.1. The status of Lou Lentine as a director and majority shareholder of the Second Defendant and the fact that he holds himself out as an executive of the First, Third and Fourth Defendants through use of the titles '*Chief Executive Officer*' and '*President*.' Paragraphs 17 to 20 herein above are repeated. It is inferred from these facts that the actions of the First through Fourth Defendants are carried out with the knowledge of each other and that the said Defendants act in concert *inter alia* through the role of Mr Lentine within the Defendants;

22.2. The First Defendant claims copyright in respect of the Echelon UK Website by use of a "©" sign followed by the First Defendant's name. It is inferred from this that it either controls the Echelon UK Website or licences the Second Defendant to use it in the UK;

22.3. The Third Defendant is registered as a '*provider*' of the Echelon Fit app in the UK and Germany on all app stores from which it is available. The First and Second Defendants advertise and promote the said app and the use of the app is fundamental to the business of the First and Second Claimants complained of herein. In the premises it is to be inferred that the Third Defendant's role in providing the said app for the purposes of the acts complained of herein is carried out pursuant to a common design with the First and Second Defendants.

19

22.4. In the terms and conditions of sale displayed at https://echelonfit.uk/pages/terms-and-conditions on the Echelon UK Website, the Fourth Defendant is identified as the party with whom customers contract in purchasing goods or services *via* the Echelon UK Website.

23. In the premises, the Defendants are jointly and severally liable for each and all of the acts complained of herein as joint tortfeasors.

**The Defendants' Acts Complained of**

24. Since a date presently unknown to the Claimants but prior to the issue of the claim form herein and subsequent to incorporation of the Second Defendant on 23 November 2018, the First and/or Second Defendant and/or Third Defendant and/or Fourth Defendant have carried out trade in the UK and the EU in the supply and offer to supply of connected home exercise bikes and associated goods and services including software relating thereto such as the Echelon Fit app in each case under and by reference to signs comprising the word ECHELON and the Echelon Logo, including *via* a website at the address: http://www.echelonfit.uk (the **"Echelon UK Website"**). An image of the homepage of the Echelon UK Website is attached at Annex 10 hereto. The Echelon UK Website is operated by the Second Defendant.

25. The Echelon UK Website targets members of the public in the UK. In support of the foregoing, the Claimants rely on the following:

25.1. Any UK user seeking access to the Defendants' other Echelon websites for the US or Canada at http://www.echelonfit.com or http://www.echelonfit.ca is automatically redirected to the Echelon UK Website;

25.2. The homepage of the Echelon UK Website is marked with a Union Jack device in its top right hand corner;

25.3. All prices for the Defendants' products and services on the Echelon UK Website are denominated in sterling and free shipping is offered for orders in the UK;

25.4. The returns policy on the Echelon UK Website set out at https://echelonfit.uk/pages/returns-policy is expressed to be '*only applicable to purchases made through Echelon Fitness UK Limited website*.' There is a separate customer service email address for the Echelon UK Website at cs@echelonfit.uk.

26. The Defendants supply and offer for supply in the United Kingdom connected exercise bikes and associated products from the Echelon UK Website, and in each case use the signs ECHELON and Echelon Logo in relation thereto. Further, in respect of certain of the associated goods and services particularised below the Defendants use what the Claimants believe to be a further version of the Echelon Logo ("the **Second Echelon Logo**") depicted under paragraph 26.3 below.

PARTICULARS

26.1. The Defendants have sold and offered for sale the Echelon Smart Connect Bike EX3 Max (the **"Echelon EX3"**), a stationary exercise bicycle, from the Echelon UK Website. An image of the page offering the said product for sale is at Annex 11 hereto.

26.2. On 2 December 2019 representatives of the Claimants purchased an Echelon EX3 from the Echelon UK Website for delivery to a UK address ("the **Test Purchase**").

26.3. The Echelon EX3 purchased by way of the Test Purchase came in packaging bearing sign ECHELON mark and the Echelon Logo (images of this packaging are attached at Annex 12 hereto). The Echelon EX3 itself bore the Second Echelon logo depicted below (used in the colourways shown)

**The Second Echelon logo**

 

26.4. By way of a page of the Echelon UK Website accessible via the address www.echelonfit.co.uk/products/ the Defendants have sold and offered for sale *inter alia* the following accessories and clothing products, each bearing the sign ECHELON and/or the Echelon logo and/or the Second Echelon Logo (together, the "**Echelon Logos**") and each sold and offered for sale on a webpage bearing the sign ECHELON and the Echelon Logo. A copy of the said webpage is attached at Annex 13 hereto.

26.4.1. Echelon Advanced Heart Monitor;

26.4.2. Echelon fitness mat;

26.4.3. Echelon water bottles;

26.4.4. Echelon bike accessories;

26.4.5. Echelon hats;

26.4.6. Echelon sports tees, sports bras and tank tops.

26.5. The Defendants offer subscribers in the UK the opportunity to download the Echelon Fit App from the Apple App Store and Google Play via links on the webpage of the Echelon UK Website accessible at the address www.echelonfit.uk/pages/get-the-app. Images of the webpages of the Apple App Store and Google Play offering the said downloads are at Annex 14 hereto. The Third Defendant is in each case identified as the provider of the Echelon Fit App.

26.6. As part of the Test Purchase representatives of the Claimants obtained a copy of the Echelon Fit App for use with the Echelon EX3 within the UK. The sign ECHELON and the Echelon Logo are displayed by the Echelon Fit App during use, thereby using the said signs in relation thereto.

27. Through the Echelon Fit app, the Defendants and/or each of them make available live or on-demand content on a subscription basis to users in one-month, one-year and two-year packages. The Echelon Fit app and the said content reproduce a substantial part of the Claimants' GUI Works and each of them thereby infringe the First Claimant's copyright therein as particularised under the section entitled "Copyright Infringement" below.

28. Further, the First Defendant's customer service department operating via Facebook informs those who contact it that the Defendants ship their Echelon products, in each case bearing the signs ECHELON and the Echelon Logos "worldwide". Further, the Defendants have supplied their Echelon products to consumers in member states of the EU (other than the UK) including in particular Germany. In support of the foregoing the Claimants will rely on the following matters pending disclosure:

28.1. The offer to deliver to a customer in Germany of an ECHELON branded SmartConnect EX3 bike on 5 May 2020. Attached at Annex 15 hereto are images

22

of the exchange *via* the First Defendant's Facebook customer services page by which the Defendants offered to ship the said product to Germany.

28.2. The sale for delivery to a customer in Germany of an ECHELON branded SmartConnect EX3 bike in May 2020 *via* the Echelon UK website, delivered on 12 June 2020 to Uerdinger Strasse 779, 47800 Krefeld, Germany. Attached at Annex 16 hereto are images of the order confirmation email and order summary for this purchase dated 9 June 2020.

**EU Trade Mark Jurisdiction**

29. The Claimant relies on the jurisdiction of the High Court as an EU Trade Mark Court in respect of the EUTMs and the IRs under Arts. 124 and 125 of the EUTMR. The Court has jurisdiction in respect of infringement of the EUTMs and IRs throughout the EU based on the domicile of the Second Defendant (pursuant to art 125(1) of the EUTMR) and in respect of the First, Third, and Fourth Defendants based on the domicile of the Second Claimant (pursuant to art 125(2) of the EUTMR).

**Trade mark infringement**

30. The sign ECHELON is highly similar to the Claimants' registrations in respect of the word mark PELOTON. Without prejudice to the generality of the foregoing, the Claimants rely on the following:

30.1. The mark PELOTON and the sign "Echelon" each feature three syllables with short vowels and end with the syllable '-*on*' which would be pronounced by the relevant public in the same way in both cases. Accordingly the PELOTON word marks and the sign "Echelon" are aurally similar;

30.2. The mark PELOTON and the sign "Echelon" are conceptually similar, each describing formations of groups of cyclists used to reduce the impact of wind resistance during racing;

30.3. The mark PELOTON and the sign "Echelon" are visually similar, as words of the same length with the same ending;

31. The Peloton Logo and the Echelon Logo and Second Echelon Logo are visually closely similar, and in each case share a conceptual similarity, depicting in stylised form the pedals of an exercise bike. Further the Claimants will rely on the use of red, black, white and grey (and combinations of some of those colours) in the Echelon Logo and Second Echelon Logo as being similar to the context in which the Peloton Logo is used, namely predominantly in grey, white, red and black (and combinations of some of those colours) and in respect of which the Peloton Marks have acquired a reputation through use as particularised in paragraph 13 above.

32. In the premises, by carrying out the acts complained of under paragraphs 24 to 28 above the Defendants have used in the course of trade without the consent of the Claimants or any of them signs similar to the Peloton Marks and each of them in relation to goods and services identical to those for which the Peloton Marks are registered, as a result of which there exists a likelihood of confusion on the part of the public. In support of the foregoing the Claimants will rely pending disclosure *inter alia* on the following instances of actual confusion caused by the Defendants' use of the signs complained in the UK and of confusion engendered by the use of the signs complained of in the USA.

PARTICULARS OF CONFUSION

32.1. On 2 April 2020 Mr Andrei Bicer, the Showroom Manager for the Peloton store in Leeds, UK, received a call from a Peloton customer who explained she was having difficulties with the Peloton app, which kept asking her to 'subscribe' even though she had already bought a Peloton subscription and in which all the classes were 'locked'. The customer further explained that when she clicked the 'Start subscription' button and followed this process through, the app gave her the option to "*Start your free trial with Echelon Connect and extra mile.*" Mr Bicer informed her that she was not using the Peloton app, but rather the Echelon app and asked her to delete the Echelon app and instead search for 'Peloton' on the App Store. The Claimants will rely on the customer as having been confused by reason of the similarity between the signs complained of and the Peloton Marks.

32.2. On 9 December 2019 a customer of the Defendants in the USA contacted the Claimants' US customer support chat, a transcript of which is attached at pages 1 to 2 of Annex 17 hereto. The Claimants will rely on the said log as demonstrating that the consumer (whose name is redacted from the attached log on grounds of

24

confidentiality but will be provided on suitable terms) contacted the Claimants' customer service team in error, wrongly believing either that her product was a Peloton product or that the team which she contacted was the Echelon support team. In either case the Claimants will contend that the said error arose as a result of the similarity between the signs complained of and the Peloton Marks and their impact on an English-speaking consumer.

32.3. On 3 January 2019 a dissatisfied customer of the Defendants in the USA emailed both the Claimants' US customer support service at support@onepeloton.com and the Defendants' customer support at cs@echelonfit.com . A copy of the said email is attached at pages 3 to 4 of Annex 17 hereto. The Claimants will rely on the said email as demonstrating that the consumer (whose name is redacted from the attached email on grounds of confidentiality but will be provided on suitable terms) contacted the Claimants' customer service team in error, wrongly believing either that their product was a Peloton product. The Claimants will contend that the said error arose as a result of the similarity between the signs complained of and the Peloton Marks and their impact on an English-speaking consumer.

33. In the premises of paragraphs 30 to 32 above, the Defendants have infringed the UKTMs pursuant to section 10(2) of the 1994 Act and the EUTMR and IRs pursuant to Art. 9(2)(b) of the EUTMR. After 31 December 2020 or such other day as shall mark the end of the implementation period following the United Kingdom's departure from the EU, the Claimants will rely on the Defendants' acts complained of in the UK as amounting to infringements of the comparable trade mark EU equivalent to the EUTMR pursuant to section 10(2) of the 1994 Act.

34. Further or in the alternative, by carrying out the acts complained of under paragraphs 24 to 28 above the Defendants have used in the course of trade without the consent of the Claimants or any of them signs similar to the Peloton Marks where the Peloton Marks are each marks with a reputation in the UK and the EU, where that use without due cause takes unfair advantage of the distinctive character and repute of the Peloton Marks. In consequence, the Defendants have infringed the UKTMs pursuant to section 10(3) of the 1994 Act and the EUTMR and IRs pursuant to Art. 9(2)(c) of the EUTMR. After 31 December 2020 or such other day as shall mark the end of the implementation period following the United Kingdom's departure from the EU, the Claimants will rely on the

Defendants' acts complained of in the UK as amounting to infringements of the comparable trade mark EU equivalent to the EUTMR pursuant to section 10(3) of the 1994 Act. Without prejudice to the generality of the foregoing the Claimants will rely on the following matters in support of the foregoing:

34.1. The identity or alternatively close similarity between the goods and services for which the Peloton Marks have a reputation and the goods and services in respect of which the Echelon signs complained of are used.

34.2. The close similarity between the Peloton Marks and the signs complained of as particularised under paragraphs 30 and 31 above is such as to give rise to a link in the mind of the public, whether or not the similarity is sufficient to give rise to a likelihood of confusion. In support of the existence of such a link the Claimants will rely on the following matters pending disclosure herein:

34.2.1. The instances of actual confusion particularised under paragraph 32 above.

34.2.2. On 4 April 2019 an existing customer of the Claimants' services in the UK emailed the Peloton Commercial Sales team concerning advertising for the Defendants' "Echelon" connected home fitness exercise bike and a comparison by the Defendants found at https://echelonfit.uk/pages/compare-the-ex3-and-peloton. A copy of the email is attached at page 5 of Annex 17 hereto. The consumer (whose name is redacted from the attached email on grounds of confidentiality but will be provided on suitable terms) commented on similarities between the Peloton and Echelon logos and concluded her email with the statement "*Unless Echelon is actually owned by Peloton and is just a budget version? In which case this would all make much more sense!*". The Claimants will rely on the said comments in support of the existence of a link between the signs complained of and the Peloton Marks.

34.2.3. Further, in support of the contention that such a link will be formed the Claimants will rely on the use of the signs complained of in the context of content provided by the Defendants via the Echelon Fit App which is closely similar in appearance to the Claimants' GUI Works as complained of by way of copyright infringement below.

34.3. The said link enables the Defendants to take advantage of the efforts made by the Claimants in developing their business under the Peloton Marks and their position as

market leader in the sector and to benefit which from riding on the coat-tails of the Claimants' well-known Peloton Marks without making any payment in respect thereof.

34.4. The Defendants have at all material times been aware of the Claimants' business and the reputation of the Peloton Marks and have sought to take advantage of the positive aspects of the Claimants' reputation as market leader.

34.5. Further, in support of the contention that the advantage obtained by the Defendants' is unfair and the allegation of intent in paragraph 34.4 above the Claimants will rely pending disclosure *inter alia* on:

34.5.1.  the close similarities between the content provided by the Defendants via the Echelon Fit App derived from copying the Claimants' GUI Works complained of by way of copyright infringement below.

34.5.2. the similarities between the colours and get-up in which the Echelon Logos are used and those in which the Peloton Logo is used and for which it has a reputation.

34.5.3. The use by the Defendants in PR and promotional materials and social media postings  in the UK of the slogans "Never Train Alone" and "Never Ride Alone" (in each case connected with the Echelon signs complained of) which are respectively closely similar and identical to the Claimants' promotional slogan "Never Ride Alone" used in both the USA and the UK. Examples of the Defendants' use complained of are attached at Annex 18 hereto.

**Copyright Infringement**

35. The content provided by the Defendants via the Echelon Fit App (in particular the Echelon Fit GUI) reproduces a substantial part of the Claimants' GUI Works and each of them, as particularised by way of example below. For the avoidance of doubt the Claimants rely on the reproduction of the Claimants' GUI Works as part of every class offered to users of the Echelon Fit App, irrespective of the nature of the background or identity or appearance of the instructor in issue.

PARTICULARS OF INFRINGEMENT

35.1. Attached at Annex 19 hereto is an image taken from a scenic ride forming part of content communicated to the public in the UK via the Echelon Fit App on 3 August 2020 and with the title 'Climbing Haleakala'. The said image reproduces a substantial part of the Metrics Visual States Work, the Bootcamp Tread Work, the Old Class and Tread Leader Board Work A, the Old Class and Tread Leader Board

27

Work B, the Class and Tread Metrics and Leader Board Work and/or of the Class and Metrics Work.

35.2. Attached at Annex 20 hereto is an image taken from a scenic ride forming part of content communicated to the public in the UK via the Echelon Fit App on 3 August 2020 and with the title 'Climbing Haleakala'. The said image reproduces a substantial part of the Bootcamp Tread Work, the Old Class and Tread Leader Board Work A, the Old Class and Tread Leader Board Work B, the Class and Tread Leader Board Work A, the Class and Tread Leader Board Work B, the Modified Class and Tread Leader Board Work, the Class and Leader Board Work, and/or of the Modified Class and Leader Board Work.

35.3. Attached at Annex 21 hereto is an image taken from a scenic ride forming part of content communicated to the public in the UK via the Echelon Fit App on 3 August 2020 and with the title 'Climbing Haleakala'. The said image reproduces a substantial part of the Bootcamp Tread Work, the Old Class and Tread Leader Board Work A, the Old Class and Tread Leader Board Work B, the Class and Tread Leader Board Work A, the Class and Tread Leader Board Work B, the Modified Class and Tread Leader Board Work, the Class and Leader Board Work, the Modified Class and Leader Board Work, the Class and Tread Metrics and Leader Board Work, the Class and Metrics Work and/or of the Metrics Visual States Work.

35.4. Attached at Annex 22 hereto is an image taken from a class forming part of content communicated to the public in the UK via the Echelon Fit App on 3 August 2020 and with the title 'Speed 20 – Speedin' (Eden Lusk)'. The said image reproduces a substantial part of the Class Work.

35.5. Attached at Annex 23 hereto is an image taken from a class forming part of content communicated to the public in the UK via the Echelon Fit App on 3 August 2020 and with the title 'Speed 20 – Speedin' (Eden Lusk)'. The said image reproduces a substantial part of the Bootcamp Tread Work, the Old Class and Tread Leader Board Work A, the Old Class and Tread Leader Board Work B, the Class and Tread Leader Board Work A, the Class and Tread Leader Board Work B, the Modified Class and Tread Leader Board Work, the Class and Leader Board Work, the Modified Class and Leader Board Work, and/or of the Class Work.

35.6. Attached at Annex 24 hereto is an image taken from a class forming part of content communicated to the public in the UK via the Echelon Fit App on 3 August 2020 and with the title 'Speed 20 – Speedin' (Eden Lusk)'. The said image reproduces a

substantial part of the Bootcamp Tread Work, the Old Class and Tread Leader Board Work A, the Old Class and Tread Leader Board Work B, the Class and Tread Metrics and Leader Board Work, the Class and-Metrics Work, the Metrics Visual States Work, and/or of the Class Work.

35.7. Attached at Annex 25 hereto is an image taken from a class forming part of content communicated to the public in the UK via the Echelon Fit App on 3 August 2020 and with the title 'Speed 20 – Speedin' (Eden Lusk)'. The said image reproduces a substantial part of the Bootcamp Tread Work, the Old Class and Tread Leader Board Work A, the Old Class and Tread Leader Board Work B, the Class and Tread Leader Board Work A,  the Class and Tread Leader Board Work B, the Modified Class and Tread Leader Board Work, the Class and Leader Board Work, the Modified Class and Leader Board Work, the Class and Tread Metrics and Leader Board Work, the Class and Metrics Work, the Metrics Visual States Work and/or of the Class Work.

36. The First Claimant will rely on the following facts and matters in support of the inference that the Defendants' content provided via the Echelon Fit App was copied from the Claimants' GUI Works:

36.1. The close similarity between the Defendants' content and the Claimants' GUI Works identified above.

36.2. The fact that the Defendants at all material times had access to the Claimants' GUI Works. As stated above at paragraph 16A new and existing Peloton users could view the Peloton GUI which reproduces the Claimants' GUI Works from around 17 November 2017. Pending disclosure, it is not in the Claimants' knowledge exactly how the Defendants and/or each of them had access to each of the Claimants' GUI works, however it is to be inferred that the Defendants and/or each of them via their directors and/or employees and/or servants and/ or agents and/or contractors and/or freelancers and/or consultants acting as new and/or existing Peloton users viewed the Peloton GUI which reproduces the Claimants' GUI Works from around 17 November 2017. In particular Mr Louis Lentine has had a Peloton bike since around January 2017. Mr Lentine's Peloton account name is 'LouLen' and the workout history of this account shows that this account has accessed a number of Peloton classes since around 17 November 2017. Further,

shared users of Mr Lentine's Peloton account include Megan Humble (a creative director at the Third Defendant), Christian Nichols (an executive assistant at the Third Defendant) and Patrick Jaworski (a creative director at the Fourth Defendant). Annex 26 hereto contains screenshots from the Claimants' records showing (i) Mr Lentine's purchase of a Peloton bike, (ii) that the 'LouLen' Peloton account is in the name of Mr Lentine and the names of the shared users for the 'LouLen' account, (iii) parts of the workout history of the 'LouLen' account and examples of the Peloton classes this account has accessed, and Annex 27 hereto contains print-outs of the  LinkedIn profiles for Megan Humble, Christian Nichols and Patrick Jaworski.

37. In the premises, in creating content which reproduces a substantial part of the Claimants' GUI Works and each of them and in communicating such content to the Defendants' customers in the UK via the Echelon Fit App the Defendants and each of them have and have authorised the following acts thereby infringing the First Claimant's Copyright in the Claimants' GUI works:

37.1. The copying of the Claimants' GUI Works by reproducing the said works and each of them works in material form, including by storing copies of the said works by electronic means, contrary to s. 17 of the 1988 Act.

37.2. The communication to the public in the United Kingdom of copies of the Claimants' GUI Works by the making available to the public of the said works by electronic transmission in such a way that members of the public may access it from a place and at a time individually chosen by them, contrary to s. 20 of the 1988 Act.

**Loss and damage**

38. The Claimants are not aware of all the Defendants' acts of infringement but will seek to recover in respect of all of such acts.

39. Unless restrained by the Court, the Defendants threaten and intend to continue the acts of copyright and trade mark infringement complained of herein.

40. By reason of the matters aforesaid the Claimants have suffered loss and damage in the UK and in relation to the EUTMs and IRs, the Claimants have also suffered loss and damage in the rest of the EU.

41. The Claimants are entitled to and will seek an inquiry as to damages for trade mark infringement and copyright infringement (including additional damages pursuant to s. 97 of the 1988 Act by reason of the flagrancy of the Defendants' acts) or at their election an account of profits. In support of the allegation of flagrancy the Claimants will rely on the fact that the Defendants' acts complained of were undertaken knowingly as part of a deliberate policy of seeking to copy the look and feel of the Claimants' goods and services with an awareness that copyright and trade mark law protected many of the replicated elements of the Claimants' goods and services.

42. The Claimants are entitled to and claims interest pursuant to section 35A of the Senior Courts Act 1981 and/or under the inherent jurisdiction of the Court.

**AND THE CLAIMANTS CLAIM:**

1. Declarations that:

   1.1. The Defendants have infringed copyright in the Claimants' GUI Works through the content provided by the Defendants via the Echelon Fit App (in particular the Echelon Fit GUI); and that:

   1.2. The Defendants have infringed IR no. 1217430, IR no. 1289389 ("the **IRs**"), UKTM no. 3337503, UKTM no. 3337505 ("the **UKTMs**"), EUTM no. 018093072 and EUTM no. 018093070 ("the **EUTMs**") and any comparable trade mark EU in respect of the EUTMs.

2. An injunction to restrain the Defendants whether acting themselves or through their directors, employees, servants or agents or howsoever from doing or authorising, causing, assisting or enabling any third party to do any of the following acts without the licence or permission of the Claimants:

   a. Within the United Kingdom, reproducing or authorising the reproduction of or communicating to the public reproductions of a substantial part of the

Claimants' GUI Works or any of them or otherwise infringing the First Claimant's copyright in the Claimants' GUI Works;

b.    Within the EU, using in the course of trade the sign ECHELON, the Echelon Logo or the Second Echelon Logo in relation to goods or services similar or identical to those for which the IRs or the EUTMs are registered, or otherwise infringing the IRs or the EUTMs.

c.    Within the UK using in the course of trade the sign ECHELON, the Echelon Logo or the Second Echelon Logo in relation to goods or services similar or identical to those for which the UKTMs are registered, or otherwise infringing the UKTMs or any comparable trade mark EU in respect of the EUTMs.

d.    Howsoever otherwise infringing the First Claimant's copyright in the Claimants' GUI Works and the Claimants' Peloton Marks.

3. An order for delivery up or destruction upon oath goods, materials and articles in the possession, power, custody or control of the Defendants, the use of which in the course of trade would constitute an infringement of the aforementioned injunctions or any of them and confirmation of the same in the form of a witness statement signed by the Defendants;

4. An inquiry as to damages for copyright infringement and / or infringement of the Peloton Marks including damages for losses suffered in both the UK and the wider EU and damages pursuant to regulation 3 of the Intellectual Property (Enforcement, etc.) Regulations 2006, or alternatively and at the option of the Claimants, an account of profits made by reason of the Defendants' acts as aforesaid.

5. An order for payment of all sums found due to the Claimant together with interest thereon pursuant to s.35A of the Senior Courts Act 1981 or the inherent jurisdiction of the Court;

6. An order for appropriate measures for the dissemination and publication of the judgment to be taken at the Defendants' expense in accordance with paragraph 26.2 of the Practice Direction that supplements the Civil Procedure Rules Part 63;

7. Costs; and

8.   Further or other relief.

TOM MOODY-STUART QC

IONA BERKELEY

**Statement of Truth**

The Claimants believe that the facts stated in these Amended Particulars of Claim are true. The Claimants understand that proceedings for contempt of court may be brought against anyone who makes, or causes to be made, a false statement in a document verified by a statement of truth without an honest belief in its truth. I am duly authorised by the Claimants to sign this statement of truth on their behalf.

Signed. *Mick Rose* …………………                    Dated: 9 March 2021

Name: NICHOLAS PETER ROSE

Position held:  PARTNER, FIELDFISHER LLP

RE-RE-SERVED this the 9 March 2021 by Fieldfisher LLP of Riverbank House, 2 Swan Lane, London, EC4R 3TT, solicitors for the First, Second, and Third Claimants.

**Claim No. IL-2020-000074**

**IN THE HIGH COURT OF JUSTICE**

**BUSINESS AND PROPERTY COURTS OF ENGLAND AND WALES**

**INTELLECTUAL PROPERTY LIST (ChD)**

**B E T W E E N**

**(1) PELOTON INTERACTIVE INC**

**(2) PELOTON INTERACTIVE UK LIMITED**

**(3) PELOTON INTERACTIVE DEUTSCHLAND GMBH**

**Claimants**

**and**

**(1) ECHELON FITNESS LLC**

**(2) ECHELON FITNESS UK LIMITED**

**(3) VIATEK CONSUMER PRODUCTS GROUP INC**

**(4) ECHELON MULTIMEDIA FITNESS LLC**

**Defendants**

---

**AMENDED PARTICULARS OF CLAIM**

---

**Fieldfisher LLP**
**Riverbank House**
**2 Swan Lane**
**London EC4R 3TT**
**Tel:        020 7861 4000**
**Fax:       020 7488 0084**
Ref: NPR/NR5/2004812.00007

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PELOTON INTERACTIVE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 19-1903 (RGA) |
| v. | ) | |
| | ) | |
| ECHELON FITNESS MULTIMEDIA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF PELOTON INTERACTIVE, INC.'S RESPONSES AND OBJECTIONS
TO DEFENDANT ECHELON FITNESS MULTIMEDIA, LLC'S
FIRST SET OF REQUESTS FOR PRODUCTION (NOS. 1 – 67)**

Peloton Interactive, Inc. ("Peloton"), by and through its attorneys, and pursuant to

Rule 34 of the Federal Rules of Civil Procedure and the Local Rules of this Court, responds and

objects to Echelon Fitness Multimedia, LLC's ("Echelon") Requests for Production of

Documents ("Requests") as follows:

## PRELIMINARY STATEMENT

1.　　Peloton's investigation and development of all facts and circumstances relating to

this action is ongoing.  These responses and objections are made without prejudice to, and are

not a waiver of, Peloton's right to rely on other facts or documents at trial.

2.　　By making the accompanying responses and objections to Echelon's Requests,

Peloton does not waive, and hereby expressly reserves, its right to assert any and all objections as

to the admissibility of such responses into evidence in this action, or in any other proceedings, on

any and all grounds including, but not limited to, competency, relevancy, materiality, and

privilege.  Further, Peloton makes the responses and objections herein without in any way

implying that it considers the Requests or responses thereto to be relevant or material to the

subject matter of this action.

3.      Peloton will produce responsive documents only to the extent that such documents are in the possession, custody, or control of Peloton, as set forth in the Federal Rules of Civil Procedure.  Peloton's possession, custody, or control does not include any constructive possession that may be conferred by Echelon's right or power to compel the production of documents from third parties.

4.      Peloton expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

5.      Publicly available documents including, but not limited to, newspaper clippings, court papers, and documents available on the Internet, will not be produced.

## GENERAL OBJECTIONS

Each of these General Objections and the foregoing Preliminary Statement is incorporated by reference in each of the specific objections and responses below as if fully set forth therein.  For particular emphasis, one or more of these General Objections and one or more parts of the Preliminary Statement may be reiterated in a specific response.  The absence or inclusion or any reiteration in a specific response is neither intended as, nor shall be construed as, a limitation or waiver of any general objection or any other specific objection made herein. Peloton reserves the right to make such additional objections as may be appropriate and nothing contained herein shall be in any way construed as a waiver of any such objection.

1.      Peloton objects to each instruction, definition, and document Request to the extent that it purports to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court.

2.    Peloton objects to each document Request that is overly broad, unduly burdensome, or not reasonably calculated to lead to the discovery of admissible evidence.

3.    Peloton objects to each definition, instruction, and document Request, to the extent that it seeks documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.  Should any such disclosure by Peloton occur, it is inadvertent and shall not constitute a waiver of any privilege.

4.    Peloton objects to the production of documents, things, and/or information that can be found in the public domain and, therefore, are equally accessible to Echelon.

5.    Peloton objects to Echelon's Requests to the extent they seek documents not in Peloton's custody, possession, or control.  Peloton's responses to make available Requested documents do not constitute representations that any such documents exist or are in the possession, custody, or control of Peloton.

6.    Peloton objects to the Requests including, but not limited to, the Definitions, to the extent they are inconsistent with, seek to impose obligations not required by, or seek to expand the scope of permissible discovery under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Local Rules of the District of Delaware, any Order of the Court or any agreement between the parties.  Peloton likewise objects to the Instructions in the Requests as purporting to impose obligations beyond those required by the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Local Rules of the District of Delaware, any Order of the Court, or any agreement between the parties.

7.    Peloton objects to the Requests to the extent that they are not reasonably particular under Federal Rule of Civil Procedure 34(b)(1).

8.      Peloton objects to each Request to the extent that it expressly or impliedly seeks information that is confidential, personal, or proprietary in nature, or that constitutes protected commercial, financial, and/or trade secret information of Peloton or third parties.  Peloton will provide relevant and responsive commercial, financial, or trade secret information only pursuant a confidentiality agreement and under an appropriate designation.

9.      Peloton objects to the Requests to the extent they assume the existence of facts that do not exist and the occurrence of events that did not take place and to the extent they assert legal arguments or characterizations.  Any response of Peloton to an individual Request is not intended to be, and shall not be construed as, an admission that any factual or legal predicate stated in the Request is accurate.

10.      Peloton objects to each definition, instruction, and document Request as overbroad and unduly burdensome to the extent it seeks documents that are readily or more accessible to Echelon from Echelon's own files.  Responding to such Requests would be oppressive, unduly burdensome, and unnecessarily expensive, and the burden of responding to such Requests is substantially the same or less for Echelon as for Peloton.

11.      Peloton objects to the Requests to the extent they seek electronically stored information that is not reasonably accessible because of undue burden or cost.

12.      Peloton objects to the definitions "Peloton," "You," "Your," and "Yours" to the extent that they purport to impose duties beyond those imposed by the Federal Rules of Civil Procedure, the Local Rules of the District of Delaware, or any order or ruling by the Court in this action.  Peloton further objects to these definitions as unduly burdensome, harassing, oppressive and overbroad to the extent they purport to include entities other than Peloton.  For purposes of its responses, Peloton will construe "Peloton," "You," "Your," and "Yours" to mean only

- 4 -

Peloton Interactive, Inc.  Peloton will produce documents only to the extent they are in the possession, custody, or control of Peloton.

13.     Peloton objects to each Request to the extent it seeks a legal conclusion.  Any response of Peloton to an individual Request is not intended to be, and shall not be construed as, an admission that any factual or legal predicate stated in the Request is accurate.

14.     Peloton objects to each Request to the extent it purports to require Peloton to analyze the application of legal arguments to facts of which Peloton was purportedly aware. Peloton therefore objects to the extent that each Request invades the attorney-client privilege, the work product doctrine, and/or any other applicable privilege or immunity.

15.     By referencing the contents of any documents referenced in a Request, Peloton does not admit their authenticity, relevance, or admissibility at trial, and Peloton reserves its rights to object to the introduction of and/or other use of such documents at trial or any other proceeding.

16.     Pursuant to Federal Rule of Civil Procedure 34(b), and pursuant to an appropriate confidentiality agreement, Peloton will produce responsive, non-protected, non-privileged documents and electronically stored information as they are kept in the ordinary course of business or in a reasonably usable format of Peloton's choosing.  Should Peloton withhold any documents or electronically stored information for reasons of privilege or immunity, Peloton will identify the documents and electronically stored information withheld by category in accordance with Federal Rule of Civil Procedure 26(b)(5).

17.     Subject to the Preliminary Statement and General Objections outlined above and the more specific objections set forth below, Peloton responds as follows:

**RESPONSES AND OBJECTIONS TO**
**REQUESTS FOR PRODUCTION OF DOCUMENTS**

**DOCUMENT REQUEST NO. 1**:

All documents supporting or refuting Peloton's contentions that the Accused Products infringe the Patents-in-Suit.

**RESPONSE TO DOCUMENT REQUEST NO. 1**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation to the extent it seeks "all documents supporting or refuting" without specificity. Peloton further objects to this request as improperly seeking expert testimony. Peloton further objects to this Request to the extent it seeks privileged or attorney work product information. Peloton also objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request. Peloton objects to this Request to the extent it seeks documents already in Echelon's possession, custody, or control.

Subject to and without waiver of the foregoing objections, Peloton will produce responsive, non-privileged, non-protected documents pursuant to an appropriate protective order, to the extent such documents currently exist, are in Peloton's possession, custody, or control, and can be located after a diligent search, related to infringement of the Patents-in-Suit by the Accused Products.

**DOCUMENT REQUEST NO. 2**:

All documents relating to your claim for damages for alleged infringement of the Patents-in-Suit.

**RESPONSE TO DOCUMENT REQUEST NO. 2**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation to the extent it seeks "all documents" relating to Peloton's claim for damages. Peloton objects to this request as improperly seeking expert testimony. Peloton further objects to this Request to the extent it seeks privileged or attorney work product information. Peloton also objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request. Peloton objects to this Request to the extent it seeks documents already in Echelon's possession, custody, or control.

Subject to and without waiver of the foregoing objections, Peloton will produce responsive, non-privileged, non-protected documents pursuant to an appropriate protective order, to the extent such documents currently exist, are in Peloton's possession, custody, or control, and can be located after a diligent search, related to Peloton's claim(s) for damages.

**DOCUMENT REQUEST NO. 3**:

All documents relating to the conception of any of the subject matter claimed in the Patents-in-Suit including documents sufficient to identify the persons who allegedly conceived of the subject matter of each claim of the Patents-in-Suit and the dates on which the alleged conception of the subject matter of each claim of the Patents-in-Suit occurred.

**RESPONSE TO DOCUMENT REQUEST NO. 3**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation to the extent it seeks "all documents" relating to the conception of any subject matter. Peloton further objects to this Request to the extent it seeks privileged or attorney work product information. Peloton also objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and

produced in response to another Request.  Peloton objects to this Request to the extent it seeks

documents already in Echelon's possession, custody, or control.

Subject to and without waiver of the foregoing objections, Peloton will produce

responsive, non-privileged, non-protected documents pursuant to an appropriate protective order,

to the extent such documents currently exist, are in Peloton's possession, custody, or control, and

can be located after a diligent search, relating to the conception of the subject matter claimed in

the Patents-in-Suit.

**DOCUMENT REQUEST NO. 4**:

All documents relating to the reduction to practice of any of the subject matter claimed in
the Patents-in-Suit including documents sufficient to identify the persons who allegedly reduced
to practice, or assisted in the reduction to practice, the subject matter of each claim of the
Patents-in-Suit and the dates on which the alleged reduction to practice of the subject matter of
each claim of the Patents-in-Suit occurred.

**RESPONSE TO DOCUMENT REQUEST NO. 4**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently

tailored to the issues in this litigation.  Peloton objects to this request as seeking non-relevant

evidence, as Peloton has not sought to swear-behind any prior art references.  Peloton objects to

this Request as vague and ambiguous with respect to "assisted in the reduction to practice."

Peloton further objects to this Request to the extent it seeks privileged or attorney work product

information.  Peloton also objects to this Request to the extent it seeks documents that are

duplicative or cumulative of documents Requested and produced in response to another Request.

Peloton objects to this Request to the extent it seeks documents already in Echelon's possession,

custody, or control.

Subject to and without waiving these objections, Peloton submits the following response:

Peloton is willing to meet and confer about the scope of this Request.

**DOCUMENT REQUEST NO. 5**:

All documents that support or contradict the diligence of the alleged inventors of the Patents-in-Suit, from the date of conception to the reduction to practice.

**RESPONSE TO DOCUMENT REQUEST NO. 5**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation.  Peloton objects to this request as seeking non-relevant evidence, as Peloton has not sought to swear-behind any prior art references.  Peloton objects to this Request as vague and ambiguous with respect to "support or contradict."  Peloton further objects to this Request to the extent it seeks privileged or attorney work product information. Peloton also objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.  Peloton objects to this Request to the extent it seeks documents already in Echelon's possession, custody, or control.

Subject to and without waiving these objections, Peloton submits the following response: Peloton is willing to meet and confer about the scope of this Request.

**DOCUMENT REQUEST NO. 6**:

All documents relating to the design, development, manufacture of the alleged invention claimed in the Peloton Patents, including but not limited to, development notes, emails, correspondence, memoranda, notebook entries, draft or final requirements, analyses, source code documents, design specifications, and flow charts.

**RESPONSE TO DOCUMENT REQUEST NO. 6**:

Peloton objects to this Request as overbroad and unduly burdensome to the extent it seeks "[a]ll documents" including "notes, emails, correspondence, memoranda, notebook entries, draft or final requirements, analyses, source code documents, design specifications, and flow charts."

Peloton objects to this Request for seeking overly burdensome and irrelevant documents related to "manufacture of the alleged invention." Peloton further objects to this Request to the extent it seeks privileged or attorney work product information. Peloton also objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request. Peloton objects to this Request to the extent it seeks documents already in Echelon's possession, custody, or control.

Subject to and without waiving these objections, Peloton submits the following response: Peloton is willing to meet and confer about the scope of this Request.

**DOCUMENT REQUEST NO. 7**:

All documents relating to the hardware-software integration described at Paragraphs 31 through 34 of the Amended Complaint filed as D.I. 16, and documents sufficient to identify the individuals who were involved in the design and development.

**RESPONSE TO DOCUMENT REQUEST NO. 7**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation. Peloton objects to this Request as vague and ambiguous with respect to "relating to the hardware-software integration." Peloton objects to this Request as being compound in seeking "[a]ll documents relating to the hardware-software integration described at Paragraphs 31 through 34 of the Amended Complaint" and "documents sufficient to identify the individuals who were involved in the design and development." Peloton further objects to this Request to the extent it seeks privileged or attorney work product information. Peloton objects to this Request as duplicative of at least Request No. 6. Peloton objects to this Request to the extent it seeks documents already in Echelon's possession, custody, or control.

Subject to and without waiver of the foregoing objections, Peloton will produce non-privileged, non-protected documents pursuant to an appropriate protective order, to the extent such documents currently exist, are in Peloton's possession, custody, or control, and can be

located after a diligent search, relating to the design and development of the inventions claimed

in the Peloton Patents.

**DOCUMENT REQUEST NO. 8**:

All documents relating to the design and development of the Peloton leaderboard for live and archived classes as described and claimed in the Peloton Patents including the capabilities enabling live and archived content to appear on the same leaderboard, and documents sufficient to identify the individuals who were involved in the design and development.

**RESPONSE TO DOCUMENT REQUEST NO. 8**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently

tailored to the issues in this litigation.  Peloton objects to this request as vague and ambiguous

with respect to "capabilities."  Peloton objects to this Request as duplicative of at least Request

No. 6.  Peloton further objects to this Request to the extent it seeks privileged or attorney work

product information.  Peloton objects to this Request to the extent it seeks documents already in

Echelon's possession, custody, or control.

Subject to and without waiving these objections, Peloton submits the following response:

Peloton is willing to meet and confer about the scope of this Request.

**DOCUMENT REQUEST NO. 9**:

All documents relating to the design and development of archived classes including documents identifying any technological challenges associated with providing archived classes, and documents sufficient to identify the individuals who were involved in the design and development.

**RESPONSE TO DOCUMENT REQUEST NO. 9**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently

tailored to the issues in this litigation.  Peloton objects to this request as vague and ambiguous

with respect to "technological challenges."  Peloton objects to this Request as duplicative of at

least Request Nos. 6 and 8.  Peloton further objects to this Request to the extent it seeks

privileged or attorney work product information.  Peloton objects to this Request to the extent it

seeks documents already in Echelon's possession, custody, or control.

Subject to and without waiving these objections, Peloton submits the following response:

Peloton is willing to meet and confer about the scope of this Request.

**DOCUMENT REQUEST NO. 10**:

All documents relating to the design and development of software enabling performance
parameters of users who have taken a class previously to be timeshifted so that the performance
parameters are presented to a current user, together with the user's own performance parameters,
for comparison at the same point in the selected cycling class, and documents sufficient to
identify the individuals who were involved in the design and development.

**RESPONSE TO DOCUMENT REQUEST NO. 10**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently

tailored to the issues in this litigation.  Peloton objects to this request as vague and ambiguous.

Peloton objects to this Request as duplicative of at least Request Nos. 6 and 8.  Peloton further

objects to this Request to the extent it seeks privileged or attorney work product information.

Peloton objects to this Request to the extent it seeks documents already in Echelon's possession,

custody, or control.  Peloton objects to this Request as compound.

Subject to and without waiving these objections, Peloton submits the following response:

Peloton is willing to meet and confer about the scope of this Request.

**DOCUMENT REQUEST NO. 11**:

All documents relating to the design and development of a start signal indicating a start
point of the cycling class and the software capabilities to synchronize class participant content
(live and archived) to the start signal for data comparison, and documents sufficient to identify
the individuals who were involved in the design and development.

**RESPONSE TO DOCUMENT REQUEST NO. 11**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently

tailored to the issues in this litigation.  Peloton objects to this Request as duplicative of at least

Request Nos. 6 and 8.  Peloton further objects to this Request to the extent it seeks privileged or attorney work product information.  Peloton also objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.  Peloton objects to this Request to the extent it seeks documents already in Echelon's possession, custody, or control.  Peloton objects to this Request as compound.

Subject to and without waiver of the foregoing objections, Peloton will produce responsive, non-privileged, non-protected documents pursuant to an appropriate protective order, to the extent such documents currently exist, are in Peloton's possession, custody, or control, and can be located after a diligent search, relating to the design and development of the inventions claimed in the Peloton Patents.

**DOCUMENT REQUEST NO. 12**:

All documents that support or contradict Peloton's allegations in the Amended Complaint (D.I. 16 at ¶¶ 48-59 and 61-66) that the claims of the Patents-In-Suit contain inventive concepts that were not well-understood, routine, or conventional at the time of the alleged inventions claimed in the Patents-In-Suit.

**RESPONSE TO DOCUMENT REQUEST NO. 12**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation.  Peloton further objects to this Request to the extent it seeks privileged or attorney work product information.  Peloton also objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.  Peloton objects to this Request to the extent it seeks documents already in Echelon's possession, custody, or control.

Subject to and without waiver of the foregoing objections, Peloton will produce responsive, non-privileged, non-protected documents pursuant to an appropriate protective order,

to the extent such documents currently exist, are in Peloton's possession, custody, or control, and can be located after a diligent search.

**DOCUMENT REQUEST NO. 13**:

All documents relating to internet-accessible exercise classes where the document is: (i) dated prior to July 31, 2013 or (ii) describes internet-accessible exercise classes offered prior to July 31, 2013.

**RESPONSE TO DOCUMENT REQUEST NO. 13**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation.  Peloton objects to this request as vague and ambiguous. Peloton further objects to this Request to the extent it seeks privileged or attorney work product information.  Peloton also objects to this Request to the extent that it seeks publicly available information that is equally available to Echelon.  Peloton also objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.  Peloton objects to this Request to the extent it seeks documents already in Echelon's possession, custody, or control.

Subject to and without waiving these objections, Peloton submits the following response: Peloton is willing to meet and confer about the scope of this Request.

**DOCUMENT REQUEST NO. 14**:

All documents describing internet-accessible archived exercise classes where the document is: (i) dated prior to July 31, 2013 or (ii) describes internet-accessible archived exercise classes offered prior to July 31, 2013.

**RESPONSE TO DOCUMENT REQUEST NO. 14**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation.  Peloton objects to this request as vague and ambiguous. Peloton further objects to this Request to the extent it seeks privileged or attorney work product information.  Peloton further objects to this Request to the extent it seeks privileged or attorney

work product information.  Peloton also objects to this Request to the extent that it seeks publicly available information that is equally available to Echelon.  Peloton additionally objects to this Request as duplicative of at least Request No. 13.  Peloton objects to this Request to the extent it seeks documents already in Echelon's possession, custody, or control.

Subject to and without waiving these objections, Peloton submits the following response: Peloton is willing to meet and confer about the scope of this Request.

**DOCUMENT REQUEST NO. 15**:

All documents describing tracking performance parameters of two or more users in an exercise class or race and comparing them at the same point in a class or race where document is: (i) dated prior to July 31, 2013 or (ii) describes a system that offered such capabilities prior to July 31, 2013.

**RESPONSE TO DOCUMENT REQUEST NO. 15**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation.  Peloton objects to this request as vague and ambiguous. Peloton further objects to this Request to the extent it seeks privileged or attorney work product information.  Peloton also objects to this Request to the extent that it seeks publicly available information that is equally available to Echelon.  Peloton also objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.  Peloton objects to this Request to the extent it seeks documents already in Echelon's possession, custody, or control.

Subject to and without waiving these objections, Peloton submits the following response: Peloton is willing to meet and confer about the scope of this Request.

**DOCUMENT REQUEST NO. 16**:

All documents describing synchronizing past and present performances so that the performances are compared at the same point in a class or race where the document is: (i) dated prior to July 31, 2013 or (ii) describes a system that offered such capabilities prior to July 31, 2013.

**RESPONSE TO DOCUMENT REQUEST NO. 16**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation.  Peloton objects to this request as vague and ambiguous. Peloton further objects to this Request to the extent it seeks privileged or attorney work product information.  Peloton also objects to this Request to the extent that it seeks publicly available information that is equally available to Echelon.  Peloton also objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.  Peloton objects to this Request to the extent it seeks documents already in Echelon's possession, custody, or control.

Subject to and without waiving these objections, Peloton submits the following response: Peloton is willing to meet and confer about the scope of this Request.

**DOCUMENT REQUEST NO. 17**:

All documents describing leaderboards in which live and archived content appear on the same leaderboard where the document is: (i) dated prior to July 31, 2013 or (ii) describes a system that offered such leaderboards prior to July 31, 2013.

**RESPONSE TO DOCUMENT REQUEST NO. 17**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation.  Peloton objects to this request as vague and ambiguous. Peloton further objects to this Request to the extent it seeks privileged or attorney work product information.  Peloton also objects to this Request to the extent that it seeks publicly available information that is equally available to Echelon.  Peloton also objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.  Peloton objects to this Request to the extent it seeks documents already in Echelon's possession, custody, or control.

Subject to and without waiving these objections, Peloton submits the following response:

Peloton is willing to meet and confer about the scope of this Request.

**DOCUMENT REQUEST NO. 18**:

All documents describing leaderboards used in exercise classes or races where the document is: (i) dated prior to July 31, 2013 or (ii) describes a system that offered such leaderboards prior to July 31, 2013.

**RESPONSE TO DOCUMENT REQUEST NO. 18**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently

tailored to the issues in this litigation.  Peloton objects to this request as vague and ambiguous.

Peloton further objects to this Request to the extent it seeks privileged or attorney work product

information.  Peloton also objects to this Request to the extent that it seeks publicly available

information that is equally available to Echelon.  Peloton also objects to this Request to the

extent it seeks documents that are duplicative or cumulative of documents Requested and

produced in response to another Request.  Peloton objects to this Request to the extent it seeks

documents already in Echelon's possession, custody, or control.

Subject to and without waiving these objections, Peloton submits the following response:

Peloton is willing to meet and confer about the scope of this Request.

**DOCUMENT REQUEST NO. 19**:

All documents relating to the preparation, decision to file, filing, or prosecution of the Peloton Patents.

**RESPONSE TO DOCUMENT REQUEST NO. 19**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently

tailored to the issues in this litigation.  Peloton further objects to this Request to the extent it

seeks privileged or attorney work product information.  Peloton also objects to this Request to

the extent it seeks documents that are duplicative or cumulative of documents Requested and

produced in response to another Request.  Peloton objects to this Request to the extent it seeks

documents already in Echelon's possession, custody, or control, or documents that are publicly

available.

Subject to and without waiver of the foregoing objections, Peloton will produce

responsive, non-privileged, non-protected documents pursuant to an appropriate protective order,

to the extent such documents currently exist, are in Peloton's possession, custody, or control, and

can be located after a diligent search, relating to the filing and prosecution of the Patents-in-Suit.

**DOCUMENT REQUEST NO. 20**:

All documents relating to any objective indicia (e.g., commercial success, long felt but
unresolved need, failure of others, skepticism by experts, praise by others, teaching away by
others, or copying) of non-obviousness of the claims of the Patents-in-Suit, and the nexus
between any such secondary consideration(s) and the claimed features of the Patents-in-Suit.

**RESPONSE TO DOCUMENT REQUEST NO. 20**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently

tailored to the issues in this litigation.  Peloton further objects to this Request to the extent it

seeks privileged or attorney work product information.  Peloton objects to this request as vague

and ambiguous with respect to "objective indicia of non-obviousness."  Peloton also objects to

this Request to the extent that it seeks publicly available information that is equally available to

Echelon.  Peloton also objects to this Request to the extent it seeks documents that are

duplicative or cumulative of documents Requested and produced in response to another Request.

Peloton objects to this Request to the extent it seeks documents already in Echelon's possession,

custody, or control, or documents that are publicly available.  Peloton objects to this Request to

the extent it seeks documents that are publicly available.

Subject to and without waiver of the foregoing objections, Peloton will produce

responsive, non-privileged, non-protected documents pursuant to an appropriate protective order,

- 18 -

to the extent such documents currently exist, are in Peloton's possession, custody, or control, and can be located after a diligent search, relating to secondary considerations of non-obviousness.

**DOCUMENT REQUEST NO. 21**:

All documents relating to the first description in a printed document or publication, and/or the first public use, manufacture, sale, or offer for sale, of the subject matter described and claimed in the Patents-in-Suit.

**RESPONSE TO DOCUMENT REQUEST NO. 21**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation.  Peloton objects to this request as vague and ambiguous with respect to "first description in a printed document or publication, and/or the first public use, manufacture, sale, or offer for sale, of the subject matter described and claimed in the Patents-in-Suit."  Peloton further objects to this Request to the extent it seeks privileged or attorney work product information.  Peloton also objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.  Peloton objects to this Request to the extent it seeks documents that are publicly available.

Subject to and without waiver of the foregoing objections, Peloton will produce responsive, non-privileged, non-protected documents pursuant to an appropriate protective order, to the extent such documents currently exist, are in Peloton's possession, custody, or control, and can be located after a diligent search, relating to the first description in a printed document or publication, and/or the first public use, manufacture, sale, or offer for sale, of the subject matter claimed in the Patents-in-Suit.

**DOCUMENT REQUEST NO. 22**:

All prior art to the claims of the Patents-in-Suit including but not limited to: (i) all prior art cited, identified, discussed or otherwise disclosed in the prosecution of the Peloton Patents including, without limitation, all prior art identified in the Peloton Patents, (ii) prior art provided,

discussed, or mentioned by any person substantially involved in the preparation of the Peloton Patents or the prosecution of the Peloton Patents, and (iii) prior art produced by any party in the Flywheel Litigations.

**RESPONSE TO DOCUMENT REQUEST NO. 22**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation.  Peloton further objects to this Request to the extent it seeks privileged or attorney work product information. Peloton objects to this Request as vague and ambiguous with respect to "prior art provided, discussed, or mentioned by any person substantially involved in the preparation of the Peloton Patents or the prosecution of the Peloton Patents."   Peloton objects to this Request as compound.  Peloton also objects to this Request to the extent that it seeks publicly available information that is equally available to Echelon. Peloton also objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.  Peloton additionally objects to this Request as an improper "piggyback" discovery request.  *See, e.g., Racing Optics v. Aevoe Corp*, No. 2:15-CV-1774-RCJ-VCF, 2016 WL 4059358, at *1 (D. Nev. July 28, 2016) ("'Piggyback' discovery requests are prohibited.  [Plaintiff] must specifically ask for the documents he wants and be able to demonstrate that the information he seeks is relevant to his claims in this case.  The fact that [Defendant] produced certain documents in the [other] cases does not necessarily make them discoverable in this case.") (citation omitted).

Subject to and without waiver of the foregoing objections, Peloton responds as follows: Prior art cited, identified, discussed, or otherwise disclosed in the prosecution of the Peloton Patents, as well as documents related to the *inter partes* review proceedings initiated by Flywheel and Echelon, are publicly available and will not be produced by Peloton.  Prior art produced by any party in the Flywheel Litigations is an improper piggyback request and, as such, will not be produced by Peloton.

Peloton will produce responsive, non-privileged, non-protected documents regarding prior art to the claims of the Patents-in-Suit that were discussed or mentioned by those at Peloton involved in the prosecution of the Patents-in-Suit, pursuant to an appropriate protective order, to the extent such documents currently exist, are in Peloton's possession, custody, or control, and can be located after a diligent search.

**DOCUMENT REQUEST NO. 23**:

All documents describing the features of In-Studio Cycling Classes on or before July 31, 2013 including, without limitations, the features described at Paragraph 19 of the Complaint with respect to the ability of In-Studio Cycling Classes to allow a riser to see his or her performance compared against others while taking a class.

**RESPONSE TO DOCUMENT REQUEST NO. 23**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation. Peloton further objects to this Request to the extent it seeks privileged or attorney work product information. Peloton objects to this request as vague and ambiguous with respect to "features" and "the ability of In-Studio Cycling Classes to allow a riser to see his or her performance compared against others while taking a class." Peloton also objects to this Request to the extent that it seeks publicly available information that is equally available to Echelon. Peloton also objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.

Peloton will produce responsive, non-privileged, non-protected documents describing the features of In-Studio Cycling Classes on or before July 31, 2013, pursuant to an appropriate protective order, to the extent such documents currently exist, are in Peloton's possession, custody, or control, and can be located after a diligent search.

**DOCUMENT REQUEST NO. 24**:

All documents relating to any license of the Peloton Patents or attempt to license the Peloton Patents, whether or not a license was actually entered into.

**RESPONSE TO DOCUMENT REQUEST NO. 24**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation. Peloton further objects to this Request to the extent it seeks privileged or attorney work product information. Peloton also objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.

Subject to and without waiver of the foregoing objections, Peloton will produce relevant, responsive, non-privileged, non-protected documents pursuant to an appropriate protective order, to the extent such documents currently exist, are in Peloton's possession, custody, or control, and can be located after a diligent search.

**DOCUMENT REQUEST NO. 25**:

All documents relating to allegations that Peloton stole, misappropriated or otherwise improperly incorporated into Peloton's Products technology or know how not belonging to Peloton.

**RESPONSE TO DOCUMENT REQUEST NO. 25**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation. Peloton objects to this request as vague and ambiguous with respect to "allegations that Peloton stole, misappropriated or otherwise improperly incorporated into Peloton's Products technology or know how not belonging to Peloton." Peloton also objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request. Peloton objects to this request to the extent it seeks documents that are publicly available.

Subject to and without waiving these objections, Peloton submits the following response: Peloton is willing to meet and confer about the scope of this Request.

**DOCUMENT REQUEST NO. 26**:

All documents Peloton produced, filed, served, or submitted in the Flywheel Litigations.

**RESPONSE TO DOCUMENT REQUEST NO. 26**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation. Peloton also objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request. Peloton objects to this Request to the extent that it seeks publicly available information that is equally available to Echelon. Peloton additionally objects to this Request as an improper "piggyback" discovery request. *See, e.g., Racing Optics v. Aevoe Corp*, No. 2:15-CV-1774-RCJ-VCF, 2016 WL 4059358, at *1 (D. Nev. July 28, 2016) ("'Piggyback' discovery requests are prohibited. [Plaintiff] must specifically ask for the documents he wants and be able to demonstrate that the information he seeks is relevant to his claims in this case. The fact that [Defendant] produced certain documents in the [other] cases does not necessarily make them discoverable in this case.") (citation omitted).

Subject to and without waiver of the foregoing objections, Peloton will not produce documents in response to this improper piggyback Request.

**DOCUMENT REQUEST NO. 27**:

All documents Peloton produced, filed, served, or submitted in any of the Related Trademark Litigations.

**RESPONSE TO DOCUMENT REQUEST NO. 27**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation. Peloton also objects to this Request to the extent it seeks

documents that are duplicative or cumulative of documents Requested and produced in response to another Request.  Peloton also objects to this Request to the extent that it seeks publicly available information that is equally available to Echelon.  Peloton additionally objects to this Request as an improper "piggyback" discovery request.  *See, e.g., Racing Optics v. Aevoe Corp*, No. 2:15-CV-1774-RCJ-VCF, 2016 WL 4059358, at *1 (D. Nev. July 28, 2016) ("'Piggyback' discovery requests are prohibited.  [Plaintiff] must specifically ask for the documents he wants and be able to demonstrate that the information he seeks is relevant to his claims in this case. The fact that [Defendant] produced certain documents in the [other] cases does not necessarily make them discoverable in this case.") (citation omitted).

Subject to and without waiver of the foregoing objections, Peloton will not produce documents in response to this improper piggyback Request.

**DOCUMENT REQUEST NO. 28**:

All documents relating to any attempts by Peloton to enter into a license agreement with any third party relating to the Peloton Marks, whether or not a license was actually entered into, including any license of the Peloton Marks, and any attempt to license the Peloton Marks.

**RESPONSE TO DOCUMENT REQUEST NO. 28**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation.  Peloton further objects to this Request to the extent it seeks privileged or attorney work product information.  Peloton also objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.

Subject to and without waiver of the foregoing objections, Peloton will produce responsive, non-privileged, non-protected documents related to Peloton license agreements relating to the Peloton Marks pursuant to an appropriate protective order, to the extent such

- 24 -

documents currently exist, are in Peloton's possession, custody, or control, and can be located

after a diligent search

**DOCUMENT REQUEST NO. 29**:

All documents relating to any attempts by a third party to enter into a license agreement with Peloton for a mark containing the word "Peloton," whether or not a license was actually entered into, including any license with a third party, any co-existence agreement, any cease and desist letter, and all communications with such third party to license such marks.

**RESPONSE TO DOCUMENT REQUEST NO. 29**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently

tailored to the issues in this litigation. Peloton further objects to this Request to the extent it

seeks privileged or attorney work product information. Peloton also objects to this Request to

the extent it seeks documents that are duplicative or cumulative of documents Requested and

produced in response to another Request.

Subject to and without waiving these objections, Peloton submits the following response:

Peloton is willing to meet and confer about the scope of this Request.

**DOCUMENT REQUEST NO. 30**:

All documents supporting or refuting Peloton's contentions that Echelon and/or Echelon's marks infringe or dilute Peloton's Marks.

**RESPONSE TO DOCUMENT REQUEST NO. 30**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently

tailored to the issues in this litigation. Peloton further objects to this Request to the extent it

seeks privileged or attorney work product information. Peloton also objects to this Request to

the extent it seeks documents that are duplicative or cumulative of documents Requested and

produced in response to another Request.

Subject to and without waiver of the foregoing objections, Peloton will produce

responsive, non-privileged, non-protected documents pursuant to an appropriate protective order,

to the extent such documents currently exist, are in Peloton's possession, custody, or control, and can be located after a diligent search.

**DOCUMENT REQUEST NO. 31**:

All documents that support or contradict Peloton's allegations in the Amended Complaint (D.I. 16 at ¶¶ 76-77, 136) that the Peloton Marks and Peloton's trade dress are "distinctive and famous."

**RESPONSE TO DOCUMENT REQUEST NO. 31**:

Peloton objects to this Request to the extent it seeks privileged or attorney work product information.  Peloton also objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.

Subject to and without waiver of the foregoing objections, Peloton will produce responsive, non-privileged, non-protected documents pursuant to an appropriate protective order, to the extent such documents currently exist, are in Peloton's possession, custody, or control, and can be located after a diligent search.

**DOCUMENT REQUEST NO. 32**:

All documents that support or contradict Peloton's allegations in the Amended Complaint (D.I. 16 at ¶76) that the Peloton Marks are "widely recognized by the consuming public as a designation of source for Peloton Bikes and Peloton fitness products" and are "widely known by the general public," including any market research concerning the Peloton Marks.

**RESPONSE TO DOCUMENT REQUEST NO. 32**:

Peloton objects to this Request as overbroad and unduly burdensome.  Peloton further objects to this Request to the extent it seeks privileged or attorney work product information.  Peloton also objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.

Subject to and without waiver of the foregoing objections, Peloton will produce responsive, non-privileged, non-protected documents pursuant to an appropriate protective order,

to the extent such documents currently exist, are in Peloton's possession, custody, or control, and can be located after a diligent search.

**DOCUMENT REQUEST NO. 33**:

All documents that support or contradict Peloton's allegations in the Amended Complaint (D.I. 16 at ¶77) that Peloton's "trade dress has acquired significant goodwill and secondary meaning among the general public," including any market research concerning Peloton's trade dress.

**RESPONSE TO DOCUMENT REQUEST NO. 33**:

Peloton objects to this Request to the extent it seeks privileged or attorney work product information.  Peloton also objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.

Subject to and without waiver of the foregoing objections, Peloton will produce responsive, non-privileged, non-protected documents pursuant to an appropriate protective order, to the extent such documents currently exist, are in Peloton's possession, custody, or control, and can be located after a diligent search.

**DOCUMENT REQUEST NO. 34**:

All documents supporting or refuting Peloton's contentions that Echelon infringes or dilutes Peloton's trade dress.

**RESPONSE TO DOCUMENT REQUEST NO. 34**:

Peloton objects to this Request to the extent it seeks privileged or attorney work product information.  Peloton also objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.

Subject to and without waiver of the foregoing objections, Peloton will produce responsive, non-privileged, non-protected documents pursuant to an appropriate protective order, to the extent such documents currently exist, are in Peloton's possession, custody, or control, and can be located after a diligent search.

**DOCUMENT REQUEST NO. 35**:

All documents that support or contradict Peloton's allegations in the Amended Complaint (D.I. 16 at ¶76) that "Peloton has devoted significant marketing, advertising, and financial resources and creative energies towards the Peloton Mark and the stylized 'P' Mark," including documents sufficient to identify the amount of "financial resources" used to market the Peloton Marks in the United States on an annual basis from 2012 to the present.

**RESPONSE TO DOCUMENT REQUEST NO. 35**:

Peloton objects to this Request as overbroad and unduly burdensome to the extent it seeks documents from 2012 to the present.  Peloton also objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.

Subject to and without waiving these objections, Peloton submits the following response:

Peloton is willing to meet and confer about the scope of this Request.

**DOCUMENT REQUEST NO. 36**:

Documents sufficient to show the extent the Peloton Marks are used in the United States (and in Delaware), including sales information, information concerning how and when the Marks were used, and any market research and/or surveys.

**RESPONSE TO DOCUMENT REQUEST NO. 36**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation.  Peloton objects to this Request as overbroad and unduly burdensome to the extent it seeks documents "including sales information, information concerning how and when the Marks were used, and any market research and/or surveys."  Peloton objects to this Request as vague and ambiguous with respect to "information concerning how and when the Marks were used."  Peloton also objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.

Subject to and without waiving these objections, Peloton submits the following response:

Peloton is willing to meet and confer about the scope of this Request.

**DOCUMENT REQUEST NO. 37**:

All documents relating to the conception and design of the Peloton Marks, including documents sufficient to identify the individuals who were involved in the conception and design.

**RESPONSE TO DOCUMENT REQUEST NO. 37**:

Peloton objects to this Request to the extent it seeks privileged or attorney work product information.  Peloton further objects to this Request as vague and ambiguous with respect to "relating to the  . . . design[.]"  Peloton also objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.

Subject to and without waiver of the foregoing objections, Peloton will produce responsive, non-privileged, non-protected documents pursuant to an appropriate protective order, to the extent such documents currently exist, are in Peloton's possession, custody, or control, and can be located after a diligent search, relating to the conception and design of the Peloton Marks.

**DOCUMENT REQUEST NO. 38**:

All documents relating to the registration and prosecution of the Peloton Marks, including documents sufficient to identify the individuals who were involved in the registration or prosecution.

**RESPONSE TO DOCUMENT REQUEST NO. 38**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation.  Peloton further objects to this Request to the extent it seeks privileged or attorney work product information.  Peloton also objects to this Request to the extent that it seeks publicly available information that is equally available to Echelon.  Peloton additionally objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.

Subject to and without waiver of the foregoing objections, Peloton will produce responsive, non-privileged, non-protected, non-public documents pursuant to an appropriate protective order, to the extent such documents currently exist, are in Peloton's possession, custody, or control, and can be located after a diligent search, relating to the registration and prosecution of the Peloton Marks.

**DOCUMENT REQUEST NO. 39**:

All documents concerning submissions to a governmental agency (including any State agency) regarding the Peloton Marks, including the prosecution history of the Peloton Marks, the alleged incontestability of the Peloton Marks, and all registrations of the Peloton Marks with any State agency (including Delaware).

**RESPONSE TO DOCUMENT REQUEST NO. 39**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation.  Peloton further objects to this Request to the extent it seeks privileged or attorney work product information.  Peloton also objects to this Request to the extent that it seeks publicly available information that is equally available to Echelon. Peloton also objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.

Subject to and without waiver of the foregoing objections, Peloton will produce responsive, non-privileged, non-protected, non-public documents pursuant to an appropriate protective order, to the extent such documents currently exist, are in Peloton's possession, custody, or control, and can be located after a diligent search, concerning submissions to a governmental agency regarding the Peloton Marks.

**DOCUMENT REQUEST NO. 40**:

Copies of all trademark searches and/or search reports conducted in the process of selecting the Peloton Marks.

**RESPONSE TO DOCUMENT REQUEST NO. 40**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation.  Peloton objects to this Request as vague and ambiguous with respect to "trademark searches and/or search reports conducted in the process of selecting the Peloton Marks."  Peloton further objects to this Request to the extent it seeks privileged or attorney work product information.  Peloton also objects to this Request to the extent that it seeks publicly available information that is equally available to Echelon.  Peloton additionally objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.

Subject to and without waiver of the foregoing objections, Peloton will produce responsive, non-privileged, non-protected, non-public documents pursuant to an appropriate protective order, to the extent such documents currently exist, are in Peloton's possession, custody, or control, and can be located after a diligent search.

**DOCUMENT REQUEST NO. 41**:

All documents that refer or relate to any instances of actual, apparent, or alleged confusion, mistake or deception by any person regarding the affiliation, sponsorship, or relationship between Peloton and Echelon and/or the source of Peloton's products and/or services and Echelon's products and/or services.

**RESPONSE TO DOCUMENT REQUEST NO. 41**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation.  Peloton further objects to this Request to the extent it seeks privileged or attorney work product information. Peloton also objects to this Request to the extent that it seeks publicly available information that is equally available to Echelon.  Peloton additionally objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.

Subject to and without waiver of the foregoing objections, Peloton will produce

responsive, non-privileged, non-protected documents pursuant to an appropriate protective order,

to the extent such documents currently exist, are in Peloton's possession, custody, or control, and

can be located after a diligent search.

**DOCUMENT REQUEST NO. 42**:

All documents relating to your claim for damages for alleged infringement and/or
dilution of the Peloton Marks.

**RESPONSE TO DOCUMENT REQUEST NO. 42**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently

tailored to the issues in this litigation.  Peloton further objects to this Request to the extent it

seeks privileged or attorney work product information.   Peloton also objects to this Request to

the extent it seeks documents that are duplicative or cumulative of documents Requested and

produced in response to another Request.

Subject to and without waiver of the foregoing objections, Peloton will produce

responsive, non-privileged, non-protected documents pursuant to an appropriate protective order,

to the extent such documents currently exist, are in Peloton's possession, custody, or control, and

can be located after a diligent search, related to Peloton's claim for damages for alleged

infringement and/or dilution of the Peloton Marks.

**DOCUMENT REQUEST NO. 43**:

All documents supporting or refuting Peloton's contention that "Echelon unfairly stole
customers from Peloton" (D.I. 16 at ¶86).

**RESPONSE TO DOCUMENT REQUEST NO. 43**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently

tailored to the issues in this litigation.  Peloton further objects to this Request to the extent it

seeks privileged or attorney work product information.   Peloton also objects to this Request to

the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.

Subject to and without waiver of the foregoing objections, Peloton will produce responsive, non-privileged, non-protected documents pursuant to an appropriate protective order, to the extent such documents currently exist, are in Peloton's possession, custody, or control, and can be located after a diligent search.

**DOCUMENT REQUEST NO. 44**:

All documents supporting or refuting Peloton's contentions that Echelon engaged in false advertising or unfair competition.

**RESPONSE TO DOCUMENT REQUEST NO. 44**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation.  Peloton further objects to this Request to the extent it seeks privileged or attorney work product information.   Peloton also objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.

Subject to and without waiver of the foregoing objections, Peloton will produce responsive, non-privileged, non-protected documents pursuant to an appropriate protective order, to the extent such documents currently exist, are in Peloton's possession, custody, or control, and can be located after a diligent search, related to Peloton's contentions that Echelon engaged in false advertising or unfair competition.

**DOCUMENT REQUEST NO. 45**:

All documents supporting or refuting Peloton's allegation that it has lost sales and profits due to Echelon's alleged false advertising and unfair competition.

**RESPONSE TO DOCUMENT REQUEST NO. 45**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation.  Peloton further objects to this Request to the extent it seeks privileged or attorney work product information.   Peloton also objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.

Subject to and without waiver of the foregoing objections, Peloton will produce responsive, non-privileged, non-protected documents pursuant to an appropriate protective order, to the extent such documents currently exist, are in Peloton's possession, custody, or control, and can be located after a diligent search.

**DOCUMENT REQUEST NO. 46**:

All documents relating to your claim for damages for alleged false advertising and unfair competition.

**RESPONSE TO DOCUMENT REQUEST NO. 46**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation.  Peloton further objects to this Request to the extent it seeks privileged or attorney work product information.   Peloton also objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.

Subject to and without waiver of the foregoing objections, Peloton will produce responsive, non-privileged, non-protected documents pursuant to an appropriate protective order, to the extent such documents currently exist, are in Peloton's possession, custody, or control, and can be located after a diligent search, related to Peloton's claim for damages for alleged false advertising and unfair competition.

- 34 -

**DOCUMENT REQUEST NO. 47**:

All documents concerning the conception and implementation of Peloton's financing program for $97 a month for 39 months (*see* D.I. 31, counterclaims at ¶¶ 38-42), including documents describing the reasons for including the bike price and content subscription in the advertised $97 monthly price, and documents sufficient to identify the individuals who were involved in the conception and implementation of this financing program.

**RESPONSE TO DOCUMENT REQUEST NO. 47**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently

tailored to the issues in this litigation.  Peloton objects to this Request as compound.  Peloton

further objects to this Request to the extent it seeks privileged or attorney work product

information.   Peloton also objects to this Request to the extent that it seeks publicly available

information that is equally available to Echelon.  Peloton also objects to this Request to the

extent it seeks documents that are duplicative or cumulative of documents Requested and

produced in response to another Request.

 Subject to and without waiver of the foregoing objections, Peloton will produce

responsive, non-privileged, non-protected documents pursuant to an appropriate protective order,

to the extent such documents currently exist, are in Peloton's possession, custody, or control, and

can be located after a diligent search.

**DOCUMENT REQUEST NO. 48**:

All documents concerning Peloton's announcement in October 2017 that it was "offering consumers a way to purchase the Peloton bike, including access to unlimited live and on-demand classes for an entire household, for the starting price of $97 a month for 39 months," *see, e.g.,* https://www.prnewswire.com/news-releases/awardwinning-peloton-bike-now-available-for-under-100-a-month-for-the-first-time-300542772.html, including documents sufficient to identify the individuals who were involved in the announcement.

**RESPONSE TO DOCUMENT REQUEST NO. 48**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently

tailored to the issues in this litigation.  Peloton objects to this Request as vague and ambiguous

with respect to "concerning."  Peloton further objects to this Request to the extent it seeks privileged or attorney work product information.  Peloton also objects to this Request to the extent that it seeks publicly available information that is equally available to Echelon.  Peloton additionally objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.

Subject to and without waiver of the foregoing objections, Peloton will produce responsive, non-privileged, non-protected documents pursuant to an appropriate protective order, to the extent such documents currently exist, are in Peloton's possession, custody, or control, and can be located after a diligent search.

**DOCUMENT REQUEST NO. 49**:

All documents concerning Peloton's marketing of its financing program for $97 a month for 39 months (*see* D.I. 31, counterclaims at ¶¶ 38-42), including marketing plans, market research, advertisements, market penetration of the advertising, and amounts spent on the advertising.

**RESPONSE TO DOCUMENT REQUEST NO. 49**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation.  Peloton also objects to this Request as overbroad and unduly burdensome to the extent it seeks amounts spent on advertising.  Peloton objects to this Request as vague and ambiguous with respect to "concerning."  Peloton further objects to this Request to the extent it seeks privileged or attorney work product information.  Peloton also objects to this Request to the extent that it seeks publicly available information that is equally available to Echelon.  Peloton additionally objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.

Subject to and without waiving these objections, Peloton submits the following response:

- 36 -

Peloton is willing to meet and confer about the scope of this Request.

**DOCUMENT REQUEST NO. 50**:

All documents concerning the conception and implementation of Peloton's financing program for $58 a month for 39 months (*see* D.I. 31, counterclaims at ¶¶ 45-49), including documents describing the reasons for including the bike price but not the content subscription in the advertised $58 monthly price, and documents sufficient to identify the individuals who were involved in the conception and implementation of this financing program.

**RESPONSE TO DOCUMENT REQUEST NO. 50**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently

tailored to the issues in this litigation.  Peloton objects to this Request as vague and ambiguous

with respect to "concerning."  Peloton further objects to this Request to the extent it seeks

privileged or attorney work product information.   Peloton also objects to this Request to the

extent that it seeks publicly available information that is equally available to Echelon.  Peloton

also objects to this Request to the extent it seeks documents that are duplicative or cumulative of

documents Requested and produced in response to another Request.

Subject to and without waiver of the foregoing objections, Peloton will produce

responsive, non-privileged, non-protected documents pursuant to an appropriate protective order,

to the extent such documents currently exist, are in Peloton's possession, custody, or control, and

can be located after a diligent search.

**DOCUMENT REQUEST NO. 51**:

All documents concerning the impact Echelon had on Peloton's marketing, including documents describing changes Peloton made to its marketing based on competition from Echelon.

**RESPONSE TO DOCUMENT REQUEST NO. 51**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently

tailored to the issues in this litigation.  Peloton further objects to this Request to the extent it

seeks privileged or attorney work product information.   Peloton also objects to this Request to

the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.

Subject to and without waiver of the foregoing objections, Peloton will produce responsive, non-privileged, non-protected documents pursuant to an appropriate protective order, to the extent such documents currently exist, are in Peloton's possession, custody, or control, and can be located after a diligent search.

**DOCUMENT REQUEST NO. 52**:

All documents concerning Peloton's marketing of its financing program for $58 a month for 39 months (*see* D.I. 31, counterclaims at ¶¶ 45-49), including marketing plans, market research, advertisements, market penetration of the advertising, and amounts spent on the advertising.

**RESPONSE TO DOCUMENT REQUEST NO. 52**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation. Peloton also objects to this Request as overbroad and unduly burdensome to the extent it seeks amounts spent on advertising. Peloton objects to this Request as vague and ambiguous with respect to "concerning." Peloton further objects to this Request to the extent it seeks privileged or attorney work product information. Peloton also objects to this Request to the extent that it seeks publicly available information that is equally available to Echelon. Peloton additionally objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.

Subject to and without waiver of the foregoing objections, Peloton will produce responsive, non-privileged, non-protected documents pursuant to an appropriate protective order, to the extent such documents currently exist, are in Peloton's possession, custody, or control, and can be located after a diligent search.

**DOCUMENT REQUEST NO. 53**:

Documents sufficient to show the sales Peloton made and the customers Peloton acquired from marketing its financing program for $58 a month for 39 months (*see* D.I. 31, counterclaims at ¶¶ 45-49).

**RESPONSE TO DOCUMENT REQUEST NO. 53**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation.  Peloton also objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.

Subject to and without waiver of the foregoing objections, Peloton will produce relevant, responsive, non-privileged, non-protected documents related to the customers Peloton acquired from marketing its financing program for $58 a month for 39 months pursuant to an appropriate protective order, to the extent such documents currently exist, are in Peloton's possession, custody, or control, can be located after a diligent search, and are not already in Echelon's possession, custody, and control.

**DOCUMENT REQUEST NO. 54**:

All documents concerning the conception, design, and marketing of each Peloton advertisement identified in Echelon's counterclaims (D.I. 31, counterclaims at ¶¶ 39, 40, 41, 42, 45, and 46-52), including documents sufficient to identify all individuals involved in the conception, design and marketing.

**RESPONSE TO DOCUMENT REQUEST NO. 54**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation.  Peloton objects to this Request as vague and ambiguous with respect to "conception" and "marketing."  Peloton also objects to this Request to the extent that it seeks publicly available information that is equally available to Echelon.  Peloton

- 39 -

additionally objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.

Subject to and without waiver of the foregoing objections, Peloton will produce responsive, non-privileged, non-protected documents pursuant to an appropriate protective order, to the extent such documents currently exist, are in Peloton's possession, custody, or control, and can be located after a diligent search.

**DOCUMENT REQUEST NO. 55**:

All documents concerning the video ad "Anyone Who Wants It" (*see* D.I. 31, counterclaims at ¶¶ 46-52), including all versions of the advertisement, all video recorded in making the advertisement, all mock ups, all transcripts and draft transcripts of the advertisement, and all communications concerning the advertisement.

**RESPONSE TO DOCUMENT REQUEST NO. 55**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation.  Peloton objects to this Request as overbroad and unduly burdensome to the extent it seeks "mock ups" and "draft transcripts."  Peloton also objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.

Subject to and without waiving these objections, Peloton submits the following response: Peloton is willing to meet and confer about the scope of this Request.

**DOCUMENT REQUEST NO. 56**:

All documents concerning customer complaints relating to Peloton's marketing of its financing program for $58 a month for 39 months (*see* D.I. 31, counterclaims at ¶¶ 45-49).

**RESPONSE TO DOCUMENT REQUEST NO. 56**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation.  Peloton also objects to this Request to the extent it seeks

documents that are duplicative or cumulative of documents Requested and produced in response to another Request.

Subject to and without waiver of the foregoing objections, Peloton will produce responsive, non-privileged, non-protected documents pursuant to an appropriate protective order, to the extent such documents currently exist, are in Peloton's possession, custody, or control, and can be located after a diligent search.

**DOCUMENT REQUEST NO. 57**:

All documents concerning complaints from customers or consumers that did not realize they had to pay $39 a month for Peloton's content subscription and/or did not realize that Peloton's content subscription was separate from the bike price.

**RESPONSE TO DOCUMENT REQUEST NO. 57**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation.  Peloton also objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.

Subject to and without waiver of the foregoing objections, Peloton will produce responsive, non-privileged, non-protected documents pursuant to an appropriate protective order, to the extent such documents currently exist, are in Peloton's possession, custody, or control, and can be located after a diligent search.

**DOCUMENT REQUEST NO. 58**:

All documents concerning John Foley's interview with Time Magazine (https://time.com/5839552/peloton-ceo-john-foley/), including transcripts and recordings of the interview, all communications concerning the interview and article, and any documents evidencing edits made to that interview before publication.

**RESPONSE TO DOCUMENT REQUEST NO. 58**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation.  Peloton objects to this Request as overbroad and unduly burdensome to the extent it seeks "transcripts and recordings" as well as "all communications concerning" the interview.  Peloton objects to this Request to the extent it seeks privileged documents.  Peloton additionally objects to this Request to the extent that it seeks publicly available information that is equally available to Echelon.  Peloton also objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request.

Subject to and without waiving these objections, Peloton submits the following response: Peloton is willing to meet and confer about the scope of this Request.

**DOCUMENT REQUEST NO. 59**:

All documents concerning representations Peloton made to investors from January 1, 2018 to the present about the average monthly cost of its products.

**RESPONSE TO DOCUMENT REQUEST NO. 59**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently tailored to the issues in this litigation.  Peloton objects to this Request as vague and ambiguous with respect to "the average monthly cost of its products."  Peloton objects to this Request to the extent it seeks privileged documents.  Peloton also objects to this Request to the extent it seeks documents that are duplicative or cumulative of documents Requested and produced in response to another Request. Peloton objects to this Request to the extent it seeks documents that are publicly available.

Subject to and without waiving these objections, Peloton submits the following response: Peloton is willing to meet and confer about the scope of this Request.

**DOCUMENT REQUEST NO. 60**:

All documents concerning the investor presentation found at
https://investor.onepeloton.com/static-files/701c7555-55e3-4f82-8b70-b58463ed44aa, including
documents sufficient to identify all individuals involved in conceiving and designing that
presentation.

**RESPONSE TO DOCUMENT REQUEST NO. 60**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently

tailored to the issues in this litigation as the investor presentation covers several irrelevant topics.

Peloton objects to this Request to the extent it seeks privileged documents.  Peloton also objects

to this Request to the extent it seeks documents that are duplicative or cumulative of documents

Requested and produced in response to another Request.

Subject to and without waiver of the foregoing objections, Peloton is willing to meet and

confer with Echelon regarding the scope of this Request.

**DOCUMENT REQUEST NO. 61**:

All documents relating to allegations that Peloton marketed and used music without
paying for the proper licenses.

**RESPONSE TO DOCUMENT REQUEST NO. 61**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently

tailored to the issues in this litigation.  Peloton objects to this Request to the extent it seeks

privileged documents.  Peloton objects to this request as seeking irrelevant information, as

Echelon has not alleged any claim "relating to allegations that Peloton marketed and used music

without paying for the proper licenses."  Peloton objects to this Request to the extent it seeks

documents that are publicly available.

Subject to and without waiving these objections, Peloton submits the following response:

Peloton is willing to meet and confer about the scope of this Request.

**DOCUMENT REQUEST NO. 62**:

All documents concerning price setting for Peloton's bikes, including the reasons for setting the price at $2,245 and any other price points considered or used.

**RESPONSE TO DOCUMENT REQUEST NO. 62**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently

tailored to the issues in this litigation.  Peloton objects to this Request as vague as to "price

setting."  Peloton objects to this Request to the extent it seeks privileged documents.  Peloton

also objects to this Request to the extent it seeks documents that are duplicative or cumulative of

documents Requested and produced in response to another Request.

Subject to and without waiving these objections, Peloton submits the following response:

Peloton is willing to meet and confer about the scope of this Request.

**DOCUMENT REQUEST NO. 63**:

Documents relating to Peloton's document retention and/or document destruction policies or practices, including any policies concerning the retention or destruction of email or voice mail messages, and any efforts by Peloton to preserve documents or things relating to the subject matter of the Litigation.

**RESPONSE TO DOCUMENT REQUEST NO. 63**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently

tailored to the issues in this litigation.  Peloton also objects to this Request to the extent it seeks

privileged or protected documents.

Subject to and without waiver of the foregoing objections, Peloton will produce

responsive, non-privileged, non-protected documents pursuant to an appropriate protective order,

to the extent such documents currently exist, are in Peloton's possession, custody, or control, and

can be located after a diligent search.

**DOCUMENT REQUEST NO. 64**:

Organizational charts and documents sufficient to show Peloton's organizational structure, including the identity of Peloton's officers and managers and the number of Peloton employees.

**RESPONSE TO DOCUMENT REQUEST NO. 64**:

Subject to and without waiver of the foregoing objections, Peloton will produce

responsive, non-privileged, non-protected documents pursuant to an appropriate protective order,

to the extent such documents currently exist, are in Peloton's possession, custody, or control, and

can be located after a diligent search.

**DOCUMENT REQUEST NO. 65**:

All documents and things identified in any Initial Disclosure made by Peloton pursuant to Federal Rule of Civil Procedure 26(a)(1) or the Delaware Default Standard for Discovery, Including Discovery of Electronically Stored Information ("ESI").

**RESPONSE TO DOCUMENT REQUEST NO. 65**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently

tailored to the issues in this litigation.  Peloton also objects to this Request to the extent it seeks

documents that are duplicative or cumulative of documents Requested and produced in response

to another Request.

Subject to and without waiving these objections, Peloton submits the following response:

Peloton is willing to meet and confer about the scope of this Request.

**DOCUMENT REQUEST NO. 66**:

All documents and things referred to or relied upon by Peloton in responding to any Interrogatories served by Echelon.

**RESPONSE TO DOCUMENT REQUEST NO. 66**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently

tailored to the issues in this litigation.

Subject to and without waiver of the foregoing objections, Peloton will produce

responsive, non-privileged, non-protected documents pursuant to an appropriate protective order,

to the extent such documents currently exist, are in Peloton's possession, custody, or control, and

can be located after a diligent search.

**DOCUMENT REQUEST NO. 67**:

All documents and things upon which Peloton considered, relied on, or that in any way
formed the basis for the Complaint and the Amended Complaint.

**RESPONSE TO DOCUMENT REQUEST NO. 67**:

Peloton objects to this Request as overbroad, unduly burdensome, and not sufficiently

tailored to the issues in this litigation.  Peloton objects to this Request to the extent it seeks

privileged documents.  Peloton also objects to this Request to the extent that it seeks publicly

available information that is equally available to Echelon.  Peloton also objects to this Request to

the extent it seeks documents that are duplicative or cumulative of documents Requested and

produced in response to another Request.

Subject to and without waiver of the foregoing objections, Peloton will produce

responsive, non-privileged, non-protected documents pursuant to an appropriate protective order,

to the extent such documents currently exist, are in Peloton's possession, custody, or control, and

can be located after a diligent search.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

Michael J. Flynn (#5333)
Anthony D. Raucci (#5948)
Andrew M. Moshos (#6685)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
mflynn@mnat.com
araucci@mnat.com
amoshos@mnat.com

OF COUNSEL:

Steven N. Feldman
Christina V. Rayburn
Karen Younkins
Kevin X. Wang
Maxwell K. Coll
HUESTON HENNIGAN LLP
523 West Sixth Street, Suite 400
Los Angeles, CA 90014
(213) 788-7272

September 8, 2020

*Attorneys for Plaintiff Peloton Interactive, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2020, copies of the foregoing were caused to be

served upon the following in the manner indicated:

Benjamin J. Schladweiler, Esquire               *VIA ELECTRONIC MAIL*
GREENBERG TRAURIG, LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
*Attorneys for Defendant*

Douglas R. Weider, Esquire                      *VIA ELECTRONIC MAIL*
James Ryerson, Esquire
GREENBERG TRAURIG, LLP
500 Campus Drive, Suite 400
Florham Park, NJ 07932
*Attorneys for Defendant*


                                    */s/ Michael J. Flynn*
                                    _____
                                    Michael J. Flynn (#5333)

# EXHIBIT C



**IN THE HIGH COURT OF JUSTICE**
**BUSINESS AND PROPERTY COURTS**
**OF ENGLAND AND WALES**
**INTELLECTUAL PROPERTY LIST (ChD)**

IL-2020-000074

**MASTER PESTER**
**7 DECEMBER 2021**

**B E T W E E N:**

(1)  **PELOTON INTERACTIVE, INC.**

(2)  **PELOTON INTERACTIVE UK LIMITED**

(3)  **PELOTON INTERACTIVE DEUTSCHLAND GmbH**

<u>Claimants</u>

**-and-**

(1)  **ECHELON FITNESS LLC**

(2)  **ECHELON FITNESS UK LIMITED**

(3)  **VIATEK CONSUMER PRODUCTS GROUP, INC.**

(4)  **ECHELON FITNESS MULTIMEDIA LLC**

<u>Defendants</u>

———————————————

**CONSENT ORDER**

———————————————

**UPON** the Claimants and the Defendants by their legal representatives having in writing agreed to the terms of this Order.

**BY CONSENT IT IS ORDERED THAT:**

1.    The date for the parties to provide Extended Disclosure is extended until 4:30pm on 20 May 2022.

2.    The date for the parties to serve witness evidence-in-chief and any notices to rely on hearsay evidence is extended until 4pm on 23 September 2022.

1

3.  The date for the parties to serve witness evidence-in-reply and any notices to rely on hearsay evidence in reply is extended until 4pm on 25 November 2022.

The Claimants shall serve this order on the Defendants.

**Service of the order**

The court has provided a sealed copy of this order to the serving party: Fieldfisher LLP, Riverbank House, 2 Swan Lane, London, EC4R 3TT (Ref: NPR/NR5/2004812.00007), solicitors for the Claimants.

# EXHIBIT D

## I.      COMPARATIVE ADS

Any ads comparing Peloton's and Echelon's respective bikes, services, prices, contractual terms, etc.

### A.      <u>Example 1</u>



**B.**   **Example 2**





\

## II.      PRICING ADS

<mark>Any ads advertising a specific price for Echelon's bikes and memberships</mark>, as well as associated terms (e.g., risk free).

### A.      **Example 1**



### B.      **Example 2**



C.   **Example 3**





*0% APR for 12, 24 & 39 Months with Equal Payments: Available on qualifying purchases of select products charged to a Citizens Pay Line of Credit. Click Here for important information about Rates and Fees and the Citizens Pay Line of Credit Agreement. Citizens Pay Line of Credit Account offered by Citizens Bank, N.A. Minimum Purchase: $300.00.

D.   **Example 4**



E.    **Example 5**



F.    **Example 6**

ECHELON SXM SCRIPT
Live 3/25

Working from home?  Now you and your family can also workout from home…with Echelon!

Choose from Echelon's lineup of connected fitness bikes, Reflect mirrors and rowing machine and the whole family can get a fun and challenging workout from the comfort and safety of home.

And getting fit with Echelon is even better than the gym. In as little as twenty-minutes, our world-class instructors will motivate you with daily live and on-demand classes that are always available when you need them.

Unlike our competitors, Echelon is affordable for everyone! Our E-X ONE connected fitness bike is less than half the price of a Peloton. And with Echelon Financing, you can try us out risk-free for 30 days, zero down and as little as $46 per month. Same-day shipping is also available!

So now you don't have to pay-a-ton for a Peloton!

Join Echelon's supportive online community of people losing weight and getting into the best shape of their lives!

Go to Echelon Fit dot com slash SHOW  That's "E" "C" "H" "E" "L" "O" "N"  FIT dot com slash SHOW.

G.    **Example 7**





### H.    <u>Example 8</u>



https://www.bing.com/videos/search?q=echelon+ads&docid=608017522146820509&mid=35CBC04DF0205DF9929735CBC04DF0205DF99297&view=detail&FORM=VIRE

I.   **Example 9**





Purchasing your Echelon Bike is now easier than ever with no money down and 30 days *risk free*.

**CONNECT EX-5S**

$0
**NO MONEY DOWN**

$93
**FOR 24 MONTHS**

PRE-QUALIFY TODAY

**Quick and Easy**
Complete a quick application that won't affect your credit score.

**No Hidden Fees**
Know up front what you'll owe, with no surprise costs.

ECHELONFIT.COM

J.    **Example 10**



**CONNECTED FITNESS AT AN AFFORDABLE PRICE**

**Ride Now. Pay Later.**

Purchasing your Echelon Bike is now easier than ever with no money down and 30 days risk-free.

$0
NO MONEY DOWN

*AS LOW AS
$56
FOR 24 MONTHS
Membership is Included!

ECHELON    6011 Century Oaks Drive
Chattanooga, TN 37416

*Rates are between 0-30% APR. Subject to credit check and approval. Down payment may be required. For purchases under $100, limited payment options are available. Estimated payment amount excludes taxes and shipping fees. Affirm loans are made by Cross River Bank, a New Jersey State Chartered Commercial Bank. Member FDIC. See www.affirm.com/faqs for details. 15% Off Offer: May not be combined with other offers. Discount codes may not be reused and valid one time only. Not transferable. Discount does not apply to taxes, shipping and handling, or other fees. Discount promo code must be entered into the applicable field at the time of the purchase for the discount to apply. Offer valid while supplies last. Not valid outside of the United States. Void where prohibited. No cash value. Offer expires 05/31/2020 11:59 pm ET. Echelon reserves the right to change or cancel this promotion at any time for any reason.

FIRST STD.
U.S. POSTAGE
PAID
CHICAGO, IL
PERMIT NO. 592

**LIMITED TIME OFFER**
**15% OFF**
SELECT MODELS

Use code: **GETFIT003**
ECHELONFIT.COM

**ECHELON FIT™ APP**
AVAILABLE FOR ANY IOS/ANDROID DEVICE

The Echelon Fit™ app provides live and on-demand classes in the comfort and convenience of your own home.

<COMBIN>
<ADDR1>
<ADDR2>
<CITY>, <STATE> <ZIP10>

ECH-PC3-2/20



## III.     AMAZON PRIME BIKE

### A.     <u>Example 1</u>



**PRESS RELEASE: Paid content from PR Newswire**

# Echelon Launches Amazon-Exclusive Connected Bike

September 21, 2020

The Echelon Prime Smart Connect Fitness Bike for Amazon

*Press release content from PR Newswire. The AP news staff was not involved in its creation.*

CHATTANOOGA, Tenn., Sept. 21, 2020 /PRNewswire/ -- Echelon's new EX-Prime Smart Connect Bike—also known as the Prime Bike—officially hit the online market as Amazon's first-ever connected fitness product. Created with quality,

**B.**   **Example 2**



# EXHIBIT E

**Ryerson, James (OfCnsl-NJ-IP-TECH)**

| | |
|---|---|
| **From:** | Patrick.Justman@lw.com |
| **Sent:** | Tuesday, January 11, 2022 3:27 PM |
| **To:** | Ryerson, James (OfCnsl-NJ-IP-TECH); Schladweiler, Benjamin (Shld-DEL-IP-Tech); Jay, David (Shld-NJ-LT); Weider, Douglas R. (Shld-NJ-IP-Tech); Blofield, Tiffany A. (Shld-MSP-IP-Tech) |
| **Cc:** | PTON.ECHELON.LWTEAM@lw.com; mflynn@morrisnichols.com |
| **Subject:** | RE: Peloton/Echelon - Outstanding Discovery Issues |

Jamie – We have not conceded that point, but appreciate you getting back to us here.

Best,
Pat

**From:** ryersonj@gtlaw.com <ryersonj@gtlaw.com>
**Sent:** Tuesday, January 11, 2022 11:15 AM
**To:** Justman, Patrick (SD) <Patrick.Justman@lw.com>; schladweilerb@gtlaw.com; JayD@gtlaw.com; WeiderD@gtlaw.com; blofieldt@gtlaw.com
**Cc:** #C-M PTON - ECHELON - LW TEAM <PTON.ECHELON.LWTEAM@lw.com>; mflynn@morrisnichols.com
**Subject:** RE: Peloton/Echelon - Outstanding Discovery Issues

Pat,

We appreciate Peloton's concession that the GT+ bike and new Echelon logo are not, as Peloton originally argued, probative of willful infringement with respect to the old bikes / logo.  With respect to Peloton's new theory, we disagree that Echelon's functionality defense justifies the discovery Peloton has requested.

Best regards,
Jamie

**James Ryerson**
Of Counsel

Greenberg Traurig, LLP
500 Campus Drive, Suite 400 | Florham Park, NJ 07932-0677
T +1 973.443.3246 | F +1 973.295.1346 | C +1 732.567.6288
ryersonj@gtlaw.com | www.gtlaw.com | View GT Biography

**GT GreenbergTraurig**

**From:** Patrick.Justman@lw.com <Patrick.Justman@lw.com>
**Sent:** Thursday, January 6, 2022 2:46 PM
**To:** Ryerson, James (OfCnsl-NJ-IP-TECH) <ryersonj@gtlaw.com>; Schladweiler, Benjamin (Shld-DEL-IP-Tech) <schladweilerb@gtlaw.com>; Jay, David (Shld-NJ-LT) <JayD@gtlaw.com>; Weider, Douglas R. (Shld-NJ-IP-Tech) <WeiderD@gtlaw.com>; Blofield, Tiffany A. (Shld-MSP-IP-Tech) <blofieldt@gtlaw.com>
**Cc:** PTON.ECHELON.LWTEAM@lw.com; mflynn@morrisnichols.com
**Subject:** RE: Peloton/Echelon - Outstanding Discovery Issues

Jamie,

The requested evidence related to the new trade dress embodied in the GT+ bike, including the different color and font used for the new Echelon logo, are directly relevant to establishing that (1) Peloton's claimed trade dress is nonfunctional and (2) prohibiting Echelon from using Peloton's trade dress would not put Echelon at a competitive disadvantage.

More specifically, evidence related to the design process for the GT+ bike will likely show that there are numerous alternative designs available to Echelon that would not have infringed Peloton's trade dress rights.  Similarly, the redesign process for the logo and the selection of different colors/fonts for this logo (as shown below) will likely show the same (i.e., that there are numerous colors other than red that Echelon could have used and prohibiting Echelon from using red in its logo would not put it at a competitive disadvantage).  This evidence will therefore establish that Peloton's trade dress is nonfunctional.  Relatedly, the evidence will also rebut Echelon's affirmative defense of functionality.  *See* Echelon's 20th Aff. Defense ("Peloton's bike . . . [is] functional, and thus [] not protectable as trade dress"); *e.g., Ethicon Endo-Surgery, Inc. v. Covidien, Inc.,* 796 F.3d 1312, 1330 (Fed. Cir. 2015) ("[A]n inquiry into whether a claimed design is primarily functional should begin with an inquiry into the existence of alternative designs."); *Honeywell Int'l Inc. v. ICM Controls Corp.*, No. 11-CV-569 (JNE/TNL), 2013 WL 12139845, at *6 (D. Minn. Sept. 24, 2013) ("[t]he existence of alternative designs for the accused products is relevant to Honeywell's trade-dress-infringement claim. ICM's alternative designs are reasonably calculated to lead to the discovery of admissible evidence supporting Honeywell's contention that the trade dress of its products is nonfunctional.").



Further, Echelon's reliance on FRE 407 is misplaced here as it would not necessarily be a bar to the production of this evidence in the initial instance.  Whether some or all of this evidence is implicated by FRE 407 and ultimately unpresentable at trial is an issue to be addressed closer to trial, especially as the evidence has independent evidentiary value (as explained above).  Relatedly, FRE 407 likely does not even apply here as we are seeking evidence concerning a product/logo redesign in a trade dress dispute, not evidence of a product redesign after a consumer has been harmed by a defective product.  *See GSI Grp., Inc. v. Sukup Mfg.*, Co., 641 F. Supp. 2d 732 (C.D. Ill. 2008) ("Rule 407 applies to remedial changes made after an injury or harm allegedly caused by an event…. An event is a traumatic event, such as an accident, that causes injury… GSI alleges an injury caused by Sukup's advertising and related business practices. Such an injury is not caused by an event, so revisions to Sukup's advertising materials would not be covered by Rule 407").

Therefore, please confirm by no later than **5 pm ET on Monday, January 10** that Echelon will produce the requested materials.  If Echelon will do so and further agrees to produce the materials by January 18, we can advise the Court that these issues no longer need to be addressed at the January 24 hearing.

Best,
Pat

**Patrick C. Justman**

**LATHAM & WATKINS LLP**
12670 High Bluff Drive | San Diego, CA 92130
T: +1.858.523.5448 | patrick.justman@lw.com | *he/him/his*

**From:** ryersonj@gtlaw.com <ryersonj@gtlaw.com>
**Sent:** Wednesday, December 15, 2021 9:13 AM
**To:** Justman, Patrick (SD) <Patrick.Justman@lw.com>; schladweilerb@gtlaw.com; JayD@gtlaw.com; WeiderD@gtlaw.com; blofieldt@gtlaw.com
**Cc:** #C-M PTON - ECHELON - LW TEAM <PTON.ECHELON.LWTEAM@lw.com>; mflynn@morrisnichols.com
**Subject:** RE: Peloton/Echelon - Outstanding Discovery Issues

If Peloton provides any authority showing that a design change can be used to demonstrate culpability or willfulness with respect to the old design, Echelon would be happy to consider it.  Otherwise, assuming we have accurately characterized Peloton's position, the parties appear to be at an impasse.

**James Ryerson**
Of Counsel

Greenberg Traurig, LLP
500 Campus Drive, Suite 400 | Florham Park, NJ 07932-0677
T +1 973.443.3246  |  F +1 973.295.1346  |  C +1 732.567.6288
ryersonj@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

**From:** Patrick.Justman@lw.com <Patrick.Justman@lw.com>
**Sent:** Tuesday, December 14, 2021 8:14 PM
**To:** Ryerson, James (OfCnsl-NJ-IP-TECH) <ryersonj@gtlaw.com>; Schladweiler, Benjamin (Shld-DEL-IP-Tech) <schladweilerb@gtlaw.com>; Jay, David (Shld-NJ-LT) <JayD@gtlaw.com>; Weider, Douglas R. (Shld-NJ-IP-Tech) <WeiderD@gtlaw.com>; Blofield, Tiffany A. (Shld-MSP-IP-Tech) <blofieldt@gtlaw.com>
**Cc:** PTON.ECHELON.LWTEAM@lw.com; mflynn@morrisnichols.com
**Subject:** RE: Peloton/Echelon - Outstanding Discovery Issues

Hi Jamie – We'll respond in short order regarding all of the below issues, but I just wanted to briefly confirm that an impasse has been reached on Items 5 and 7(a).  That appears to be what your below message intends, but I wanted to confirm to be certain.  Thanks!

---

**From:** ryersonj@gtlaw.com <ryersonj@gtlaw.com>
**Sent:** Tuesday, December 14, 2021 1:39 PM
**To:** Justman, Patrick (SD) <Patrick.Justman@lw.com>; schladweilerb@gtlaw.com; JayD@gtlaw.com; WeiderD@gtlaw.com; blofieldt@gtlaw.com
**Cc:** #C-M PTON - ECHELON - LW TEAM <PTON.ECHELON.LWTEAM@lw.com>; mflynn@morrisnichols.com
**Subject:** RE: Peloton/Echelon - Outstanding Discovery Issues

Pat,

For items 5 and 7(a) below, Echelon maintains that the documents sought by Peloton concerning the purported "GT+ Trade Dress" and new Echelon logo are irrelevant (in addition to other objections Echelon raised, none of which are being waived).  During our meet-and-confer, Peloton argued that the launch of the GT+ Trade Dress and new Echelon logo demonstrate Echelon's willful infringement with respect to the purported trade dress of the EX-3 bike and the old Echelon logo.  But not only do Echelon's new logo and GT+ bike have no bearing on infringement of the old logo and EX-3 bike, any attempt to introduce the design changes to demonstrate culpability would clearly violate Federal Rule of Evidence 407.

For item 4, Echelon identifies Lou Lentine and Bill Feroe as the most knowledgeable witnesses concerning the GT+ Bike.  Given Mr. Feroe has already been deposed, any further deposition of Mr. Feroe would need to be limited in scope to the GT+ Bike.

For item 7(b), Peloton's demand for "all documents produced in the UK action that are relevant to the claims and defenses in this litigation" is not agreeable, as is Peloton's demand for unilateral discovery into personal devices.  As Peloton's "compromise" implicitly recognizes, the claims and defenses in this litigation are not the same as the UK litigation, and, for Echelon to produce documents from the UK action "relevant to the claims and defenses in this

litigation," Echelon would have to review each document produced in the UK litigation to ascertain its relevance to this litigation. Peloton served 319 document requests in this litigation, and Echelon has produced tens of thousands of documents. Peloton's requests for additional discovery from the UK action is clearly an effort to circumvent the limitations on discovery agreed to or otherwise imposed in this case. Peloton's proposal to modify the protective order does not ameliorate Echelon's concerns, much as it did not ameliorate Peloton's concerns when Peloton refused to produce all of the documents it produced in the Flywheel litigation (which involved infringement of the same or related patents asserted here) or the Move Press litigation (which involved the same PELOTON trademark asserted here).

With respect to item 8(b)(i), as Peloton is aware (notwithstanding its efforts to feign otherwise), documents concerning due diligence with respect to the Flywheel settlement agreement bears on damages, Peloton's allegations that Flywheel admitted to copying its patented products, and Echelon's antitrust counterclaims. The due diligence Peloton conducted (or lack thereof) with respect to the Flywheel-at-Home business is relevant to the value (or lack thereof) it placed upon acquisition of that business as compared to the value of the patent infringement claims it agreed to dismiss and the dismissal of the IPR proceedings Peloton secured. Peloton should immediately produce these due diligence materials. Far from being "new", Echelon requested these well over a year ago (see RFPs 94, 97, and 108-111). Peloton has no basis to delay further.

With respect to item 8(b)(ii), as we explained during the meet-and-confer, Echelon's demand for documents related to the most recent reduction of price for the Peloton Bike stems from Peloton's assertion that it intends to pursue a price erosion damages theory on its patent claims. Given your note below, and the fact that Peloton has not produced any documents concerning the most recent reduction of price for the Peloton Bike (to $1,495), we assume Peloton does not intend to rely upon the price reduction to support its price erosion theory. Please confirm by COB tomorrow that is the case.

Best regard,
Jamie

**James Ryerson**
Of Counsel

Greenberg Traurig, LLP
500 Campus Drive, Suite 400 | Florham Park, NJ 07932-0677
T +1 973.443.3246 | F +1 973.295.1346 | C +1 732.567.6288
ryersonj@gtlaw.com | www.gtlaw.com | View GT Biography



---

**From:** Patrick.Justman@lw.com <Patrick.Justman@lw.com>
**Sent:** Friday, December 10, 2021 2:02 PM
**To:** Schladweiler, Benjamin (Shld-DEL-IP-Tech) <schladweilerb@gtlaw.com>; Jay, David (Shld-NJ-LT) <JayD@gtlaw.com>; Weider, Douglas R. (Shld-NJ-IP-Tech) <WeiderD@gtlaw.com>; Blofield, Tiffany A. (Shld-MSP-IP-Tech) <blofieldt@gtlaw.com>; Ryerson, James (OfCnsl-NJ-IP-TECH) <ryersonj@gtlaw.com>
**Cc:** PTON.ECHELON.LWTEAM@lw.com; mflynn@morrisnichols.com
**Subject:** RE: Peloton/Echelon - Outstanding Discovery Issues

Counsel,

We write to confirm our understanding of the action items arising from Wednesday's meet and confer call on the below issues. Specifically, we understand that:

1. Echelon refuses to produce additional ads related to Peloton's unclean hands defense. Thus, the parties are at an impasse.

# EXHIBIT F



## Echelon Smart Connect Limited Edition EX1 Bike with 1 Year App

★★★★☆  4.0 (1)   Read Reviews







**ECHELON CONNECT BIKE EX-3**

PRODUCT    FEATURES    EX



# Echelon Smart Connect EX3 Bike w/ 3 Month App Membership

★★★★☆  4.2 (531)   Read Reviews



echelon

Connect Bikes ▾    Fitness Mirrors ▾    Rowers ▾    Smart Treadmills ▾    Membership    Merchandise ▾    Special Offers





## Certified Open Box Echelon Bike EX-4s-10

**\*\*We have Eight Open Box (8) available. Full warranty available. Buy Now!\*\***

**$899.99**

Regular price $1,499.99, save $600.00 (40% off)

**Buy Now**  ⊕

The Echelon EX-4S-10 Connect Bike strikes a unique balance between aesthetic appeal and functionality with its sleek design and small footprint. Featuring a variety of adjustable features, innovative technology, and a durable frame design — easily adapt the bike to fit your body with ease and get the most out of every workout.

Top-Rated Features:





Connect Bikes ▾      Fitness Mirrors ▾      Rowers ▾

ECHELON CONNECT BIKE EX-5                    PRODUCT    FEATURES





**ECHELON EX-8S CONNECT BIKE**                    PRODUCT    FEATURES



echelon™

Connect Bikes  ▾     Fitness Mirrors  ▾     Rowers  ▾

ECHELON GT+ CONNECT BIKE                    PRODUCT    FEATURES



**echelon**™

Connect Bikes ▾        Fitness Mirrors ▾        Rowers ▾

ECHELON GT+ CONNECT BIKE                    PRODUCT    FEATURES



## echelon™

Connect Bikes ▾        Fitness Mirrors ▾        Rowers ▾

ECHELON GT+ CONNECT BIKE                    PRODUCT        FEATURES







Connect Bikes ▾          Fitness Mirrors ▾

**ECHELON EX-PRO COMMERCIAL EXERCISE BIKE**                    PRODUCT





# WHAT IS FLY ANYWHERE?



FLY Anywhere is the high-performance bike that brings our epic in-studio experience, right to your place.





Compare Model

PRO-FORM+

Shop All ProForm+ Products →

Studio Bike Pro
PFEX16718  (In Stock)

**FREE** with 3-year iFIT
Family membership



Compare Model

Carbon CX
PFEX63919  (In Stock)

$599    OR    $16/mo †

0% APR for 39 mos



☐ Compare Model

440 ES
PFEX15917 (Out of Stock)

$699        OR        $18/mo †
                      0% APR for 39 mos



Compare Model

8.0 EX
PFEX14817  (In Stock)

$599     OR     $16/mo †
                0% APR for 39 mos

# NordicTrack

TREADMILLS            BIKES

Home › Exercise Bikes › Commercial Studio Cycle Series › S15i Studio Bike



**NordicTrack**

TREADMILLS        BIKES        ELLI

Home › Exercise Bikes › Commercial Studio Cycle Series › **Commercial S22i Studio Cy**





**NordicTrack**

TREADMILLS          BIKES          EL

Home › Exercise Bikes › Recumbent Bike Series › Commercial R35



# NordicTrack

TREADMILLS        BIKES        EL

Home › Exercise Bikes › Recumbent Bike Series › **Commercial VR25**



