**GT GreenbergTraurig**

Benjamin J. Schladweiler
Tel 302.661.7352
Fax 302.661.7163
schladweilerb@gtlaw.com

January 12, 2022

**VIA E-FILING**                                                      PUBLIC VERSION

The Honorable Richard G. Andrews
United States District Court for the District of Delaware
844 North King Street
Wilmington, DE 19801

Re:   <u>*Peloton Interactive, Inc. v. Echelon Fitness, LLC*</u>, C.A. No. 19-1903-RGA

Dear Judge Andrews:

We write on behalf of the Defendants in advance of the January 24 discovery conference with the Court to address three discrete discovery disputes.

**<u>Production Concerning Flywheel Settlement (RFPs 94, 97, 98, 108-112, Ex. A)</u>**

This is the second time Echelon is forced to seek the Court's assistance due to Peloton's failure to produce documents concerning its settlement of lawsuits against Flywheel alleging infringement of three of the same patents asserted against Echelon. C.A. Nos. 18-390 & 19-317 (E.D. Tex.).

As part of that settlement, Peloton agreed to pay $24.5 million and to dismiss its claims against Flywheel. D.I. 120, Ex. E ¶¶2, 4. Flywheel, in return, dismissed its IPRs (after institution) and transferred to Peloton the remnants of its "Flywheel At-Home Bike Business," including "all books, records, files, documents, and data." *Id.*, ¶¶1, 4.2. The Notice of Settlement included a declaration in which, despite instituted IPR proceedings and Flywheel's prior allegations that Peloton stole its concept (D.I. 221, ¶51), Flywheel "admitted" the "Peloton Patents are valid" and that "Flywheel copied elements of the Peloton bike." D.I. 168, Ex. 7 ("the Flywheel Declaration"), ¶¶ 4-5. Peloton affirmatively cites the Flywheel Declaration as evidence of copying in this lawsuit (D.I. 168) and in Echelon's IPR of the '026 patent. The Flywheel settlement and surrounding circumstances are relevant to damages (including the determination of a reasonable royalty for use of the patented technology), to rebut Peloton's citation of copying as a secondary consideration of non-obviousness, and, of course, to Echelon's antitrust claims in that Peloton allegedly sued and later paid off Flywheel to eliminate competition. (D.I. 221 at ¶¶47-60).

Peloton has engaged in a systematic effort to obstruct discovery pertaining to the Flywheel settlement and its paid-for declaration of infringement. First, Peloton objected to Echelon's subpoena to Flywheel because it would "require Flywheel to produce documents that were designated CONFIDENTIAL" by Peloton, but then Peloton refused to produce the same documents because it purportedly could not get permission from Flywheel. Ex. B & C. Echelon raised this dispute with the Court in March 2021 (D.I. 113), but withdrew the dispute after Peloton agreed to produce the requested documents without delay after they were "collected, prepared, QCd, etc." Ex. D. Peloton then reneged on that promise and stated it would produce them "during the course of discovery" as "both sides produce documents." Ex. E. But Peloton did not honor

that promise either and still has not produced *any* documents concerning the negotiation of the Flywheel settlement. More recently, Peloton attempted to stall further by directing Echelon to documents from the 2012 timeframe (having nothing to do with the 2018 Flywheel settlement) and indicating it was "investigating whether any additional documents" exist. Ex. I.

Peloton's obstruction now necessitates this second discovery dispute letter seeking to compel production again, almost a full year later, of the same Flywheel settlement documents. The following documents indisputably exist and should have been produced: (i) correspondence between Peloton/Peloton's counsel and Flywheel/Flywheel's counsel relating to the settlement;[1] (ii) terms sheets and drafts of the agreement; (iii) due diligence concerning Peloton's acquisition of the Flywheel At-Home Bike Business (including lists of assets and valuations by Peloton or its bankers);[2] (iv) documents relating to dismissal of the infringement claims or IPR proceedings; and (v) documents relating to preparation and filing of the Flywheel Declaration. Echelon also asks the Court to award its fees incurred in briefing this dispute two times.

## Custodial Pricing Documents (RFP 62, Ex. F)

Peloton relies on price erosion as one of its primary patent damages theories in this case. (Ex. G). Thus, documents concerning Peloton's price setting, including the reasons why Peloton set its prices, are highly relevant. Peloton dropped the price of its original Bike twice: once in September 2020 when it dropped its price 15% from $2,245 to $1,895 to coincide with the introduction of its Bike+ product,[3] and again in August 2021 when it dropped its price $400 to $1,495.[4] This dispute involves this second price drop, which occurred well after the parties negotiated custodians and search terms and after the previous cut off for custodial documents.

Peloton refused to produce any custodial documents concerning the second price drop, despite pushing a price erosion theory that presumably will rely on that price drop. This position is unsupportable and prejudicial and would allow Peloton to improperly rummage through its own documents and cherry pick the ones it wants to produce. Yesterday Peloton finally suggested openness to searching for these documents, but there is little time left in the schedule for negotiation and production of these pertinent documents with the current fact discovery deadline of February 22, 2022 (D.I. 206 at 2). Accordingly, this Court should order Peloton perform a

---

[1] Counsel was likely heavily involved in this settlement negotiation so their relevant non-privileged emails/communications should be included in the production.

[2] On January 11, 2022, the day before this letter was filed, Peloton finally agreed to "produce non-privileged materials [relating] to Echelon's Flywheel-diligence requests" and that it "anticipate[s] this production will be next week." While Echelon appreciates Peloton's promise to produce these documents, these efforts are untimely in view of the upcoming deadlines in this case and Echelon will not know how sufficient Peloton's production is until it sees it. Notably, Peloton still refuses to produce the other Flywheel documents covered by these RFPs.

[3] *See* https://www.bicycling.com/news/a33959325/peloton-announces-new-bike-treadmill/

[4] *See* https://www.theverge.com/2021/8/27/22643715/peloton-bike-price-drop-q4-results-subscription-prices

diligent search of these custodial documents, provide hit counts on its terms, and produce the documents promptly.[5]

### Zendesk Customer Service Records (RFPs 56 & 57, Ex. F)

On November 23, 2021, Peloton supposedly produced customer service records showing consumer confusion relating to Echelon's false advertising counterclaim.  Echelon's counterclaim alleges that Peloton falsely advertised its bikes as costing only ***$58*** a month while hiding the fact that customers are ***required*** to purchase its content subscription for an additional ***$39*** a month, for an actual monthly cost of ***$97*** a month.  D.I. 211 at ¶ 96.  For reasons it has not explained, Peloton's November production is woefully deficient.

Peloton previously produced a September 25, 2018 email with the subject "***Confusion re: $58 + $39***," in which Peloton's SVP of Member Experience indicated that Peloton was starting to see customer "[s]upport inbounds on this topic pick up a bit" with "***20 tickets last week, 25 tickets week before last***."  Ex. H, PELOTON_ICON-ECHELON_00095829 (emphasis added). But Peloton has produced only ***four (4)*** Zendesk records for the two-week period prior to September 25, 2018 in which Peloton's email indicates that ***45*** records exist.

Peloton's response to Echelon's raising this deficiency was that it "has completed a diligent review" and "has no additional records to produce," so "[p]lease let us know what possible basis you have for seeking relief" because "Echelon cannot will additional responsive documents into existence."  But Peloton's own records unequivocally demonstrate that Peloton's search was deficient because it failed to produce 41 of 45 customer service records from only a specific two-week window, and thus presumably also has failed to produce hundreds or thousands more pertinent records from the weeks that preceded or followed that period.  Given the apparent failure of Peloton's searches, Echelon respectfully requests that Peloton be compelled to (1) undertake an additional search to produce **all** customer service records regarding "[c]onfusion re: $58 + $39" for the period July 20, 2018 to December 15, 2020; and (2)  a declaration detailing the scope of its supposed "diligent search" for Zendesk customer service records/tickets on this issue, including the search terms used.  If Peloton fails to produce the pertinent records, the Court should impose an adverse inference that consumers were confused by Peloton's misleading pricing advertisements.[6]

---

[5] On January 11, Peloton finally suggested willingness to search for and produce custodial documents related to this second price drop and proposed custodians and search terms but did not provide any hit counts for its proposed search.  Peloton's proposed search is too narrow and needs to be expanded.

[6] On January 11, the day before this letter was filed, Peloton provided Echelon with the search terms it used to search for responsive Zendesk files, and (not surprisingly) those search terms were extremely narrow.

The Honorable Richard G. Andrews
January 12, 2022
Page 4

                                  Respectfully,

                                  Benjamin J. Schladweiler (#4601)

cc: All Counsel of Record